## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-cv-23242-BB

UNITED STATES OF AMERICA *ex rel.*
SEDONA PARTNERS LLC,

       Plaintiff,

v.

ABLE MOVING & STORAGE, INC.; ARPIN VAN
LINES. INC.; CARTWRIGHT INTERNATIONAL
VAN LINES, INC.; COLEMAN AMERICAN
MOVING SERVICES, INC.; DEWITT
COMPANIES LIMITED, LLC; HILLDRUP
COMPANIES. INC.; J.K. MOVING & STORAGE
INC.; MAYFLOWER TRANSIT, LLC; NEW
WORLD VAN LINES, INC.; PARAMOUNT
TRANSPORTATION SYSTEMS; PAXTON VAN
LINES, INC.; AND WESTERN EXPRESS
FORWARDING, LLC,

       Defendants.

_____/

### DEFENDANT CARTWRIGHT INTERNATIONAL VAN LINES, INC.'S MOTION TO DISMISS COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant Cartwright International Van Lines, Inc. ("Cartwright") respectfully requests that this Court dismiss the *Complaint for Money Damages and Civil Penalties for Violations of the False Claims Act* (Dkt No. 1) (the "Complaint"), with prejudice, pursuant to Rules 8, 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

Relator Sedona Partners LLC ("Relator" or "Sedona Partners") alleges that Cartwright and other competitors violated the False Claims Act ("FCA") by presenting the United States General Services Administration ("GSA") with bids for moving services at below the cost of those services to Cartwright. Complaint at ¶¶ 2-38. According to Relator, those services had to be performed using U.S. flag vessels unless that requirement was specifically waived by the pertinent federal

agency. *Id.* ¶¶ 2-71. Relator contends that Cartwright never actually intended to use U.S. flag vessels for a significant portion of transports even though it represented in its bids that it would do so. Based on these allegations, Relator asserts that Cartwright: (1) presented false claims in violation of Section 3729(a)(1)(A) of the FCA (*i.e.*, the "presentment" claim) and (2) used false records and statements to support claims for payment in violation of Section 3729(a)(1)(B) of the FCA (*i.e.*, the "use" claim). Relator is mistaken and its claims fail as a matter of law for four reasons.

*First*, FCA claims are subject to the pleading with particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. "Particularity" mandates that a complaint contain allegations sufficient to show the "who, what, when, where, and how" of the fraudulent submissions. Relator has not met that standard. Here, the Complaint fails to identify who at Cartwright submitted the bids and waivers to the GSA, what information is false on those bids, when the unnamed individual submitted the alleged false bids and waivers, and whether the bids and waivers were material to the government's decision to grant transport lanes or pay Cartwright for any specific transport. Relator, itself, acknowledges that the United States routinely waives the requirement that ocean transport take place on U.S. flag vessels when such vessels are not available. Critically, Relator fails to cite even a single instance of misrepresentation (let alone a "knowing" misrepresentation, as required by the FCA) by Cartwright. For instance, the Complaint is utterly devoid of any alleged facts to support a contention that (a) Cartwright claimed a U.S. flag vessel was not available when in fact it was, (b) Cartwright represented in claims submitted to the government for payment that it used a U.S. flag vessel when it did not do so, or (c) Cartwright

used a foreign flag vessel without an appropriate waiver. Having failed to identify even a single "false" claim submitted to the government by Cartwright, Relator's claim must fail.[1]

*Second*, despite being nearly thirty pages long, the Complaint fails to plead essential elements of FCA actions, including that Cartwright (1) made a false claim or statement, (2) with the required knowledge it was false, and (3) the false claim or statement was material to the government's decision to pay a claim. Indeed, this entire action is based on allegations that Cartwright bid a certain price allegedly below the market cost of transport for specific routes between the United States and United Kingdom. Complaint. at ¶¶ 66, 67, 79. Relator has not even attempted to demonstrate (nor can it) how a below-market bid could conceivably constitute a false claim. One could argue that submitting claims below market rate—even if that bid causes Cartwright to lose money on specific transports—could be bad business practice, but such allegations do not meet all of the required elements for a FCA claim.

*Third*, the Complaint should be dismissed because Sedona is not a proper *qui tam* relator. A qui tam relator must be the source of material nonpublic information to further a claim under the FCA. If a relator predicates its complaint on public information, then the claim is barred by the public disclosure doctrine unless the relator can show that it is the "original source" of such information. Here, Relator's allegations are based on rate bids and cost comparisons listed on the GSA's Transportation Management Services Solution (TMSS 2.0) system. Such publicly available information cannot be the predicate for a *qui tam* action. Moreover, Relator fails to add to that publicly available information with any material nonpublic information. And, Relator fails to

---

[1] Relator's true grievance appears to be with the government's standard practice of granting waivers of the requirement to use U.S. flag vessels for ocean transport. But, that grievance is between Relator and the United States government. It is not the basis for a FCA claim against Cartwright.

allege any facts to suggest that it could be considered the "original source" of the information in the Complaint. Accordingly, Relator's claim is banned by the public disclosure bar.

*Fourth, and finally*, Relator is an inactive business entity administratively dissolved on September 25, 2009. Under Florida law such an entity can only "bring[] or defend[] legal proceedings associated with winding up or liquidation." Being a Relator is not "associated with winding up or liquidation." Thus, Relator's complaint should be dismissed for lack of standing.

For the foregoing reasons and as set forth in more detail below, the Court should dismiss the claims against Cartwright with prejudice.

## STATEMENT OF FACTS[2]

Sedona Partners is a self-proclaimed "insider" in the private shipping business. Compl. at ¶ 13. Cartwright and the other defendants in this action are private shipping companies called "Transportation Service Providers" ("TSPs") that participate in a GSA program—the Centralized Household Goods Traffic Management Program ("CHAMP"). *Id.* ¶¶ 1,2, 13, 16. Through CHAMP, TSPs provide moving services to federal employees. *Id.* at ¶ 2. TSPs apply and bid for different shipping routes, called "lanes." *Id.* ¶ 51. One or more TSPs are awarded each lane. *Id.*

Once a lane is awarded, Department of State ("DOS") managers must hire one of the approved TSPs for foreign country moves that use specifically awarded lanes. *Id.* ¶ 51. TSPs must follow the "America-First" policy, which requires that the companies use and work with. "U.S. flag vessels" (American shipping carriers) for the ocean transport portion of the moves, except where the United States grants a waiver for using a "foreign flag vessel." *Id.* Foreign flag vessels are ordinarily cheaper than American carriers, and do not follow U.S. laws and customs. *Id.*

---

[2] The facts alleged in the Complaint are taken as true solely for the purpose of this motion.

Nevertheless, waivers are typical, and sometimes pertinent agencies issue "blanket waivers." *See* Blanket Waiver attached as Exhibit 1;[3] *see* Compl. at ¶ 8 (noting waivers routinely granted).

Relator alleges that a group of TSPs, *i.e.*, Cartwright and other defendants in this case, created and implemented a fraudulent scheme comprising of two false submissions to the government so that they could be awarded shipping contracts for specific lanes. Compl. at ¶¶ 5-6. Relator alleges that the group of TSPs submitted bids below market price representing that they would use U.S. flag vessels when in fact they had no plans to do so. *Id*. ¶ 6. Relator also alleges that the group submitted thousands of false foreign flag waivers requesting permission to use lower costing foreign flag vessels, by falsely certifying that no U.S. flag vessels were available to carry-out shipments. *Id.* ¶ 7. Relator alleges that the group of TSPs did so knowingly.

Critically, those allegations constitute the entire sum and substance of the factual allegations in the Complaint. Relator alleges no facts in the Complaint specific to Cartwright to support this critical allegation. *Id.* ¶ 8. Indeed, the only allegations specific to Cartwright are that it submitted bids for lanes from Washington D.C. to certain destinations. *Id.* ¶¶ 66, 67, 79. Relator also alleges that the Defendants' rates "skyrocketed for fear of DOS uncovering the fraud," but if one looks at the bids for Cartwright, the rates decreased, stayed the same, or had a *de minimis* increase. *Id.* ¶ 79.

## **ARGUMENT**

The Complaint alleges two causes of action against Cartwright. Relator first contends that Cartwright "presented" false claims to the government for payment in violation of 31 U.S.C.

---

[3] District courts may take judicial notice of public records and consider them on a motion to dismiss without converting the motion into a motion for summary judgment. *Bouton v. Ocean Properties, Ltd.*, 201 F. Supp. 3d 1341, 1345 (S.D. Fla. 2016) (citing *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x. 52, 53 (11th Cir. 2006)). The blanket waiver is a public document of which this Court may take judicial notice.

§ 3729(a)(1)(A)). To plead such a claim, Relator must sufficiently allege "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." *United States v. Prometheus Lab'ys, Inc*., 2020 WL 6203527, at *3 (M.D. Fla. Oct. 22, 2020) (quoting *United States ex rel. Walker v. R & F Props. of Lake Cnty., Inc*., 433 F.3d 1349, 1355 (11th Cir. 2005)).[4]

Separately, in the second cause of action, Relator contends that Cartwright violated 31 U.S.C. § 3729(a)(1)(B) by using false statements or records to support (allegedly false) statements for payment from the government.[5]

As pled against Cartwright, both claims fail as a matter of law for four reasons.

### 1.    Relator's FCA Claims Fail and Should Be Dismissed Against Cartwright Because Relator Has Not Pled Its Claims with Particularity

A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Carruth v. Bentley*, 942 F.3d 1047, 1053 (11th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[F]acts that are merely consistent with a defendant's liability" are insufficient. *Iqbal*, 556 U.S. at 678. Rather, the Complaint must "nudge[]" Relator's claims "across the line from conceivable to plausible." *Id*. at 680.

Additionally, claims under the FCA sound in fraud and are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308-09 (11th Cir. 2002). To satisfy Rule 9(b), a complaint must "set[] forth facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper*

---

[4] Cartwright refers to the first cause of action throughout this Motion as the "presentment" claim.

[5] Cartwright refers to the second cause of action throughout this Motion as the "use" claim.

*v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009). Rule 9(b) mandates that a complaint state "(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)) (affirming dismissal of FCA complaint for failing to plead with particularity submission of false claims to the government). Relator's Complaint fails to meet Rule 9(b)'s exacting standards.

> A. *Relator's allegations regarding Cartwright's bids lack the required particularity sufficient to plead that Cartwright made (allegedly) false claims or statements.*

Courts routinely dismiss FCA claims, such as this, which fail to plead consistent with the particularity requirements. *See U.S. ex rel. Seal 1 v. Lockheed Martin Corp.*, 429 F. App'x. 818, 820 (11th Cir. 2011) (affirming dismissal where relator failed to allege with particularity who, what, where, when, and how of any false statements or presentment for payment of fraudulent claim); *United States ex rel. Chase v. HPC Healthcare, Inc.*, 723 F. App'x 783, 790 (11th Cir. 2018) (affirming dismissal where complaint did not "give examples of specific patients who were ineligible for care, details about why they were ineligible, who at [defendant] made particular falsifications, when the falsifications occurred, or when the fraudulent bills were submitted to Medicare."); *Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1278–79 (11th Cir. 2018) (affirming dismissal because relators "cannot rely on their sweeping accusations that lack the 'who,' 'what,' 'where,' 'when,' and 'how' of the supposedly fraudulent submissions."); *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155 (3d Cir. 2014) (noting particularity pleading requirement in the Eleventh Circuit) (citing *Clausen*, 290 F.3d at 1308).

Here, Relator has not met this pleading requirement for either its "presentment" or "use" causes of action. Despite its nearly 30-page Complaint, Relator fails to identify a single false claim[6] that Cartwright "presented" to the government or a single false statement that Cartwright "used" to support a claim for payment from the government during the period of alleged fraud—*i.e.*, 2008-2018 or otherwise. The scant factual allegations in the Complaint *vis a vis* Cartwright—*i.e.*, that Cartwright submitted bids for lanes below market value—may mean that Cartwright lost money on specific transports, but it does not mean that Cartwright lied. Such allegations certainly do not meet the heightened pleading mandate of Rule 9(b). *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (dismissing complaint where "[Plaintiff] provided the 'who,' 'what,' 'where,' 'when,' and 'how' of improper practices, but he failed to allege the 'who,' 'what,' 'where,' 'when,' and 'how' of false claims to the government.").

> B.   *Relator's conclusory allegations regarding foreign flag waivers and the alleged scheme to defraud the government are insufficient to meet the particularity requirements of Rule 9(b).*

Nor does it suffice here for Relator to contend, in conclusory form, that Cartwright submitted bids for lanes based on the potential that it might use foreign flag ocean transports. Compl. at ¶¶ 7, 49, 89, 94; *see Clausen*, 290 F.3d at 1312; *Corsello*, 428 F.3d at 1013. To provide the required "indicia of reliability" that a defendant submitted a claim, relators must state specific billing data—such as amounts, dates, names, or services rendered—or attach copies of specific bills. *See Clausen*, 290 F.3d at 1312 (holding relator's failure to allege if or when any actual improper claims were submitted was fatal to complaint); *United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x. 693, 704 (11th Cir. 2014) (noting relator can adequately plead

---

[6] "Claim" is defined as "any request or demand…for money or property…that…is presented to an office, employee, or agent of the United States…." 31 U.S.C.A. § 3729(b)(2)

presentment of claim by "[p]roviding exact billing data—name, date, amount, and services rendered—or attaching a representative sample claim …"). Here, Relator does neither. *See U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1358–59 (11th Cir. 2006) (dismissing complaint after holding complaint failed to allege with particularity the actual submission of a false claim), *Clausen*, 290 F.3d at 1312.

For example, in *Atkins*, the Eleventh Circuit dismissed relator's complaint after holding that he failed to allege with particularity the actual submission of a false claim. 470 F.3d at 1358–59. There, the relator described in detail an elaborate scheme for defrauding the government by submitting false claims, citing particular patients, dates, and corresponding medical records for services that relator contended in that case were not eligible for government reimbursement but for which the defendant there sought reimbursement. *Id* at 1359. Nevertheless, the court reasoned, the relator "fail[ed] to provide the next link in the FCA liability chain: showing that the defendants actually submitted reimbursement claims for the services he describe[d]. Instead, he portray[ed] the scheme and then summarily conclude[d] that the defendants submitted false claims to the government for reimbursement." *Id.*

Here, the Complaint—30 pages and 96 paragraphs in length—is utterly devoid of any allegation linking Cartwright to a claim for payment or false statement specifically presented to the government. *See* Compl. at ¶¶ 16, 66, 67, 79. Indeed, the scant allegations specifically made about Cartwright undermine any allegations of fraud. In paragraph 79, for instance, Relator posits that Defendants abandoned their fraudulent scheme for fear that they would be caught. As such, Relator alleges, all defendants ***drastically increased*** their rates in 2019. Yet, inexplicably, the chart in paragraph 79 shows that Cartwright's rate between the US and Germany ***<u>decreased</u>*** (from

$11,824 to $11,209) precisely at the moment when Relator represents to the Court that fear of being caught motivated all defendants to "increase drastically" their rates. *Id* at ¶ 79.[7]

The absence of any meaningful allegations against Cartwright specifically means that Relator's allegations here are even less detailed than those in *Atkins*, which the Eleventh Circuit found could not maintain a FCA claim. Because Relator fails to allege the details of the defendants' allegedly fraudulent acts, when they occurred, who engaged in them, and any of the elements of a claim under the False Claims Act the Court should dismiss the Complaint against Cartwright.

2.    **The Complaint Should Be Dismissed Against Cartwright for Failing to Plead Facts Sufficient to Meet the Elements of Either FCA Cause of Action.**

In addition to failing to plead the details of the "presentment" and "use" causes of action under the FCA, Relator also fails to plead facts sufficient to show that Cartwright (1) made any false statement or claims (2) with the requisite scienter to violate the FCA, and (3) the false statement or claim was material to any payment made by the government to Cartwright. Thus, the Complaint must be dismissed.

A.    *The Complaint lacks allegations sufficient to plead that Cartwright made (allegedly) false claims or statements.*

Relator's Complaint should be dismissed because it fails to identify how any hypothetical claims were false. A claim is considered false under the FCA if it is factually or legally false. *United States v. Space Coast Med. Assocs., L.L.P.*, 94 F. Supp. 3d 1250, 1259 (M.D. Fla. 2015) (dismissing relator's complaint where relator failed to sufficiently allege that any claims defendant submitted were false). "A claim is factually false when the claimant misrepresents what goods or

---

[7] The other Cartwright lanes noted in paragraph 79 also fail to show any sort of "drastic" increase. Cartwright's price for transport from Washington D.C. to China rose by a mere $200. Cartwright's price for US to UK transports remained unchanged. And, Cartwright's price from the US to the Netherlands increased by $76. *Id.*

services that it provided to the Government and a claim is legally false when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment." *Id.*

The Complaint here fails to meet the pleading standards because it fails to allege how Relator determined the alleged market values for the specific lanes to support its allegations that Cartwright's bids were below market value. Moreover, the Complaint also fails to plead any facts supporting its conclusory allegation that the defendants knew that claims and statements were false when those statements were made to the government. For instance, there is no contention in this case that –

- Cartwright used foreign flag vessels while representing that Cartwright was using U.S. flag vessels;

- Cartwright used foreign flag vessels when U.S. flag vessels were available; or,

- Cartwright used foreign flag vessels absent an appropriate waiver.

Without such allegations, there is no basis in this case for the Court to infer that Cartwright knowingly made a false claim or submitted false statements to the government, and the Complaint must be dismissed.

### B. The Complaint lacks allegations sufficient to plead that Cartwright "knowingly made" false claims or statements.

Both FCA causes of action require that the "false" claims or statements were *knowingly* made to the government. *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1045 (11th Cir. 2015). This scienter standard can be fulfilled with allegations that suggest that Cartwright acted with deliberate indifference of or reckless disregard for the truth. *United States ex rel. McFarland v. Fla. Pharmacy Sols.*, 358 F. Supp. 3d 1316, 1329 (M.D. Fla. 2017) (dismissing complaint and holding relator failed to adequately plead scienter).

Indeed, the only evidence that Relator relies upon to show (purportedly) that the defendants knowingly made false statements to the government consists of the alleged change in price *after* the alleged Department of State crack down on the alleged abuse of foreign flag waivers. But, those allegations in the Complaint undermine Relator's actions. Cartwright's rates for the lanes *decreased* or remained stable. *See id*. Relator simply has no support for its conclusory statements that Cartwright knowingly made or used false statements and cannot "nudge" its claims "across the line from conceivable to plausible."

      C.  *Insofar as the government routinely waived the US-carrier requirement, the Complaint fails to show that use of a US-carrier was material to the government's decision to pay.*

Finally, to plead a FCA case, a Relator must allege facts sufficient to show that false claims (for a "presentment" claim) or false statements (for a "use" claim) were material to the government's decision to pay. *Universal Health Servs., Inc. v. United States ex rel Escobar*, 136 S. Ct. 1989, 2002 (2016). The materiality requirement is "rigorous" and "demanding" because the FCA "is not an all-purpose antifraud statute ... or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id* at 2003, 2004 n.6. "[S]tatutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment." *Id*. at 2001.

A complaint may be dismissed where the relator fails to sufficiently allege materiality. *See United States v. Norman*, 2018 WL 264253, at *2 (M.D. Fla. Jan. 2, 2018) (dismissing complaint where "relator allege[d] no facts to show or permit an inference that the United States routinely refuses to reimburse a defendant for radiation therapy not supervised by a physician); *accord Ruckh v. Salus Rehab., LLC,* 963 F.3d 1089, 1109 (11th Cir. 2020) (affirming district court's judgment as a matter of law where "relator's scant evidence supported only the conclusion that

care plans are, at most, labeled as conditions of payment under Medicaid regulations" because "[t]his evidence, without more, is insufficient to establish materiality").

Here, Relator makes no allegations of materiality at all in connection with Cartwright. And, more generally, the Relator acknowledges that during the pertinent time period, the government routinely granted waivers of the requirement to use U.S. flag vessels, stating that such use was a "preference."  Compl. at ¶¶ 8, 29.

Notably, the Cargo Preference Act of 1954, which Relator alleges is applied to all agencies, merely requires that "at least 50 percent" of the gross tonnage be transported on privately owned U.S. flag vessels if such vessels are available at rates that are fair and reasonable. *See* 48 C.F.R. § 47.502. The Complaint contains no allegations sufficient to show that Cartwright has failed to meet this regulation. Also, like the relator in *Norman*, the relator here fails to allege that the government refused to pay TSPs that used foreign flag vessels.

Accordingly, Relator has not pled a prima facie FCA case against Cartwright and it should be dismissed.

### 3.      Relator's Complaint Violates the Public Disclosure Bar

Even if the allegations in the Complaint could meet the minimum pleading requirements for a FCA case (and they do not), this case should still be dismissed because the allegations in the Complaint against Cartwright are all based on public information. The public disclosure bar prevents *qui tam* actions such as this if the underlying information has been publicly disclosed. *United States ex rel. Brown v. BankUnited Tr. 2005-1*, 235 F. Supp. 3d 1343, 1352 (S.D. Fla. 2017); *see also* 31 U.S.C. § 3730(e)(4)(A).  Relator "bears the burden of proving that the public disclosure bar does not preclude [its] FCA action." *Brown*, 235 F. Supp. 3d at 1352 (citing *United States ex rel. May v. Purdue Pharma L.P.*, 811 F.3d 636, 640 (4th Cir. 2016)).

Although the provision containing the public disclosure bar was amended on March 23, 2010, those amendments do not apply retroactively where the alleged conduct took place prior to the effective date of the amendments. *Id.* Because the alleged conduct here took place between 2008 and 2018, both the pre- and post-March 23, 2010 versions of the public disclosure bar apply. Relator fails under both versions.

### A. Relator's Complaint violates the Pre-March 23, 2010 public disclosure bar

The Pre-March 23, 2010 public disclosure bar acts as a jurisdictional bar that "divest[s] the district court of subject-matter jurisdiction over the action." *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 916 (4th Cir. 2013). The Eleventh Circuit employs "a three-part inquiry to determine if jurisdiction exists" under the public disclosure bar: "(1) have the allegations made by the [relator] been publicly disclosed; (2) if so, is the disclosed information the basis of the [relator]'s suit; (3) if yes, is the [relator] an 'original source' of that information." *Brown*, 235 F. Supp. 3d at 1354.

In deciding whether the allegations or transactions were publicly disclosed, the Court "must consider whether the sources on which the [Relators] rely fall into the statute's enumerated categories of sources that are considered public." *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 (11th Cir. 2015). One such category is information disclosed "in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation. . . ." 31 U.S.C. § 3730(e)(4)(A).

Relator's allegations are all conclusory or based on publicly available information—specifically, accepted rate offers and cost comparisons listed on the GSA's Transportation Management Services Solution (TMSS 2.0) system. *See* Compl. at ¶ 54. The TMSS 2.0 system is available for TSPs and federal agencies to "[c]ompare costs of GSA-approved Transportation Service Providers (TSPs) to support best-value decision making." *See* GSA, Features of TMSS 2.0

*available at* https://tmss.gsa.gov/tmss/landing; *see also* GSA, Employee Relocation Resource Center Centralized Household Goods Traffic Management Program (CHAMP) 2020 Rate Filing Documents, section 4-1.1, 4.2 available at *https://www.gsa.gov/cdnstatic/2020%20Extended% 20Storage%20Package.pdf*. Therefore, the information Relator bases his claims on has been publicly disclosed.

In the second step of this inquiry, the Court must determine whether the disclosed information forms the basis of the Relator's suit. "[T]he language of the FCA 'is most naturally read to preclude suits based in any part on publicly disclosed information.'" *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc*., 841 F.3d 927, 934 (11th Cir. 2016) (quoting *Cooper v. Blue Cross & Blue Shield of Fla., Inc.,* 19 F.3d 562, 567 (11th Cir. 1994)); *accord United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 351 (4th Cir. 2009) ("Section 3730(e)(4)(A)'s public disclosure jurisdictional bar encompasses actions even partly based upon prior public disclosures."). Here, Relator's primary allegation is that defendants submitted bids below market value. Relator specifically states it retrieved the information regarding bids from the TMSS 2.0. *See* Compl. at ¶ 54. Therefore, the publicly disclosed information is, at a minimum, partly a basis for Relator's claims.

The third prong of the inquiry is whether Relator is "an 'original source,' allowing for jurisdiction to exist even when the information has been disclosed." *Saldivar*, 841 F.3d at 934 (remanding case to trial court for entry of an order dismissing the case for lack of subject matter jurisdiction after finding relator was not an original source). An "original source" is a person with "direct and independent knowledge of the information on which the allegations are based." *Id.* (citing 31 U.S.C. § 3730(e)(4)(B) (2006)). Knowledge is "direct and independent" if it is "marked

by [the] absence of an intervening agency" and "unmediated by anything but [the relator's] own efforts." *United States ex rel. Fine v. MK–Ferguson Co.*, 99 F.3d 1538, 1547 (10th Cir. 1996).

"To establish original source status knowledge, a qui tam plaintiff must allege specific facts—as opposed to mere conclusions—showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof." *Brown*, 235 F. Supp. 3d at 1358. Secondhand information, speculation, background information, or collateral research do not satisfy a relator's burden. *Id*. Merely reading reports does not grant direct knowledge to the underlying activity even where fraudulent activity could possibly be inferred from the reports. *Saldivar*, 841 F.3d at 936 ("However, to hold that merely reading a company's quarterly reports grants direct knowledge to the underlying activity would be to create a large aperture, rendering the word "direct" in the statute near meaningless.").

"A relator's ability to recognize the legal consequences of a publicly disclosed fraudulent transaction does not alter the fact that the material elements of the violation already have been publicly disclosed." *Brown*, 235 F. Supp. 3d at 1358 (quoting *Grynberg ex rel. United States v. Pac. Gas & Elec. Co.* (*In re Nat. Gas Royalties Qui Tam Litig*.), 562 F.3d 1032, 1045 (10th Cir. 2009)). That a relator has background information or unique expertise allowing him to understand the significance of publicly disclosed allegations and transactions is also insufficient. *Id.*

Here, the Complaint is a mere collection of legal conclusions, bare assertions, and bidding data from a federal database that is accessible to federal agencies and TSPs. Relator has failed to allege facts sufficiently demonstrating exactly how and when it obtained direct and independent knowledge of the fraudulent acts alleged and support those allegations with competent proof. Also, Relator's allegations regarding solely Cartwright—specifically that Cartwright submitted certain

bids—is from information available in TMSS 2.0. Therefore, Relator cannot demonstrate that it is an original source of the information found in TMSS 2.0, which is submitted by the TSPs themselves. The Pre-March 23, 2010 public disclosure bar precludes Relator from bringing claims based on publicly disclosed information and conclusory allegations and this Court does not have jurisdiction regarding claims pre-dating the amendment.

### B.   *Relator's Complaint violates the Post-March 23, 2010 public disclosure bar*

To determine if the public disclosure bar applies for conduct *after* March 23, 2010, courts employ a similar three-part inquiry: (1) have the allegations been publicly disclosed; (2) are the allegations "substantially the same" as the publicly disclosed allegations or transactions; and 3) is the Relator the original source of the information. *See U.S. ex rel. Osheroff v. Humana, Inc*., 776 F.3d 805, 812 (11th Cir. 2015).

Under the post-2010 public disclosure bar, an original source has "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." *Id.* at 815 (holding Relator was not original source where "[a]t most, [relator]'s complaint adds background information and details relating to the value of the services offered, making it somewhat more plain that the clinics' programs could violate the [statute]"). A relator cannot "merely mirror allegations that were already publicly disclosed." *United States v. Omnicare, Inc.*, 903 F.3d 78, 92 (3d Cir. 2018). Rather, the relator must "contribute information—distinct from what was publicly disclosed—that adds in a significant way to the essential factual background: the who, what, when, where and how of the events at issue." *United States ex rel. Moore v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 306 (3d Cir. 2016).

Here, as detailed above, Relator introduces no additional allegations to support its claims under the FCA that were not already publicly disclosed in a federal database listing the accepted

bids. Relator adds no new information regarding submitting foreign flag vessel waivers—other than background information and conclusory allegations like the relator in *Osheroff*. Therefore, the Post-March 23, 2010 public disclosure bar also bars Relator's claims, although instead of divesting this court of jurisdiction, violating the public disclosure bar is now only grounds for dismissal for failure to state a claim. *Osheroff,* 776 F.3d at 810. Therefore, because Relator cannot meet its burden of demonstrating that it was the original source of the allegations in the Complaint—especially those affecting only Cartwright—this Court should dismiss the Complaint.

> 4.      **Relator is a Dissolved Corporation that Cannot Bring These Claims**

Standing is determined when a plaintiff files suit. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569-70 (1992). Moreover, "whether a dissolved corporation has standing to bring suit in federal court is a matter of state law." *Synergy Real Estate of SW Florida, Inc. v. Premier Prop. Mgmt. of SW Florida, LLC*, 578 F. App'x. 959, 960 (11th Cir. 2014). Under Florida law, corporations may be administratively dissolved for "failing to file an annual report …" Fla. Stat. § 607.1622(8). Moreover, Florida Statute Section 607.1622(8) provides: "Any corporation failing to file an annual report which complies with the requirements of this section shall not be permitted to maintain or defend any action in any court of this state until such report is filed and all fees and taxes due under this act are paid and shall be subject to dissolution or cancellation of its certificate of authority to do business as provided in this act." Indeed, a corporation administratively dissolved for failure to file an annual report may only defend or initiate a lawsuit associated with winding up or liquidating the corporation's assets. *Levine v. Levine*, 734 So. 2d 1191, 1197 (Fla. 3d DCA 1999) (noting that an administratively dissolved corporation may be precluded from pursuing a "cause of action accruing after its dissolution.").

Here, Sedona Partners LLC was administratively dissolved on September 25, 2009 for failure to file an annual report. *See* Florida Department of State, Division of Corporations, Detail

by Entity Name attached as Exhibit 2 to this Motion. Therefore, under Florida law it may bring

suit in actions only regarding winding up or liquidating the corporation's assets. This is not such

a case. Instead, Relator is stepping into the shoes of the federal government and alleging that the

government paid for fraudulent claims. Therefore, the Complaint must be dismissed for lack of

standing.

<u>**CONCLUSION**</u>

For the foregoing reasons, Cartwright respectfully requests that the Court grant its Motion

to Dismiss the Complaint as pled against Cartwright, and to grant such other relief as the Court

deems to be just, fair, and equitable.

Dated:  July 13, 2021                              Respectfully submitted,

*s/ Ghislaine G. Torres Bruner*
**Ghislaine G. Torres Bruner**
Florida Bar Number 546321
E-mail: gbruner@polsinelli.com
POLSINELLI PC
1111 Brickell Avenue, Suite 2800
Miami, FL  33131
Tel.:  305-921-1800
Fax:  305-921-1801

**Noam B. Fischman** (Pro Hac Vice forthcoming)
POLSINELLI PC
1401 I ("Eye") St., NW, Suite 800
Washington, DC 20005
Tel: 202-783-3300
Fax: 202-783-3535
nfischman@polsinelli.com

**Maria Fernanda Hubbard** (Pro Hac Vice forthcoming)
POLSINELLI PC
One East Washington Street, Suite 1200
Phoenix, Arizona 85004
Tel: 602-650-2000
Fax: 602-264-7033
mhubbard@polsinelli.com

78844551.1

*Counsel for Defendant Cartwright International Van Lines, Inc.*

20

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically

filed using the CM/ECF electronic filing system which will provide notice to all counsel of record

this 13th day of July, 2021

Christopher Wayne Wadsworth
Wadsworth, Margrey & Dixon, LLP
261 N.E. 1st Street, 5th Floor
Miami, FL 33132
305-777-1000
cw@wadsworth-law.com
*Counsel for Able Moving & Storage Inc*

Matthew John Langley
Benesch, Friedlander, Coplan & Aronoff
LLP
71 S. Wacker Drive, Suite 1600
Chicago, IL 60606
312-624-6408
mlangley@beneschlaw.com
*Counsel for Dewitt Companies Limited LLC*

Stuart A. Berman
Lerch, Early & Brewer, Chtd.
7600 Wisconsin Avenue, Suite 700
Bethesda, MD 20814
301.657.0729
saberman@lerchearly.com

Sammy Epelbaum
Robert Harris
Stack Fernandez & Harris
1001 Brickell Bay Drive, Suite 2650
Brickell, FL 33131
305-371-0001
sepelbaum@stackfernandez.com
rharris@stackfernandez.com
*Counsel for Paxton Van Lines Inc.*

Justin T. Berger
Sarvenaz J. Fahimi
Cotchett, Pitre & McCarthy
jberger@cpmlegal.com
sfahimi@cpmlegal.com

Ryon M. McCabe
McCabe Rabin, P.A.
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
561-659-7878
rmccabe@mccaberabin.com

Paul E. Pelletier
Law Offices of Paul E. Pelletier
3500 Morningside Drive
Fairfax, VA 22031
pepelletier3@gmail.com

*Counsel for Relator Sedona Partners LLC*

James Alan Weinkle
United States Attorney's Office
99 N.E. 4th Street, Suite 300
Miami, FL 33132
305.961.9290
James.Weinkle@usdoj.gov
*Counsel for the United States of America*

/s/ Ghislaine G. Torres Bruner
*Counsel for Cartwright*

78844551.1