**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:20-CV-23242-BB-AMOR**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* SEDONA PARTNERS LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ABLE MOVING & STORAGE, INC., et al., | ) ) |
| Defendants. | ) ) |

**DEFENDANT J.K. MOVING & STORAGE, INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Michael I. Kessler (FL Bar No. 117784)
MKessler@ohaganmeyer.com
O'HAGAN MEYER, PLLC
21550 Oxnard Street, Suite 1050
Woodland Hills, CA 91367
Telephone: (213) 306-1632
Facsimile:  (213) 306-1615

Alan D. Albert (admitted *pro hac vice*)
Charles G. Meyer, III (admitted *pro hac vice*)
Charles M. Sims (admitted *pro hac vice*)
C. Quinn Adams (admitted *pro hac vice*)
O'HAGAN MEYER, PLLC
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7100
Facsimile:  (804) 237-0250
AAlbert@ohaganmeyer.com
CMeyer@ohaganmeyer.com
CSims@ohaganmeyer.com
CAdams@ohaganmeyer.com

*Counsel for J.K. Moving & Storage, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

STATEMENT OF THE CASE.............................................................................1

SUMMARY OF THE ARGUMENT ...................................................................3

ARGUMENT ......................................................................................................4

    I.    THE FCA'S PUBLIC DISCLOSURE PROVISION BARS
        RELATOR'S CLAIMS .........................................................................4

        A.    Relator Derives Its Complaint From Publicly Disclosed Information............5

        B.    The Disclosed Information Forms the Bases of Relator's Claims and
            its Allegations Mirror That Information ..........................................................7

        C.    Relator is Not the Original Source of the Information in the Complaint........8

    II.   RELATOR'S UNDERBIDDING CLAIM FAILS AS A MATTER OF LAW.....10

        A.    J.K.'s Bids Did Not Falsely State the Rates it Charged...............................11

    III.  RELATOR'S FCA CLAIMS FAIL UNDER RULE 9(b)...................................14

        A.    Relator Fails to Sufficiently Allege the Central Element of Falsity .............15

            1.    Relator fails to allege a false bid...........................................................15

            2.    Relator fails to allege facts establishing that J.K. submitted
                a false waiver ........................................................................................16

            3.    Speculative conclusions about rate increases do not save
                Relator's claim .....................................................................................17

CONCLUSION....................................................................................................20

CERTIFICATE OF SERVICE ............................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Brown v. One Beacon Ins. Co. Inc.*,
  317 F. App'x 915, 917 (11th Cir. 2009) ................................................................................ 2

*Carrel v. AIDS Healthcare Found., Inc.*,
  898 F.3d 1267, 1277 (11th Cir. 2018) ................................................................................ 20

*CWELT-2008 Series 1045 LLC v. PHH Corp.*,
  No. 1:20-CV-20334, 2020 WL 2744191 (S.D. Fla. May 27, 2020) ................................... 2, 6

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776, 784 (4th Cir. 1999) ...................................................................................... 13

*Hill v. Morehouse Med. Associates, Inc.*,
  No. 02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003) ............................................ 20

*Hooper v. Lockheed Martin Corp.*,
  688 F.3d 1037, 1049 (9th Cir. 2012) .............................................................................. 12, 13

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
  563 U.S. 401, 408 (2011) ...................................................................................................... 7

*U.S. ex rel. Aquino v. Univ. of Miami*,
  250 F. Supp. 3d 1319, 1327 (S.D. Fla. 2017) ................................................................. 16, 17

*U.S. ex rel. Bettis v. Odebrecht Contractors of Cal., Inc., et al.*,
  No. 1:99-cv-02879, ECF 52 at 10, n.7 (D.D.C. Oct. 24, 2002) ................................. 11, 13, 14

*U.S. ex rel. Calilung v. Ormat Indus., Ltd.*,
  No. 3:14-cv-00325, 2015 WL 1321029 (D. Nev. Mar. 24, 2015) .......................................... 7

*U.S. ex rel. Hopper v. Anton*,
  91 F.3d 1261, 1265–66 (9th Cir. 1996) .............................................................................. 13

*U.S. ex rel. Klusmeier v. Bell Constructors, Inc.*,
  No. 08-80442, 2009 WL 10667472 (S.D. Fla. Nov. 17, 2009) ............................................ 20

*U.S. ex rel. Marcus v. Hess*,
  317 U.S. 537, 543 (1943) .................................................................................................... 12

*U.S. v. Farina*,
  153 F. Supp. 819, 821–22 (D.N.J. 1957) ............................................................................ 11

*U.S. v. Specialist Doctors' Group, LLC,*
  No. 8:17-cv-2647-T-24, 2020 WL 7138566 (M.D. Fla. Dec. 7, 2020) ...................................... 7

*U.S., ex rel. Laird v. Lockheed Martin Engineering & Science Servs. Co.,*
  491 F.3d 254, 259 (5th Cir. 2007) ................................................................................ 12, 13

*U.S. ex rel. Ambrosecchia v. Paddock Laboratories, LLC,*
  855 F.3d 949, 955 (8th Cir. 2017) ........................................................................................ 10

*U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.,*
  473 F.3d 506, 519 (3d. Cir. 2007) ......................................................................................... 5

*U.S. ex rel. Brown v. Bank United Trust 2005-1,*
  235 F. Supp.3d 1343, 1354 (S.D. Fla. 2017) ......................................................................... 4

*U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.,*
  290 F.3d 1301, 1308–09 (11th Cir. 2002) .................................................................. 15, 18, 20

*U.S. ex rel. Heater v. Holy Cross Hosp., Inc.,*
  510 F. Supp. 2d 1027, 1034 (S.D. Fla. 2007) ...................................................................... 19

*U.S. ex rel. Jones v. Sutter Health,*
  499 F. Supp. 3d 704, 717 (N.D. Cal. 2020) ......................................................................... 10

*U.S. ex rel. Lorona v. Infilaw Corp.,*
  No. 3:15-cv-959-J-34PDB, 2019 WL 3778389 (M.D. Fla. Aug. 12, 2019) ............................ 15

*U.S. ex rel. Marsteller v. Tilton,*
  880 F.3d 1302, 1314-15 (11th Cir. 2018). ........................................................................... 15

*U.S. ex rel. Mastej v. Health Mgt. Associates, Inc.,*
  591 F. App'x 693, 704–05 (11th Cir. 2014) ......................................................................... 19

*U.S. ex rel. Maur v. Hage-Korban,*
  981 F.3d 516, 527 (6th Cir. 2020) .......................................................................................... 9

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC,*
  69 F. Supp. 3d 416, 424 (D. Del. 2014) .............................................................................. 5, 9

*U.S. ex rel. Oliver v. Philip Morris USA, Inc.,*
  101 F. Supp.3d 111, 124 (D.D.C. 2015) ................................................................................ 7

*U.S. ex rel. Phalp v. Lincare Holdings, Inc.,*
  116 F. Supp. 3d 1326, 1360 (S.D. Fla. 2015), *aff'd*, 857 F.3d 1148 (11th Cir. 2017)............... 11

*U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*,
  841 F.3d 927, 934 (11th Cir. 2016) ........................................ 8

*U.S. ex rel. Sanchez v. Abuabara,*
  No. 10-61673-CIV, 2012 WL 1999527 (S.D. Fla. June 4, 2012)..................................... passim

*U.S. ex rel. v. Humana, Inc.*,
  776 F.3d 805, 810 (11th Cir. 2015) .................................... 5, 8, 9

*U.S. ex rel. v. Mortgage Investors Corp.*,
  987 F.3d 1340, 1353 (11th Cir. 2021) ............................... 4, 5, 7

*United States v. AseraCare, Inc.*,
  938 F.3d 1278, 1284 (11th Cir. 2019) ................................ 10

*United States v. FastTrain II Corp.*,
  No. 12-21431, 2017 WL 606346 (S.D. Fla. Feb. 15, 2017) ................... 11

*Universal Health Services, Inc. v. United States*,
  -- U.S. --, 136 S.Ct. 1989, 1999 (2016). ............................ 10

*Ziemba v. Cascade Int'l, Inc.*,
  256 F.3d 1194, 1202 (11th Cir. 2001) ............................... 16

**Statutes**

31 U.S.C. § 3729(a)(1)(B) ........................................... 11, 15

31 U.S.C. § 3729(a)(1)(A) ....................................... 10, 11, 15

31 U.S.C. § 3730 (2006) ............................................. 4

31 U.S.C. § 3730(e)(4) (2006) ....................................... 5

31 U.S.C. § 3730(e)(4) (2012) ....................................... 5

31 U.S.C. § 3730(e)(4)(A) .......................................... 4, 5

31 U.S.C. § 3730(e)(4)(A)(ii) ...................................... 6, 7

31 U.S.C. § 3730(e)(4)(B) ........................................... 9

Defendant J.K. Moving & Storage, Inc. ("J.K.") respectfully requests that the Court dismiss the First Amended Complaint filed by Sedona Partners LLC ("Relator") (ECF 149), with prejudice, pursuant to Rules 8, 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF THE CASE

Invoking the Federal False Claims Act ("FCA"), Relator Sedona Partners, LLC sues twelve different shipping companies—called Transportation Service Providers ("TSPs")—alleging that each engaged in the same fraudulent scheme to obtain contracts from the State Department to ship civilian employees' household goods abroad.  (ECF 149 ¶¶ 1-2).  The TSPs, including J.K., participate in the Centralized Household Goods Traffic Management Program ("CHAMP") which is run by the General Services Administration ("GSA").  (ECF 149 ¶¶ 30-47).

Relator alleges that the scheme had two parts.  First, the TSPs purportedly submitted "low-ball" bids to win the right to ship goods on certain shipping lanes. (*Id.* ¶ 6).  Second, the TSPs allegedly submitted "foreign flag waivers" falsely certifying more expensive U.S. flagged vessels were unavailable.  (*Id.* ¶¶ 5-8).  Relator alleges that the scheme lasted "from 2008 to 2018," when several TSPs abandoned the scheme due to increased scrutiny.  (*Id.* ¶¶ 5, 73-74).

Relator does not allege that the TSPs ever charged the government more than the approved rate or sought to increase their rates after the government accepted them.  Instead, Relator alleges that the purported scheme effectively saved the government money because the TSP Defendants bid, and the government accepted, rates purportedly lower than the rates the TSP Defendants would have offered if they had based their rates on U.S. flagged vessels.  (ECF 149 ¶ 39 ("use of U.S. flag vessels is more expensive than the use of foreign flag vessels"), and ¶ 74).  Purportedly, as a result of the alleged scheme, "law-abiding TSPs have been locked out of shipping lanes and have been unable to compete with these companies[][.]"  (*Id.* ¶ 72).

1

Federal agencies arrange and pay for relocating their civilian employees in the CHAMP program. (*Id.* ¶ 2). TSPs may participate in CHAMP with GSA's approval. *Id.* GSA sets forth "the rules and requirements for performing services as a provider in [CHAMP]" in the Household Goods Tender of Service ("HTOS") manual, which is published online and cited extensively by Relator in the First Amended Complaint. (*Id*. ¶ 31); *see also* GSA, Household Goods Tender of Service ("HTOS") at §6.5.2 (Nov. 2018 ed.), pertinent sections of which are attached as **Exhibit 1,**[1] which can be found at

*https://www.gsa.gov/cdnstatic/GSA_HTOS_Effective%20Nov%201,%202018.pdf*.

Two aspects of CHAMP are relevant here. First, GSA issues a Request for Offer ("RFO") annually to all TSPs "approved to participate" in the program. Exh. 1 § 4.1. During this process, "TSPs may submit offers to provide [] Household Goods (HHG) transportation services" on certain lanes. *Id.* The RFO "solicits rates" and provides criteria for their "evaluation and acceptance." *Id.* § 4.3. Once the Government accepts a rate, government agencies select an approved TSP and use one with "approved rates [already] filed" for shipment of their employees' household goods. *Id.* § 8.2.2; (*see also* ECF 149, ¶¶ 31-32).

Second, HTOS provides that TSPs "shall use vessels of United States registry for the ocean portion of overseas shipments." Exh. 1 § 5.3.1. GSA provides an exception, however, "when it is determined that the use of a vessel of United States registry will not provide the required

---

[1] The Court may take judicial notice of Exhibit 1 because the contents of the HTOS manual are referenced in the First Amended Complaint and are central to Relator's claim. *See CWELT-2008 Series 1045 LLC v. PHH Corp.*, No. 1:20-CV-20334, 2020 WL 2744191, at *1 (S.D. Fla. May 27, 2020) ("When determining a motion to dismiss, a court may consider the complaint, its attachments, and documents attached to the defendant's motion to dismiss if the attached documents are central to the plaintiff's claims and referred to by the plaintiff without converting the motion to a motion for summary judgment.") (citing *Brown v. One Beacon Ins. Co. Inc.*, 317 F. App'x 915, 917 (11th Cir. 2009)).

service." *Id.* To qualify, the TSP must "request permission to use a Foreign Flag vessel prior to start of shipment," certifying "in writing that US flag shipping is not available or the use of foreign flag shipping is necessary to meet delivery requirements." *Id.* If the government approves the request, then the TSP can use a foreign flagged vessel. *Id.* Relator alleges that Defendants falsified these requests by certifying that no U.S. flagged vessels were available when they were. (ECF 149 ¶¶ 70-72). Although Relator alleges that the scheme lasted a decade, it does not allege a single incident in which a TSP obtained a waiver to use a foreign flagged vessel when a U.S. flagged vessel was available..

The First Amended Complaint offers very little information about J.K. Relator merely alleges that J.K. both submitted bids in response to RFOs and sought permission to use foreign flagged vessels between 2008 and 2018. (ECF 149 ¶¶ 5, 20, 53, 60-61, 74-75, 78).

## SUMMARY OF THE ARGUMENT

The Court should dismiss Relator's First Amended Complaint for three reasons. First, the First Amended Complaint is based almost entirely upon information found in government records. Relator offers no direct information as an original source. At most, Relator provides mere background information and asks this Court to draw negative inferences from the publicly available information it cites. Relator's claims are completely derived from and dependent upon information gleaned from government reports, and therefore, the FCA's public disclosure bar defeats Relator's claims.

Second, Relator fails to state a claim under the FCA for J.K.'s alleged low-ball bids because it fails to allege that J.K. made false statements of fact. There is no allegation that J.K. colluded with others to inflate the amount of its bids, much less that J.K. bid at rate that it never intended to charge, or that it intended to increase that rate in the future. Indeed, Relator does not allege that

J.K. ever increased its rates above what the government accepted or ever tried to charge above those rates.  Accordingly, there was no fraud in connection with the submission of J.K.'s bids.

Finally, Relator fails to plead facts supporting its claim that J.K. fraudulently certified waiver applications with the particularity  required for fraud claims under Rule 9(b) of the Federal Rules of Civil Procedure.  Relator's First Amended Complaint is nothing more than suppositions built upon assumptions.  Despite alleging a fraudulent scheme that lasted a decade, Relator fails to identify a single waiver that it deems was false, much less allege the who, what, were and when of the falsity.  Instead, Realtor merely lumps the TSPs together, obliquely references untold and unidentified waivers, and conjures a scheme that lasted a decade. The pleading falls well short of the pleading standards required by Rule 9(b) and represents the classic fishing expedition that the Rule prohibits.  Accordingly, this Court should dismiss the First Amended Complaint without leave to amend.

## ARGUMENT

## I.    THE FCA'S PUBLIC DISCLOSURE PROVISION BARS RELATOR'S CLAIMS.

"An FCA action cannot be based on allegations that are already publicly disclosed."  *U.S. ex rel. v. Mortgage Investors Corp.*, 987 F.3d 1340, 1353 (11th Cir. 2021) (citing 31 U.S.C. § 3730 (2006)).  "The reason for the public disclosure bar is fairly obvious.  Without it, opportunistic relators – with nothing new to contribute – could exploit the FCA's qui tam provisions for their personal benefit." *Id.* (citations omitted).  Such is the case here where Relator bases its entire claim on "publicly disclosed" information for which Relator is not "an original source of the information."  31 U.S.C. § 3730(e)(4)(A).  Relator "'bears the burden of proving that the public disclosure bar does not preclude [its] FCA action.'" *U.S. ex rel. Brown v. Bank United Trust 2005-1*, 235 F. Supp.3d 1343, 1354 (S.D. Fla. 2017) (citation and internal quotation marks omitted). Before 2010, the FCA's public disclosure bar was jurisdictional; an  amended version provides for

dismissal for failure to state a claim.  *U.S. ex rel. v. Humana, Inc.*, 776 F.3d 805, 810 (11th Cir. 2015) (citing 31 U.S.C. § 3730(e)(4) (2006) and 31 U.S.C. § 3730(e)(4) (2012)).

In considering whether the prior version of the public disclosure bar divests the court of subject matter jurisdiction, the Eleventh Circuit frames the inquiry as a three-part test: "(1) have the allegations made by the plaintiff been publicly disclosed; (2) if so, is the disclosed information the basis of the plaintiff's suit; (3) if yes, is the plaintiff an 'original source' of that information." *U.S. ex rel. v. Mortg. Inv'rs Corp.*, 987 F.3d 1340, 1353 (11th Cir. 2021).  Under the amended version of the FCA, and regarding  the second part of the inquiry above, the question is whether the allegations in the complaint are "substantially the same" as the allegations or transactions contained in the public disclosures. *Humana,* 776 F.3d at 812.  Because Relator's claims fail both tests, and no amount of repleading can cure this fact, Relator's claims fail as a matter of law and the Court should dismiss them with prejudice.

**A.     Relator Derives Its First Amended Complaint From Publicly Disclosed Information.**

To determine whether the public disclosure bar applies, the Court first assesses whether Relator's claim is based on publicly disclosed allegations or transactions.  That is, whether the information was disclosed via one of the sources listed in 31 U.S.C. § 3730(e)(4)(A).  *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 69 F. Supp. 3d 416, 424 (D. Del. 2014)(citing *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 519 (3d. Cir. 2007)).  The prior and amended versions of the FCA list government "reports" as public sources.

Relator's scant allegations about J.K. have all been publicly disclosed in government reports.  Indeed, Relator supplies rate information that it extracted from "GSA's TMSS HHG" system, (ECF 149 at ¶ 53), a system that lists TSP rates to assist agencies "in making the TSP selection." Ex. 1 § 6.5.2.  TMSS "is a cloud-based online platform that supports [CHAMP]" and

"allows users to manage the entire transportation process easily and efficiently" by "grant[ing] agencies access to [TSPs], their customers satisfaction indices, and route-specific rate offers." TMSS User Guide, attached as **Exhibit 2**.[2]  Both the government and TSPs can access the system. Indeed, the TMSS User Guide instructs government users and TSPs on how to search to perform "Rate Query Search[es]" within the system.  Exh. 2 at 63–65 (providing step-by-step instructions on how to do so).  It is clear that this is how Relator obtained the information contained in the First Amended Complaint and which forms the basis of its claims.

The First Amended Complaint includes images of (what Relator claims) are 2019 bids from various TSPs on the lane from Washington D.C. to London.  *Compare* (ECF 149 ¶¶ 53–69, 74) *with* Household Goods Queries, attached as **Exhibit 3 (A)**.[3]  Relator acknowledges that the images and rate figures in the First Amended Complaint came from a TMSS HHG (household goods) query.  (*Id*. ¶ 53).  This is fatal to Relator's claim.  Because the TMSS system is accessible to all TSPs and is run by the government (i.e., GSA), the queries that Relator relies upon are "Federal report[s]" and are not actionable under the FCA.  31 U.S.C. § 3730(e)(4)(A)(ii).   As this Court explained in *U.S. ex rel. Sanchez v. Abuabara,* No. 10-61673-CIV, 2012 WL 1999527, (S.D. Fla. June 4, 2012), the Supreme Court is clear that the term "report" in the FCA "should be given its

---

[2] The Court can take judicial notice of the TMSS User Manual.  Relator references the TMSS system in the First Amended Complaint and the TMSS system—where bids are submitted—is central to Relator's claims.  *See PHH Corp.*, 2020 WL 2744191 at *1, n.2.  Furthermore, the manual is produced by GSA and qualifies as a government record and is the proper subject of judicial notice.  *See e.g.*, *U.S. ex rel. Modglin v. DJO Global Inc.*, 48 F. Supp. 3d 1362, 1371–72, n. 26–29 (C.D. Cal. 2014); *Grubbs v. Medtronic, Inc*, No. 2:18-cv-01468, 2019 WL 3288263, at *6 n.2 (N.D. Ala. Jul. 22, 2019).

[3]  The Court may take judicial notice of Exhibit 3(A) because it contains full versions of the same queries from the TMSS system that Relator selectively displays and relies upon in the First Amended Complaint (ECF 149 ¶ 53), the bid numbers they include are central to Relator's claims, and the TMSS queries are a government record.  *See PHH Corp.*, 2020 WL 2744191 at *1, n. 2; *U.S. ex rel. Modglin*, 48 F. Supp. 3d at 1371–72, n. 26–29; *Grubbs*, 2019 WL 3288263 at *6, n. 2.

'broad ordinary meaning.'" [(quoting *Schindler Elevator Corp. v. U.S. ex rel. Kirk,* 563 U.S. 401, 408 (2011)).  "The Court found that a report is 'something that gives information' or a 'notification.'" *Id.* (quoting *Schindler*, 563 U.S. at 408).  "The Court also found that the three adjectives preceding the term 'report,' which were 'congressional, administrative or Government Accountability Office' (and are now 'congressional, Government Accountability Office or other Federal') 'tell us nothing more than that a 'report' must be governmental.'" *Id.* (quoting *Schindler*, 563 U.S. at 410) (parenthetical added in *Abuabara*).

Courts have easily found that government websites, which provide information to the public, "fall within the plain meaning of the word 'report.'" *U.S. ex rel. Oliver v. Philip Morris USA, Inc.*, 101 F. Supp.3d 111, 124 (D.D.C. 2015) (citing other cases).  Such is the case here. The First Amended Complaint explicitly relies upon information obtained "GSA's TMSS HHG query results run in March 2019" (ECF 149 ¶ 53) to obtain the TSP Defendant's bid rates.  There can be no dispute that the TMSS system is one managed by the government (GSA) and the query results are "reports" within the meaning of § 3730(e)(4)(A)(ii).  *See U.S. v. Specialist Doctors' Group, LLC*, No. 8:17-cv-2647-T-24, 2020 WL 7138566, at *3 (M.D. Fla. Dec. 7, 2020) (billing records pulled from a federal database were federal reports under the FCA); *see also U.S. ex rel. Calilung v. Ormat Indus., Ltd.*, No. 3:14-cv-00325, 2015 WL 1321029, at *16 (D. Nev. Mar. 24, 2015) (filings on the SEC's EDGAR website were federal reports under the FCA).

**B**.  **The Disclosed Information Forms the Bases of Relator's Claims and its Allegations Mirror That Information.**

Second, the rate information from the TMSS system plainly supplies "the basis of [Relator's] suit" against J.K.  *Mortg. Inv'rs Corp.*, 987 F.3d at 1353.  As proof of the alleged "scheme," Relator points first to purportedly "low-ball bids," then to purportedly "fraudulent flag waivers," and finally to a "dramatic increase in . . . rates."  (ECF 149 at Parts V.A, V.B, & V.C).

Relator supplies no other factual allegations about the waivers, leaving the rates themselves as the sole "evidence of this fraudulent scheme." (ECF 149 ¶¶ 53, 60-62). In plain terms, Relator builds its case on the notion that the TSP rates at issue—when compared to costs, and when tracked over time—reveal a fraudulent scheme. Those rates provide the basis for Relator's claim. *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 841 F.3d 927, 934 (11th Cir. 2016) (noting that the public disclosure bar "is most naturally read to preclude suits based in *any part* on publicly disclosed information," adding that "this second prong of the inquiry is a quick trigger to get to the more exacting original source inquiry").

Moreover, the allegations in the First Amended Complaint are not just substantially similar to the publicly disclosed information—they are that information. *Compare* (ECF 149 ¶ 53) *with* Exh. 3. Relator's First Amended Complaint simply draws nefarious conclusions from government records. Like the circumstances addressed by the Court in *Humana,* "[b]ecause the second prong" of the inquiry "is a 'quick trigger,' the significant overlap between [Relator's] allegations and the public disclosures" establishes that "the disclosed information forms the basis of this lawsuit and is substantially similar to the allegations in the complaint." 776 F.3d at 814.

### C. Relator is Not the Original Source of the Information in the First Amended Complaint.

Finally, Relator does not qualify as an "original source" of the information alleged in the First Amended Complaint. "Under the prior version of § 3730, [Relator's] knowledge must have been direct and independent" for Relator to qualify as an original source." *Humana*, 776 F.3d at 814. This requires that Relator have "specific, direct" evidence of fraud that is more than "background information which enables" Relator "to understand the significance of a more general public disclosure." *Id.* Likewise, under the amended FCA, an "original source" is someone with

"knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." 31 U.S.C. § 3730(e)(4)(B).

Relator has no independent knowledge of the rate information alleged in the First Amended Complaint. J.K. and the other TSPs derived those rates, conveyed them to the government during the RFO process, and then the Government promulgated them to purchasing agencies and others when accepted. Relator offers little other than what is already in the public record. At most, Relator merely provides background information that helps one to understand or contextualize those public disclosures. That does not make Relator an original source of that information.

Moreover, nothing in the Relator's First Amended Complaint "materially adds" to the bare-bones information that is available publicly. "[A] relator materially adds to the publicly disclosed allegation or transaction of fraud when it contributes information—distinct from what was publicly disclosed—that adds in a significant way to the essential factual background: 'the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). "In other words . . . the relator must bring something to the table that would add value for the government." *U.S. ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 527 (6th Cir. 2020).

Relator offers nothing but conjecture—a loose theory that the rates TSPs charged evidence fraud in their bids and then subsequently made false certifications in support of obtaining foreign flag waivers. The theory lacks any real facts—let alone "essential" ones—and utterly fails to move the ball toward a finding of actual fraud. As the Eleventh Circuit explained in *Humana,* 776 F.3d at 815, "background information that helps one understand or contextualize a public disclosure is insufficient to grant original source status." Likewise, Relator falls well short of the "rigorous [ ] threshold[ ] for satisfying materiality." *U.S. ex rel. Jones v. Sutter Health*, 499 F. Supp. 3d 704,

717 (N.D. Cal. 2020) (citing *Osheroff*, 776 F.3d at 815); *see also U.S. ex rel. Ambrosecchia v. Paddock Laboratories, LLC*, 855 F.3d 949, 955 (8th Cir. 2017) (relator did not materially add anything where he "provide[d] no more than the simple, conclusory allegation that Defendants' actions were knowing").

Relator constructs a conclusory theory from little more than published rate information, drawing strained inferences based on cost assumptions and trends. But this information— submitted in response to RFOs and available to all CHAMP participants on the TMSS system— has already been publicly disclosed. Because Relator fails to add any allegations of substance, the First Amended Complaint fails to clear the FCA's public disclosure bar and the Court should dismiss it with prejudice.

## II.  RELATOR'S UNDERBIDDING CLAIM FAILS AS A MATTER OF LAW.

Relator's underbidding theory—a foundational bedrock of its FCA claims—fails as a matter of law because Relator fails to allege that J.K. made a false representation of fact in connection with its bids.

The FCA imposes liability on anyone who "knowingly presents . . . a false or fraudulent claim for payment," and on anyone who "knowingly makes . . . a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B). "To prevail on an FCA claim," then "the plaintiff must prove that the defendant (1) made a false statement, (2) with scienter, (3) that was material, (4) causing the Government to make a payment." *United States v. AseraCare, Inc.*, 938 F.3d 1278, 1284 (11th Cir. 2019). Thus, there can be no liability under the FCA without "the threshold element of falsity." *Id.* at 1285. Moreover, it is well-settled that the term "fraudulent" in the FCA "incorporates the common-law meaning of fraud." *Universal Health Services, Inc. v. United States*, -- U.S. --, 136 S.Ct. 1989, 1999 (2016).

As the statute's name suggests, "falsity" is an element "central to [] liability" under the FCA. *United States v. FastTrain II Corp.*, No. 12-21431, 2017 WL 606346, at *8 (S.D. Fla. Feb. 15, 2017). Under either provision, Relator must allege "a palpably false statement, known to be a lie when it is made." *U.S. ex rel. Phalp v. Lincare Holdings, Inc.*, 116 F. Supp. 3d 1326, 1360 (S.D. Fla. 2015), *aff'd*, 857 F.3d 1148 (11th Cir. 2017) (quotation omitted); *see also* 31 U.S.C. § 3729(a)(1)(A) ("a false or fraudulent claim for payment or approval"); *id.* § 3729(a)(1)(B) ("a false record or statement material to a false or fraudulent claim"). Relator has failed to satisfy this most basic burden.

### A.     J.K.'s Bids Did Not Falsely State the Rates it Charged.

To begin with, Relator fails to identify anything false or fraudulent about J.K.'s bids submitted to GSA. To the contrary, Relator alleges nothing more than garden variety offer-and-acceptance through a "highly competitive" bidding process. ECF 149, ¶¶ 50-51. This is not fraud. A bid merely "connotes an offer to perform a contract for work and labor or supplying material," it "create no rights in either the offeror (bidder) or the offeree until a contact comes into existence by acceptance." *U.S. v. Farina*, 153 F. Supp. 819, 821–22 (D.N.J. 1957). And "merely . . . calling upon another to enter into a contract" is not "a claim" within the meaning of the False Claims Act. *Id.* at 822; *see also U.S. ex rel. Bettis v. Odebrecht Contractors of Cal., Inc., et al.*, No. 1:99-cv-02879, ECF 52 at 10, n.7 (D.D.C. Oct. 24, 2002) (unpublished but attached as **Exhibit 4**).

According to Relator, J.K. submitted "rate offers" for various shipping lanes, which were then "evaluated" by GSA and "selected" when competitive. (ECF 149 at ¶ 36; *see also id.* ¶¶ 60-61). As the HTOS guidelines confirm, these offers become the "approved rates" for a given lane once selected. *See* Ex. 1 § 6.5.2; *see also* (ECF 149 ¶¶ 43-46). For its services to be eligible for purchase, a TSP like J.K. "shall have approved rates on file with GSA." *Id.* And the TSP may

invoice the purchasing agency "at the rate in effect on the date of initial pick-up." *Id.* § 8. Agencies are "encouraged to use those TSPs that have approved rates filed" for a desired route. *Id.* § 8.2.2. Relator alleges the TSPs' bids, in other words, become the going rate when accepted. Indeed, the First Amended Complaint itself acknowledges this dynamic in straightforward terms, noting that GSA "awards contracts" based on the "submitted rate offer." (ECF 149 at ¶ 36).

By Relator's own telling, J.K. accurately bid what it was willing to accept, and the government subsequently agreed to pay the same. While Relator insists that the bids were "fraudulent" because they were "below . . . market" and, in some instances, below cost (ECF 149 ¶¶ 6, 52-53, 60-61), the underlying costs cannot make the bid *false* or *fraudulent*—even if it were true that J.K. lost money on certain lanes. Nothing requires TSPs to warrant anything about their costs or their margins. And the terms "fair market rate" and "standard cost range" come not from GSA or its guidance, but from Relator's suppositions—unmoored from any facts—about what other companies' costs supposedly "would be." (*Id.* ¶¶ 52-53).

While Courts have recognized a fraudulent inducement theory under the FCA for underbidding, they have only done so in narrow circumstances. *See Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1049 (9th Cir. 2012) (stating that underbidding may support an FCA claim when the "the bid is not what the defendant actually intends to charge."). In *U.S. ex rel. Marcus v. Hess*, the Supreme Court held that collusive bids between contractors, which caused the government to expend money it would not have if it knew about the collusion, supported an FCA claim under a fraudulent inducement theory. 317 U.S. 537, 543 (1943). This is the "archetypal fraud-in-the-inducement case" under the FCA. *U.S., ex rel. Laird v. Lockheed Martin Engineering & Science Servs. Co.*, 491 F.3d 254, 259 (5th Cir. 2007). These schemes have a common goal: to charge the government ***more*** than that to which the contractor is actually entitled. And that was

12

the evil that Congress countered through the FCA: "***overcharges*** and other abuses by defense contractors" who submitted "***inflated*** invoices . . . to the government." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (first quote); *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265–66 (9th Cir. 1996) (second quote).

"Without more, a contract ***underbid*** is not a false claim." *Laird*, 491 F.3d at 260 (emphasis added). "For FCA liability, there must be a nexus between the underbid and a request for payment that the contractor would not have been entitled to absent the contract." *Id*. That nexus may exist where a contractor submits an intentionally low bid to obtain a contract but then invoices the government for more than the original bid or where it causes the government to "pay more than it otherwise would have for the service." *See e.g.*, *Hooper*, 688 F.3d at 1049; *Harrison*, 176 F.3d at 791 (quoted language). In each instance, the contractor's subsequent "demands for payment perpetrate the original deceit by helping the [contractor] get ***more money*** from the government than he would have been entitled to had he not made the initial false statement." *Bettis*, Exh. 5 at 11 (emphasis added).

There is no nexus where the "initial deception involved deflating, rather than inflating, the original contract price" and the contractor never seeks "modifications that would raise the final price beyond the bid price." *Id*. at 11. If that second step never happens, and the contractor merely invoices the government for its original bid, "the government would actually *benefit* from the misrepresentation, because it would end up paying a lower price for the contract than had the contractor submitted a higher (and more realistic) bid at the beginning stage of the process." *Id*. at 11–12. Thus, the necessary factor for liability in an alleged *underbidding* scheme is that the contractor later seeks payments from the government *above* the price of its original bid. *Id*. at 12.

In this case, as in *Bettis*, Relator merely complains that J.K submitted an artificially low bid and stops there.  It does not allege that J.K. subsequently invoiced the government more than the agreed rate.  While Relator argues that Defendants intended to seek foreign flag waivers, that does not create a nexus between the original underbid and the subsequent request for payment if the amount that the contractor bid and the amount it invoiced the government are the same.  In other words, the government has not been defrauded or charged above what it agreed to pay in the first place.  Moreover, to the extent that there was a misrepresentation at all (there was not) the government benefited by paying a lower price. *Id*. at 11–12.

Nor can the underbidding claim proceed simply because Relator alleges that J.K. intended to seek foreign flag waivers.  Getting the waiver would not change the price that J.K. bid and rate that the government accepted.  The waiver would merely allow J.K. to perform the service *at the rate it bid*. Attaching FCA liability based upon Relator's theory would not only "penalize parties for making claims for payment that seek less money" from the government, but would also "punish a contractor for having had illicit thoughts at the time of bidding, rather than doing what the text of the statute actually forbids: submitting demands for money to which it is not legitimately entitled." *Id*. at 12.

In sum, even if the TSPs submitted artificially low bids, this does not create liability under the FCA.  The underbid would only become a false claim under the FCA if the TSPs later sought more from the government than their original bid.  Realtor does not claim that they did so.  Accordingly,  Relator's claim fails as a matter of law.

## III.    RELATOR'S FCA CLAIMS FAIL UNDER RULE 9(b).

Relator's First Amended Complaint falls well short of the "heightened pleading standard" set by Rule 9(b).  *U.S. ex rel. Sanchez v. Abuabara*, No. 10-61673, 2012 WL 5193415, at *3 (S.D. Fla. Oct. 19, 2012) (citing *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc*., 290 F.3d

1301, 1308–09 (11th Cir. 2002)).  Count I is a "presentment" claim premised on § 3729(a)(1)(A) of the FCA.  *U.S. ex rel. Lorona v. Infilaw Corp.,* No. 3:15-cv-959-J-34PDB, 2019 WL 3778389, at * 16 (M.D. Fla. Aug. 12, 2019).  In Count II, Relator asserts a false record claim premised on § 3729(a)(1)(B) of the FCA. *Id.*  The gravamen of Relator's claims is that J.K. falsified the "foreign flag waivers.".  Yet its factual allegations on the core element of *falsity* are non-existent and vague at best.  Relator offers no "specific facts", but instead weaves a speculative tale that is "merely . . . consistent with a fraud" at best.  *Sanchez*, 2012 WL 5193415, at *4-5.  This sort of *ipse dixit* pleading "flunks the test of particularity, and for that matter, Rule 8's plausibility standard, too." *Id.* at *5.

**A.      Relator Fails to Sufficiently Allege the Central Element of Falsity.**

*1. Relator fails to allege a false bid.*

Relator insists that bids submitted by J.K. at GSA's invitation were "low-ball" and therefore "fraudulent."  (ECF 149 ¶ 6).  Yet whether below cost or not,  J.K's bids accurately reflected what J.K. expected to receive and what the government expected to pay if accepted. Relator does not allege that J.K. ever charged the government more than that accepted rate.  No fraud taints that straightforward exchange.  And while the Eleventh Circuit recognizes a fraud in the inducement theory under the FCA,[4] Relator must allege with particularity facts demonstrating that the alleged promise to use U.S. flagged vessels was false when made and that it was material to the government's decision to pay money to J.K., including the who, what when, and where supporting the allegation.  Relator does not even attempt to do so.  Instead, relying exclusively upon vague and conclusory allegations, Relator offers a hindsight theory of fraud that is based on pure speculation and assumptions.  This falls well short of the requirements of Rule 9(b).

---

[4] *U.S. ex rel. Marsteller v. Tilton*, 880 F.3d 1302, 1314-15 (11th Cir. 2018).

2.       *Relator fails to allege facts establishing that J.K. submitted a false waiver.*

Relator devotes a mere three of the First Amended Complaint's ninety-six paragraphs to the one of the most crucial aspect of its claim: that the TSPs submitted foreign flag waivers falsely certifying that no U.S. flagged ships were available. (*Id.* ¶ 70-72). None of those paragraphs cite a single example of an actual waiver that J.K. submitted (let alone a false one). Relator instead relies upon vague and conclusory group pleading. As a result, Relator does not come close to pleading falsity with the particularity required by Rule 9(b).

According to Relator, the TSPs "knowingly submitted thousands of fraudulent waivers claiming U.S. flag vessels were not available, when in fact they were." (ECF 149 ¶ 72). Yet while Relator speculates as to *why* Defendants might have done so—"to profit on the low-ball bids," (*id.* ¶ 70)—nothing in the First Amended Complaint answers *any* of the questions that Rule 9(b) actually requires. "In the context of the FCA," this Court has made clear, "the complaint must set forth facts as to time, place, and substance of the defendant's alleged fraud and the details of the . . . allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Aquino v. Univ. of Miami*, 250 F. Supp. 3d 1319, 1327 (S.D. Fla. 2017); *see also Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (noting Rule 9(b) requires a relator to identify "precisely what statements were made in what documents" and "the time and place of each such statement and the person responsible for making" it).

Rule 9(b) applies to each fraud claim against each defendant. Relator supplies none of the required information to support its claims against J.K. (let alone the other TSPs). The First Amended Complaint provides no details regarding which J.K. waivers Relator contends were falsified, when, by whom, or which lanes J.K. supposedly lied about. In fact, though the First Amended Complaint gratuitously characterizes J.K. as "one of the biggest offenders in the

fraudulent scheme," (*Id.* ¶ 78), Relator offers no information regarding the scope of J.K.'s waiver requests, let alone any that it contends were false.

The purpose of Rule 9(b) only underscores Relator's deficiency. The Rule aims "to alert defendants to the precise misconduct with which they are charged and protect defendants against spurious charges." *Sanchez*, 2012 WL 5193415 at *3 (quotation omitted). The particularity requirement is "necessary to prevent '[s]peculative suits against innocent actors for fraud' and charges of guilt by association." *U.S. ex rel. Aquino*, 250 F. Supp. 3d at 1327 (quoting *Clausen*, 290 F.3d at 1308)). Otherwise, "any case where a plaintiff puts a negative spin on seemingly innocuous conduct defendants would be subject to costly and abusive litigation." *Sanchez*, 2012 WL 5193415 at *3. This precise dynamic permeates Relator's First Amended Complaint. Relator puts its own conclusory spin on otherwise unremarkable facts. What Relator does not do is "earmark *specific facts* from which the Court can infer" that J.K. actually perpetrated the falsehoods Relator suspects. *Id.* at *4 (emphasis added). This entails identifying the specific waiver that Relator contends is fraudulent and the facts that make it fraudulent: the certification of the waiver with knowledge that a U.S. flagged vessel was available to transport the goods at the time and place required. Because the First Amended Complaint lacks these details, it fails under Rule 9(b).

   3. *Speculative conclusions about rate increases do not save Relator's claim.*

Relator tries to compensate for the First Amended Complaint's lack of particularity by speculating about J.K.'s 2019 rate increases. According to Relator, these increases *must have been* in response to increased enforcement, and therefore *must reveal* fraud during the earlier period. (ECF 149 ¶¶ 73-74). Yet this inferential leap is itself lacks any factual support and so it cannot supply the particularity required. At best, Relator has a hypothesis about TSPs and their

17

published rates.  Yet nearly a year after first filing—and despite an intervening government investigation—this hypothesis has failed to mature beyond mere suspicion.[5]

According to Relator, J.K. and others increased their bids in 2019 "amidst [a] crackdown" on fraudulent waivers at the State Department.  (*Id.* ¶¶ 74-78).  These increases, Relator insists, must have been "to incorporate the cost of using American ships" instead of foreign ones and prove that J.K. had "stopped carrying out the scheme." (*Id.* ¶ 74).  Relator then highlights the difference in J.K.'s 2016 and 2019 for the "Washington, D.C. to China lane" as supposed evidence.  (*Id.* ¶ 75).  The temporal link between the supposed crackdown and J.K.'s rate hikes is utterly circumstantial and ignores a host of reasons why a TSP might choose to increase rates over a three-year period—all more plausible than avoiding detection for fraud.  What is more, Relator itself undercuts this timing argument elsewhere in the First Amended Complaint.   Not only do J.K.'s 2019 rates for the D.C-to-U.K. and D.C.-to-Germany lanes reveal far more modest increases from 2016, but Relator actually highlights the 2019 rates on those lanes as the very sort of "low-ball" bids that evince the fraud in the first place.  *See* (*Id.* ¶¶ 60-61, 78).  In other words, Relator's argument goes, J.K.'s 2019 rates prove *both* that J.K. perpetrated *and* that it had abandoned the same fraudulent scheme for fear of detection.  Nothing in the First Amended Complaint explains why J.K. behaved so illogically, of course, because Relator has no information about J.K. beyond these published rates.

Relator's stitched-together theory has none of the "indicia of reliability" that the Eleventh Circuit deems vital.  *Clausen*, 290 F.3d at 1311.  As that court explained in *Clausen*, "Rule 9(b)

---

[5] Relator has the facts wrong too.  Realtor claims that the bid information for J.K. in Paragraph 54 is for the D.C. to London lane and for March 2019.  However, the image containing that information  includes a tender name "SF17", indicating that the bid was made in 2017 not 2019.  Moreover, Exhibit 3(A) contains the full report from query that J.K. ran in the TMSS system for March 2019.

does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted." *Id.*  Rather, "some indicia of reliability must be given in the complaint to support the allegation of an actual false claim for payment being made to the Government." *Id.* The relator in *Clausen* described fraudulent schemes in detail—including "dozens of pages of exhibits"—but offered nothing beyond the "conclusory statement tacked on to each allegation that bills were submitted to the Government as a result of those schemes." *Id.* at 1312.  While the court said the complaint "raise[s] questions," it concluded that "nowhere in the blur of facts and documents assembled . . . can one find any allegation, stated with particularity, of a false claim actually being submitted to the Government." *Id.*  So it is here.  Relator sets forth the mechanics of a fraudulent scheme centered on falsified waivers, but no specific allegations about the waivers themselves, and no indicia of reliability to support the assertion that they "must have been submitted." *Id.* at 1311.

Supplying this "indicia" is no small task.  In the Eleventh Circuit, the inquiry "has focused on the relationship between the relator and the defendant, the language of the complaint, and the support, if any, attached to the complaint." *U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1034 (S.D. Fla. 2007).  "At a minimum," a relator "must explain the basis for her assertion that fraudulent claims were actually submitted" and cannot "base his knowledge on rumors, or [] offer only conjecture." *U.S. ex rel. Mastej v. Health Mgt. Associates, Inc.*, 591 F. App'x 693, 704–05 (11th Cir. 2014).  For this reason, relators who are not "corporate insiders" with some connection to the defendant often find it difficult to clear the Rule 9(b) threshold.  To be sure, "an insider might have an easier time obtaining information . . . and meeting the pleading requirements," but "neither the Federal Rules nor the Act offer any special leniency under these

particular circumstances to justify [a relator] failing to allege with the required specificity the circumstances of the fraudulent conduct he asserts in his action." *Clausen*, 290 F.3d at 1314; *see also U.S. ex rel. Klusmeier v. Bell Constructors, Inc.*, No. 08-80442, 2009 WL 10667472, at *15 (S.D. Fla. Nov. 17, 2009) (noting Relator with no access to defendant "cannot assert with reliability that Defendant actually submitted any fraudulent invoices" and so "guessing what Defendant certified would involve complete speculation").

Nothing about Relator or the First Amended Complaint supplies any reliability to the central charge here—that J.K. falsified some untold number of waivers over some untold period. Relator is not an insider or a former employee, nor anyone with special knowledge about J.K.'s practices in this area. *Compare Hill v. Morehouse Med. Associates, Inc.*, No. 02-14429, 2003 WL 22019936, at *4 (11th Cir. Aug. 15, 2003) (finding indicia of reliability where relator "worked in the very department where she alleged the fraudulent billing schemes occurred"). Rather, it seems to be one of J.K's *competitors*.

Relator does not state a claim, but ventures a guess—not unlike the countless other guesses that Rule 9(b) screens out of court. It merely "allege[s] a mosaic of circumstances that are perhaps consistent with [ ] accusations [of] false claims [but] fail[s] to allege with particularity that these background factors ever converged and produced an actual false claim." *Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1277 (11th Cir. 2018); *see e.g. Sanchez*, 2012 WL 5193415, at *5. Relator's theory—the bedrock of its FCA claims—requires the guesswork that Rule 9(b) prohibits. Accordingly, those claims fail as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant J.K. Moving & Storage, Inc. respectfully requests that the Court enter an Order dismissing the Relator's First Amended Complaint with prejudice.

August 20, 2021                          **J.K. MOVING & STORAGE, INC.**

                                         */s/ Michael I. Kessler*
                                         Michael I. Kessler (FL Bar No. 117784)
                                         MKessler@ohaganmeyer.com
                                         O'HAGAN MEYER, PLLC
                                         21550 Oxnard Street, Suite 1050
                                         Woodland Hills, CA 91367
                                         Telephone: (213) 306-1632
                                         Facsimile:  (213) 306-1615

                                         and

                                         Alan D. Albert (admitted *pro hac vice*)
                                         Charles G. Meyer, III (admitted *pro hac vice*)
                                         Charles M. Sims (admitted *pro hac vice*)
                                         C. Quinn Adams (admitted *pro hac vice*)
                                         O'HAGAN MEYER, PLLC
                                         411 East Franklin Street, Suite 500
                                         Richmond, Virginia 23219
                                         Telephone: (804) 403-7100
                                         Facsimile: (804) 237-0250
                                         AAlbert@ohaganmeyer.com
                                         CMeyer@ohaganmeyer.com
                                         CSims@ohaganmeyer.com
                                         CAdams@ohaganmeyer.com

                                         *Counsel for J.K. Moving & Storage, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true copy of the above document was served upon all parties

registered for electronic notification via the Court's electronic filing system on August 20, 2021.

> */s/ Michael I. Kessler*
> Michael I. Kessler (FL Bar No. 117784)

**<u>SERVICE LIST</u>**

James A. Weinkle
Assistant United States Attorney
Office of the United States Attorney
Southern District of Florida
99 N.E. 4th Street, Suite 300
Miami, FL 33132
James.Weinkle@usdoj.gov
*Counsel for United States of America*

Ryon M. McCabe
MCCABE RABIN P.A.
1601 Forum Place, Suite 201
West Palm Beach, FL 33401
rmccabe@mccaberabin.com
*Counsel for Sedona Partners, LLC*

Sarvenaz J. Fahimi
COTCHETT, PITRE & MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010
sfahimi@cpmlegal.com
*Counsel for Sedona Partners, LLC*

Justin T. Berger
COTCHETT, PITRE & MCCARTHY
2716 Ocean Park Blvd., Suite 3088
Santa Monica, CA 90405
jberger@cpmlegal.com
*Counsel for Sedona Partners LLC*

Paul E. Pelletier
LAW OFFICES OF PAUL E. PELLETIER
3500 Morningside Drive
Fairfax, VA 22031
Pepelletier3@gmail.com
*Counsel for Sedona Partners, LLC*

Irene Oria
Robert T. Wright, Jr.
FISHERBROYLES, LLP

Ghislaine Torres Bruner
Noam B. Fischman
POLSINELLI PC
1401 Lawrence Street, Suite 2300
Denver, CO 80202
gbruner@polsinelli.com
nfischman@polsinelli.com
*Counsel for Cartwright International Van Lines*

Aryeh Lev Kaplan
Ariella J. Ederi
PILLSBURY WINTHROP SHAW PITTMAN
600 Brickell Avenue, Suite 3100
Miami, FL 33131
Aryeh.kaplan@pillsburylaw.com
Ariella.ederi@pillsburylaw.com
*Counsel for Coleman American Moving Services*

Alexis N. Wansac
Thomas C. Hill
PILLSBURY WINTHROP SHAW PITTMAN
1200 Seventeenth Street NW
Washington DC 20036
Alexis.wansac@pillsburylaw.com
Thomas.hill@pillsburylaw.com
*Counsel for Coleman American Moving Services*

Justin C. Sorel
COLE, SCOTT & KISSANE, P.A.
1645 Palm Beach Lakes Blvd., 2nd Floor
West Palm Beach, FL 33401
Justin.sorel@csklegal.com
*Counsel for Hilldrup Companies, Inc.*

Barry A. Postman
COLE, SCOTT & KISSANE, P.A.
222 Lakeview Avenue, Suite 120
West Palm Beach, FL 33417
Barry.postman@csklegal.com
*Counsel for Hilldrup Companies, Inc.*

Maura K. Monaghan
Kristin D. Kiehn
Melanie M. Burke

23

199 E. Flagler Street, Suite 550
Miami, FL 33131
irene.oria@fisherbroyles.com
robert.wright@fisherbroyles.com
*Counsel for Able Moving & Storage, Inc.*

Andrew M. Gordon
HINSHAW & CULBERTSON LLP
1 East Broward Blvd., Suite 1010
Fort Lauderdale, FL 33301
agordon@hinshawlaw.com
*Counsel for New World Van Lines, Inc.*

Brian R. Zeeck
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
bzeeck@hinshawlaw.com
*Counsel for New World Van Lines, Inc.*

Robert M. Borak
SPECTOR RUBIN, P.A.
3250 Mary Street, Suite 405
Miami, FL 33133
Robert.Borak@spectorrubin.com
*Counsel for Paramount Transportation Systems*

Craig B. Shapiro
BUCHBINDER & ELEGANT, P.A.
46 S.W. 1 Street, 4th Floor
Miami, FL 33130
cshapiro@belaw.cc
*Counsel for Western Express Forwarding LLC*

Thomas F. Murphy
FRIEDLANDER MISLER, PLLC
5335 Wisconsin Avenue, NW, Suite 600
Washington, D.C. 20015

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
mkmonaghan@debevoise.com
kdkiehn@debevoise.com
mburke@debevoise.com
*Counsel for Hilldrup Companies, Inc.*

Matthew J. Langley
Stephen C. Lee
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
mlangley@beneschlaw.com
slee@beneschlaw.com
*Counsel for Dewitt Companies Limited, LLC*

Michael B. Silverstein
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF
41 South High Street, Suite 2600
Columbus, OH 43215
msilverstein@beneschlaw.com
*Counsel for Dewitt Companies Limited, LLC*

Robert Harris
Sammy Epelbaum
STACK FERNANDEZ & HARRIS, P.A.
1001 Brickell Bay Drive, Suite 2650
Miami, FL 33131
rharris@stackfernandez.com
sepelbaum@stackfernandez.com
*Counsel for Paxton Van Lines Inc.*

Stuart A. Berman
LERCH, EARLY & BREWER, CHTD.
7600 Wisconsin Avenue, Suite 700
Bethesda, MD 20814
saberman@lerchearly.com
*Counsel for Paxton Van Lines, Inc.*

tmurphy@dclawfirm.com
*Counsel for Western Express Forwarding LLC*