UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-23242-CIV-BLOOM/OTAZO-REYES

UNITED STATES OF AMERICA *ex rel.*:
SEDONA PARTNERS LLC,

    Plaintiffs,

v.

ABLE MOVING & STORAGE, INC.,
ARPIN INTERNATIONAL GROUP, INC.,
CARTWRIGHT INTERNATIONAL VAN LINES, INC.,
COLEMAN AMERICAN MOVING SERVICES, INC.,
DEWITT COMPANIES LIMITED, LLC,
HILLDRUP COMPANIES, INC.,
J.K. MOVING & STORAGE INC.,
NEW WORLD INTERNATIONAL, LTD.,
PARAMOUNT TRANSPORTATION SYSTEMS,
PAXTON VAN LINES, INC. and
WESTERN EXPRESS FORWARDING, LLC,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon the following submissions:

1.    Defendant J.K. Moving & Storage, Inc.'s ("J.K.") Motion to Dismiss First Amended Complaint, with prejudice (hereafter, "J.K.'s Motion to Dismiss") [D.E. 150];

2.    Defendants Able Moving & Storage, Inc. ("Able"), Arpin International Group, Inc. ("Arpin"), Coleman American Moving Services, Inc. ("Coleman"), Hilldrup Companies, Inc. ("Hilldrup"), New World International, Ltd. ("New World"), Paramount Transportation Systems ("Paramount"), Paxton Van Lines, Inc. ("Paxton") and Western Express Forwarding, LLC's ("Western Express") (collectively, "Able Group Defendants") Joint Motion to Dismiss First

Amended Complaint, with prejudice (hereafter, "Able Group Defendants' Joint Motion to Dismiss") [D.E. 153]; and

3. Defendant Cartwright International Van Lines, Inc.'s ("Cartwright") Motion to Dismiss Amended Complaint, with prejudice (hereafter, "Cartwright's Motion to Dismiss") [D.E. 162].[1]

J.K.'s Motion to Dismiss, Able Group Defendants' Joint Motion to Dismiss, and Cartwright's Motion to Dismiss (together, "Motions to Dismiss") were referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Beth Bloom, United States District Judge [D.E. 192]. The undersigned held a hearing on these matters on August 25, 2021 [D.E. 203]. For the reasons stated below, the undersigned respectfully recommends that the Motions to Dismiss be GRANTED, with leave to replead.

## PROCEDURAL BACKGROUND

Plaintiff Sedona Partners LLC ("Relator" or "Sedona Partners") brings this action against J.K., Able Group Defendants and Cartwright (collectively, "Defendants") on behalf of the United States of America pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq*. See First Am. Compl. [D.E. 149]. The FCA permits relators to file suit on behalf of the United States and to receive a share of any recovery. See 31 U.S.C. § 3730(b)-(d). The government has declined to intervene in the action but has asked that it continue to be served with all pleadings. See Government's Notice of Election to Decline Intervention [D.E. 9].

On August 13, 2021, the parties submitted a Joint Stipulation to File First Amended Complaint ("Stipulation"), stating that the amended pleading would "not substantively change the

---

[1] Defendant DeWitt Companies Limited, LLC ("DeWitt") also filed a Motion to Dismiss First Amended Complaint (hereafter, "DeWitt's Motion to Dismiss") [D.E. 155]. However, based on the filing of a Notice of Settlement [D.E. 200], DeWitt's Motion to Dismiss is moot.

2

allegations and claims asserted in the Complaint." See Stipulation [D.E. 143]. On August 19, 2021, the Court approved the Stipulation, directed Relator to file its First Amended Complaint, and required Defendants to refile their respective Motions to Dismiss. See Order on Joint Stipulation to File First Amended Complaint [D.E. 147]. The parties timely complied with these requirements. See First Amended Complaint [D.E. 149]; Motions to Dismiss [D.E. 150, 153, 162]. Relator opposes the Motions to Dismiss, but seeks, in the alternative, leave to amend [D.E. 170 at 19; D.E. 171 at 20; D.E. 173 at 20].

## FACTUAL BACKGROUND

1. ***The basis for Relator's FCA action:***

Relator's claims are predicated on the General Services Administration's ("GSA") Centralized Household Goods Traffic Management Program ("CHAMP"), which assists federal civilian employees and their families with relocation and moving of their belongings when transferred to new postings, including overseas stations. See First Am. Compl. [D.E. 149 at ¶ 2]. CHAMP allows private shipping companies, referred to as Transportation Service Providers ("TSPs"), to compete for shipping contract awards. Id. TSPs must comply with the "America-First" policy, which requires them to use and work with "U.S. flag vessels", except when obtaining a waiver for the use of a "foreign flag vessel". Id.

TSPs may respond to GSA's annual Requests for Offers ("RFOs") by submitting transportation rate proposals for both international and domestic shipping lanes, subject to additional requirements from various federal civilian agencies, such as the Department of State ("DOS"), which are published as Standing Route Orders ("SROs"). Id. at 11-12. At the conclusion of the bidding process, GSA awards contracts for the various shipping lanes, based on GSA's Value Index ("VI"). Id. at 12. Once they are awarded specific lanes, TSPs may request

permission to use a foreign flag vessel for a particular shipment by submitting a "Request for Approval of Use of a Foreign Flag Vessel" (hereafter, "Waiver Request"), in which the TSP "must certify in writing that US flag shipping is not available or that the use of the foreign flag shipping is necessary to meet delivery requirements." Id. at 12. A TSP's Waiver Request must also be accompanied by "documentation of differences in rates between the foreign vessel rate and the rate originally awarded" for the applicable lane. Id. at 13.

2. ***Relator's allegations in support of its FCA action:***

Relator claims that, "from 2008 through 2018," Defendants "carried-out a fraudulent scheme wherein hundreds of millions of dollars were illegally taken from taxpayers, American workers, and American companies because foreign flag vessels were routinely and illegally used by the TSPs, instead of U.S. flag vessels." Id. at 5. According to Relator, the alleged "scheme was carried out through two false submissions to the government" described as follows:

> First, [Defendants] submitted fraudulent low-ball bids in order to capture awards for the very competitive shipping routes, referred to as "lanes," across international waters.
>
> Second, in order to profit on their low-ball bids, [Defendants] submitted thousands of false foreign flag waivers, requesting permission to use lower costing foreign flag vessels, by fraudulently certifying that no U.S. flag vessels were available to carry-out shipments and/or that a foreign flag vessel was necessary to meet delivery requirements.
>
> Defendants knowingly submitted theses fraudulent waiver requests, because they knew that at that time DOS [the Department of State] did not have the resources to audit every waiver request. These waivers were routinely granted to Defendants, resulting in hundreds of millions of dollars going to foreign companies instead of American companies.

Id. at 5. Relator further alleges that:

> Law abiding American businesses, which federal law prioritizes, have been locked out of shipping lane contracts because of this fraudulent scheme. Not only did the conduct hurt the America-First policy, it also resulted in violation of numerous federal laws and guidelines as well as GSA contractual terms, policies, and waiver

4

requirements. Only recently, upon DOS reemphasizing the US flag vessel requirements, have some Defendants stopped the fraudulent practice, as evidenced by their dramatically increased rates.

Id. at 5-6.   Relator claims that it "is an insider in the TSP business and has direct and independent knowledge of the information on which these allegations are based."   Id. at 6.

- **Allegations re: low-ball bids**

With regard to the "low-ball bids" aspect of the alleged fraudulent scheme, Relator compares the $7,200 fair market value of ocean-going transport for the Washington, D.C. to London lane with the following bids from four of the Defendants, which were obtained from a March 2019 query of GSA's data base:

| Defendant | Bid ($) |
|---|---|
| Able | 5,696.71 |
| Coleman | 5,340.66 |
| J.K. | 5,380.22 |
| Western | 5,498.90 |

Id. at 18-19.   Relator calculates that these bids were approximately 25% below market rate.   Id. at 18.

Relator also presents the following chart, comparing U.S. Flag and foreign flag carrier costs with bids from Defendants:

| Item | Year | Defendant | Lane | U.S. Flag Carrier Cost ($) | Bid ($) | Foreign Flag Carrier Cost ($) |
|---|---|---|---|---|---|---|
| 1 | 2019 | Paramount | Washington, D.C. to China | 13,985 | 13,820 | 9,771 |
| 2 | 2016[2] | Paramount | Washington, D.C. to U.K. | 15,730 | 10,672 | 9,965 |
| 3 | 2019 | Paramount | Washington, D.C. to Germany | 15,730 | 12,054 | 11,436 |
| 4 | 2019 | Paramount | Washington, D.C. to Netherlands | 15,315 | 13,359 | 12,181 |

---

[2] This appears to be a scrivener's error, given that all other Items in the chart are for the year 2019.

| Item | Year | Defendant | Lane | U.S. Flag Carrier Cost ($) | Bid ($) | Foreign Flag Carrier Cost ($) |
|---|---|---|---|---|---|---|
| 5 | 2019 | New World | Washington, D.C. to U.K. | 15,730 | 10,672 | 9,965 |
| 6 | 2019 | Paxton | Washington, D.C. to U.K. | 15,730 | 14,204 | 9,965 |
| 7 | 2019 | J.K. | Washington, D.C. to U.K. | 15,730 | 14,741 | 9,965 |
| 8 | 2019 | J.K. | Washington, D.C. to Germany | 15,759 | 15,509 | 11,436 |
| 9 | 2019 | Hilldrup | Washington, D.C. to U.K. | 15,703 | 11,977 | 9,965 |
| 10 | 2019 | Hilldrup | Washington, D.C. to Germany | 15,759 | 13,743 | 11,436 |
| 11 | 2019[3] | Hilldrup | Washington, D.C. to Netherlands | 15,315 | 14,434 | 12,181 |
| 12 | 2019 | Cartwright | Washington, D.C. to U.K. | 15,730 | 11,209 | 9,965 |
| 13 | 2019 | Cartwright | Washington, D.C. to Netherlands[4] | 15,315 | 12,284 | 12,181 |
| 14 | 2019 | Western Express | Washington, D.C. to China | 13,985 | 13,897 | 9,771 |
| 15 | 2019 | Western Express | Washington, D.C. to U.K. | 15,730 | 10,642 | 9,965 |
| 16 | 2019 | Western Express | Washington, D.C. to Netherlands | 15,315 | 12,822 | 12,181 |

Id. at 19-22.[5]  For each of these Items, Relator claims that Defendants would have only been able to make a profit if they knew in advance that they intended to use foreign flag carriers, which would lower their costs.  Three of the Defendants--Able, Arpin and Coleman--are not included in the foregoing chart.  Id.

Relator also proffers the following chart as evidence that Defendants abandoned their alleged fraudulent scheme for fear of DOS uncovering the fraud:

---

[3] Relator did not specify the year; however, it referenced the same 2019 cost for this lane shown in Item 4.
[4] Relator appears to have made a scrivener's error by referring to this lane as Washington, D.C. to U.K. since it applied the cost for the Washington to Netherlands lane as shown in Item 4.
[5] Variations in the U.S. flag carrier costs for the same year and the same lane also appear to be the result of scrivener's errors.  Compare: Item 3, with Items 8 & 10; Item 9 with Items 5-7, 12 & 15.

| FROM D.C. TO | CHINA | | | UK | | | GERMANY | | | NETHERLANDS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PARAMOUNT | RATES FILED | US FLAG *** | NON US FLAG *** | RATES FILED | US FLAG *** | NON US FLAG *** | RATES FILED | US FLAG *** | NON US FLAG *** | RATES FILED | US FLAG *** | NON US FLAG *** |
| 2016 | 15,432 | | | 12,208 | | | 12,054 | | | 12,899 | | |
| 2019 | 13,820 | 13,985 | 9,771 | 10,672 | 15,730 | 9,965 | 12,054 | 15,759 | 11,436 | 13,359 | 15,315 | 12,181 |
| **NEW WORLD** | | | | | | | | | | | | |
| 2016 | NRF | | | 9,981 | | | 11,517 | | | 12,131 | | |
| 2019 | 14,818 | 13,985 | 9,771 | 10,672 | 15,730 | 9,965 | 11,286 | 15,759 | 11,436 | 12,131 | 15,315 | 12,181 |
| **PAXTON** | | | | | | | | | | | | |
| 2016 | 13,974 | | | 14,818 | | | 12,284 | | | 19,655 | | |
| 2019 | 15,279 | 13,985 | 9,771 | 14,204 | 15,730 | 9,965 | 16,123 | 15,759 | 11,436 | 20,270 | 15,315 | 12,181 |
| **JK MOVING** | | | | | | | | | | | | |
| 2016 | 13,436 | | | 13,052 | | | 11,747 | | | 12,745 | | |
| 2019 | 24,185 | 13,985 | 9,771 | 14,741 | 15,730 | 9,965 | 15,509 | 15,759 | 11,436 | 16,431 | 15,315 | 12,181 |
| **HILLDRUP** | | | | | | | | | | | | |
| 2016 | 13,974 | | | 11,747 | | | 12,975 | | | 13,513 | | |
| 2019 | 18,811 | 13,985 | 9,771 | 11,977 | 15,730 | 9,965 | 13,743 | 15,759 | 11,436 | 14,434 | 15,315 | 12,181 |
| **CARTWRIGHT** | | | | | | | | | | | | |
| 2016 | 18,427 | | | 11,209 | | | 11,824 | | | 12,208 | | |
| 2019 | 18,657 | 13,985 | 9,771 | 11,209 | 15,730 | 9,965 | 11,209 | 15,759 | 11,436 | 12,284 | 15,315 | 12,181 |
| **WESTERN EXPRESS** | | | | | | | | | | | | |
| 2016 | 13,897 | | | 10,749 | | | 11,901 | | | 13,436 | | |
| 2019 | 13,897 | 13,985 | 9,771 | 10,642 | 15,730 | 9,965 | 10,979 | 15,759 | 11,436 | 12,822 | 15,315 | 12,181 |

Id. at 24. Defendants Able, Arpin and Coleman do not appear in this chart either.

According to Relator, "the change in submissions is especially notable in the following shifts highlighted in the above chart" for specified Defendants' filed rates for the Washington D.C. to China lane:

- J.K.: $13,436 for 2016 versus $24,185 for 2019.
- Hilldrup: $13,974 for 2016 versus $18,811 for 2019.
- Paxton: $13,974 for 2016 versus $15,279 for 2019.

7

Id. at 24-25.[6]

- **Allegations re: Waiver Requests**

With regard to the Waiver Requests aspect of the alleged fraudulent scheme, Relator claims that Defendants "knowingly submitted thousands of fraudulent waivers claiming U.S. flag vessels were not available, when in fact they were." Id. at 23. However, Relator does not present any allegedly fraudulent waivers; it merely presents two examples of waiver forms. Id. at 13-14. The first one, entitled "Determination of Non-US Flag Availability (DNA)" appears to be a mock-up of the DNA form, given that the company name shown is "ABCD" and the vessel name shown is "bon voyage 123." Id. at 13. The second one, entitled "Justification Certificate for Use of Foreign Flag Waiver" is signed by Emanuel Hazel, who appeared at a March 27, 2019 DOS mandatory TSP meeting as the Manager of Foreign Flag Waivers. Id. at 14, 23.

- **Miscellaneous allegations**

Finally, Relator proffers the following additional allegations in support of its FCA action:

- Prior to 2019, J.K. had been "routinely awarded over 150 lanes at a time" but in the December 2019 bidding process, it received "only 3 lane awards."

- In a late 2019 meeting between Dawn Fontano of Crown Moving and Daniel Johnson, New World's Director of Customer Service, Johnson admitted that New World had "lost a huge amount of money" since paring back its use of foreign flag vessels, thereby impacting "40% of its international business."

- In early 2020, Edwin Oems, President of New World, resigned after New World lost "over $500,000 on revenues of $6 million" due to the submission of "low-ball bids in February of 2019 anticipating the ongoing use of false foreign flag waivers, before the March 27 meeting where DOS signaled the fraud would no longer be tolerated."

Id. at 25.

---

[6] Relator makes no further comments regarding this chart, which shows decreases or no appreciable changes in the filed rates for 2019 as compared to 2016 in some instances.

3. *Relator's FCA claims:*

Based on the foregoing allegations, Relator asserts two claims for violations of the FCA:

<u>First Cause of Action</u>:   Presenting False Claims (31 U.S.C. § 3729(a)(1)(A))

<u>Second Cause of Action</u>: Make or Use of False Statements (31 U.S.C. § 3729(a)(1)(B))

<u>Id.</u> at 26-27.

Pursuant to the FCA, a person who "knowingly presents or causes to be presented a false or fraudulent claim for payment or approval", or who "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim" is "liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person."  31 U.S.C. § 3729(a)(1)(A),(B)&(G).  The FCA defines a "claim" as "any request or demand . . . for money or property . . . that . . . is presented to an officer, employee, or agent of the United States[.]"  31 U.S.C. § 3729(b)(2).

In its First Cause of Action, Relator brings a "presentment" claim, alleging that "Defendants knowingly caused to be presented false claims for payment or approval" to the United States, which were based on "false records and statements, including but not limited to contractual bids for shipping lane awards, waivers, and supporting documents" in connection with CHAMP. <u>See</u> First Am. Compl. [D.E. 149 at 26].   In its Second Cause of Action, Relator brings a "make or use" FCA claim, alleging that "Defendants knowingly . . . made, used, or caused to be made or used false records or statements material to false or fraudulent claims," which were based on "false records and statements, including but not limited to contractual bids for shipping lane awards, waivers, and supporting documents" in connection with CHAMP.   <u>Id.</u> at 27.

*4. Defendants' arguments:*

J.K. seeks dismissal of Relator's FCA claims, arguing that: the claims are barred by the FCA's public disclosure bar; Relator fails to allege that J.K. made false statements of fact in connection with the alleged low-ball bids; and Relator has failed to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)").  See J.K.'s Motion to Dismiss [D.E. 150 at 8-9].

The Able Group Defendants generally argue that the First Amended Complaint should be dismissed as a "shotgun" pleading.  See Able Group Defendants' Joint Motion to Dismiss [D.E. 153 at 10].  With regard to the First Cause of Action, the Able Group Defendants further argue that Relator does not state a "presentment" claim because it fails to adequately allege: the actual submission of a false claim; that the bids and waiver requests at issue were factually or legally false; and scienter.  Id. at 11-17.  With regard to the Second Cause of Action, the Able Group Defendants further argue that Relator fails to adequately allege: the submission of a false statement; scienter; materiality; and the payment of any money or the suffering of any harm by the United States.  Id. at 17-20.  The Able Group Defendants also invoke the FCA's public disclosure bar.  Id. at 20-23.

Finally, Cartwright seeks dismissal of the First Amended Complaint on the grounds that: Relator has not complied with the requirements of Rule 9(b); Relator has failed to allege the essential elements of an FCA action, that is, the making of a materially false claim or statement with knowledge of its falsity; and Relator's FCA claims are barred by the public disclosure bar. See Cartwright's Motion to Dismiss [D.E. 162 at 7-9].

## STANDARD OF REVIEW

### I. Shotgun Pleading

Pursuant to Federal Rule of Civil Procedure 8(a)(2) (hereafter, "Rule 8(a)(2)"), "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading' that violates Rule 8(a)(2)." Auf v. Howard Univ., No. 19-CV-22065, 2019 WL 2231215, at *2 (S.D. Fla. 2019).

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015). See also Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (characterizing as a shotgun pleading one "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of"). Dismissal is appropriate when a complaint constitutes a shotgun pleading. See Wilder v. JP Morgan Chase Bank, N.A., No. 18-CV-20820, 2018 WL 5629922, at *6 n.5 (S.D. Fla. 2018) (citing Weiland, 792 F.3d at 1322.

### II. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In ruling on a [Rule] 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." Speaker v. U.S. Dep't of Health &

11

Human Servs. Centers for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010) (citing Hill v. White, 321 F.3d 1334, 1335 (11th Cir.2003)). "The Court does not view each fact in isolation . . . but considers the complaint in its entirety." Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V., 155 F. Supp. 3d 1310, 1315 (S.D. Fla. 2016) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Michel v. NYP Holdings, Inc., 816 F.3d 686, 694 (11th Cir. 2016) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). While detailed factual allegations are not necessary, "[a] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 545 (citations and internal quotation marks omitted). "[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to state a claim for relief. Iqbal, 556 U.S. at 678.

### III. Rule 9(b)

It is well established in the Eleventh Circuit that the requirements of Rule 9(b) apply to FCA claims because the FCA is a fraud statute. United States ex rel. Clausen v. Lab Corp. of Am., 290 F.3d 1301, 1309-10 (11th Cir. 2002). Rule 9(b) provides, in pertinent part that: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud

or mistake." Fed. R. Civ. P. 9(b). "The particularity requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (internal quotation marks omitted) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

A complaint satisfies Rule 9(b) when it sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Kammona v. Onteco Corp., 587 F. App'x 575, 581 (11th Cir. 2014) (quoting Ziemba, 256 F.3d at 1202). "The complaint must sufficiently recite 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" Etkin & Co. v. SBD, LLC, No. 11-CV-21321, 2013 WL 12092536, at *4 (S.D. Fla. 2013) (quoting U.S. ex rel. Matheny v. Medco Health Sols., Inc., 671 F.3d 1217, 1222 (11th Cir. 2012)). Failure to comply with Rule 9(b)'s heightened pleading standard is grounds for dismissal. Thoroughbred Yacht, Inc. v. McConaghy Boats Ltd., No. 18-CV-60355, 2018 WL 5098964, at *7 (S.D. Fla. 2018) (citing In re Galectin Therapeutics, Inc. Sec. Litig., 843 F.3d 1257, 1269 (11th Cir. 2016)). In FCA actions, the pleading standards of Rule 8(a) are "supplemented but not supplanted by" Rule 9(b). Urquilla-Diaz v. Kaplan Univ., 780 F.3d 1039, 1051 (11th Cir. 2015) (citing Clausen, 290 F.3d at 1309).

### IV. The FCA's public disclosure bar

The public disclosure bar to FCA claims applies when "the allegations made by the plaintiff

[have] been publicly disclosed;" and those allegations are "substantially the same" as what is "contained in public disclosure", unless the plaintiff is "an 'original source' of that information." United States *ex rel.* Osheroff v. Humana Inc., 776 F.3d 805, 812 (11th Cir. 2015) (citing Cooper v. Blue Cross Blue Shield of Fla. Inc., 19 F.3d 562, 565 n.4 (11th Cir. 1994)).

## DISCUSSION

### 1. *The First Amended Complaint is a shotgun pleading.*

In its two FCA claims, Relator makes general allegations against Defendants as a group, without pointing to any specific conduct on the part of any of them. See First Am. Compl. [D.E. 149 at 26, 27] ("Defendants knowingly caused to be presented false claims for payment or approval"; "Defendants knowingly . . . made, used, or caused to be made or used false records or statements material to false or fraudulent claims").

As to its "low-ball bids" fraudulent scheme theory, Relator presents a hodge-podge of comparisons and computations, each of which references only some of the Defendants. For example, Relator relies on a March 2019 query of GSA's data base to calculate that bids from four of the Defendants were approximately 25% below market rate. Id. at 18. Additionally, in its rate comparison charts between U.S. Flag and foreign flag carrier costs versus bids, Relator fails to include three of the Defendants. Id. at 19-22, 24-25. Indeed, one of the Defendants—Arpin—is not even mentioned at all.

As to its Waiver Requests fraudulent scheme theory, Relator has failed to proffer even a single claim actually submitted by any of the Defendants, presenting instead a mock-up of one Waiver Request form and a form signed by a DOS employee. Id. at 13-14. Finally, Relator alleges that, after 2019, one of the Defendants lost a significant number of lane awards and that another Defendant experienced significant monetary losses and its President resigned. Id.

14

Relator also makes some bare allegations (regarding a decrease in J.K.'s lanes as of December 2019; and financial losses experienced in late 2019 by New World resulting in the resignation of its President), in an inadequate effort to provide some support for its alleged fraudulent scheme theories.

Relator's mishmash of allegations fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  Weiland, 792 F.3d at 1323.  Further, Relator's allegation that all nine Defendants engaged in a common fraudulent scheme makes no distinctions among them even "though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of".  Magluta, 256 F.3d at 1284.  Thus, it is clear that the First Amended Complaint is a shotgun pleading subject to dismissal.  Wilder, No. 2018 WL 5629922, at *6 n.5.

### 2. *Relator has failed to plead fraud with particularity as required by Rule 9(b).*

As a shotgun pleading, the First Amended Complaint fails to comply with the requirements of Rule 9(b).  Relator contends that it has properly pled the "who", "what", "how", "when" and "where" upon which its FCA claims are predicated.  See Relator's Opposition to J.K.'s Motion to Dismiss [D.E. 170 at 12-15].  However, Relator has not done so as to each of the Defendants with the specificity required by Rule 9(b).  Kammona, 587 F. App'x at 581.

### 3. *Defendants' alleged "low-ball bids" do not support Relator's FCA claims.*

J.K. argues that "Relator's underbidding theory—a foundational bedrock of its FCA claims—fails as a matter of law because Relator fails to allege that J.K. made a false representation of fact in connection with its bids."  See J.K.'s Motion to Dismiss [D.E. 150 at 15].  "Without more, a contract underbid is not a false claim.  For FCA liability, there must be a nexus between the underbid and a request for payment that the contractor would not have been entitled to absent

the contract."  U.S., ex rel. Laird v. Lockheed Martin Engineering & Science Services Co., 491 F.3d 254, 260 (5th Cir. 2007).   In its opposition, Relator does not dispute this principle but argues that its FCA action "is not about the bids alone" and that it includes the "*improper* certifications of unavailability of U.S. carriers in securing government contracts."  See Relator's Opposition to J.K.'s Motion to Dismiss [D.E. 170 at 13-14].  However, as noted above, Relator has failed to present even a single Waiver Request from any of the Defendants to support this argument. Therefore, Relator's attempt to counter J.K.'s argument fails and its FCA claims are also defective on this basis.

   4.  *Relator does not state a "presentment" claim or a "make or use claim".*

The Able Group Defendants argue that Relator's "presentment" claim fails to adequately allege: the actual submission of a false claim; that the bids and waiver requests at issue were factually or legally false; and scienter; and further argue that Relator's "make or use" claim fails to adequately allege: the submission of a false statement; scienter; materiality; and the payment of any money or the suffering of any harm by the United States.  See Able Group Defendants' Motion to Dismiss [D.E. 153 at 11-20].  The shortcomings pointed out by the Able Group Defendants go hand in hand with the shotgun pleading nature of the First Amended Complaint and Relator's failure to comply with the specificity requirements of Rule 9(b).   Thus, the deficiencies highlighted by the Able Group Defendants render both of Relator's FCA claims subject to dismissal for failure to state a claim.

   5.  *Relator has not overcome the public disclosure bar.*

As noted above, The FCA's public disclosure bar applies when "the allegations made by the plaintiff [have] been publicly disclosed;" and those allegations are "substantially the same" as what is "contained in public disclosure", unless the plaintiff is "an 'original source' of that

information." Osheroff, 776 F.3d at 812. Relator argues that the public disclosure bar is inapplicable here because the GSA data base from which it obtained the figures that appear in the First Amended Complaint's charts is not a report that is accessible to the public in general but is only available to CHAMP participants. See Relator's Opposition to J.K.'s Motion to Dismiss [D.E. 170 at 17-18]. Relator further argues that, even if the GSA data base is deemed a public disclosure, Relator is "an original source as an insider in the industry with details relating to the schemes of fraudulent submissions." Id. at 18 n.2. However, this conclusory assertion is insufficient to avoid the public disclosure bar because Relator "must allege specific facts—as opposed to mere conclusions—showing exactly how and when [it] obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof." U.S. ex rel. Brown v. BankUnited Trust 2005-1, 235 F. Supp. 3d 1343, 1358 (S.D. Fla. 2017) (quoting U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1162 (10th Cir. 1999). Given this failure, Relator has not overcome the FCA's public disclosure bar.

   6. *Conclusion.*

In light of all of the foregoing deficiencies, the undersigned concludes that the First Amended Complaint is subject to dismissal in its entirety. As noted above, there were no substantive changes in Relator's First Amended Complaint from the allegations and claims asserted in its initial pleading, and, in opposition to the Motions to Dismiss, Relator requested leave to amend. Therefore, Relator is entitled to dismissal without prejudice and one opportunity to correct the deficiencies found in the First Amended Complaint, if it can do so. See Eiber Radiology, Inc. v. Toshiba America Med. Sys., Inc., 673 F. App'x 925, 929 (11th Cir. 2016) ("In cases where the plaintiff has acted in good faith and has not been given a first chance to amend its

initial complaint, we have treated dismissal with prejudice as a remedy of last resort.") (citing Justice v. U.S., 6 F.3d 1474, 1482 n.15 (11th Cir. 1993)).

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that J.K.'s Motion to Dismiss [D.E. 150], Able Group Defendants' Joint Motion to Dismiss [D.E. 153] and Cartwright's Motion to Dismiss [D.E. 162] be GRANTED, with leave to replead.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 16th day of December, 2021.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:   United States District Judge Beth Bloom
      Counsel of Record