UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-23242-CIV-BLOOM/OTAZO-REYES

UNITED STATES OF AMERICA *ex rel.:*
SEDONA PARTNERS LLC,

    Plaintiffs,

v.

ABLE MOVING & STORAGE, INC.,
ARPIN INTERNATIONAL GROUP, INC.,
CARTWRIGHT INTERNATIONAL VAN LINES, INC.,
COLEMAN AMERICAN MOVING SERVICES, INC.,
DEWITT COMPANIES LIMITED, LLC,
HILLDRUP COMPANIES, INC.,
J.K. MOVING & STORAGE INC.,
NEW WORLD INTERNATIONAL, LTD.,
PARAMOUNT TRANSPORTATION SYSTEMS,
PAXTON VAN LINES, INC. and
WESTERN EXPRESS FORWARDING, LLC,

    Defendants.

_____/

## REPORT AND RECOMMENDATION RE: D.E. 226

THIS CAUSE came before the Court upon Defendants Able Moving & Storage, Inc. ("Able"), Arpin International Group, Inc. ("Arpin"), Cartwright International Van Lines, Inc.'s ("Cartwright"), Coleman American Moving Services, Inc. ("Coleman"), DeWitt Companies Limited, LLC ("DeWitt"),[1] Hilldrup Companies, Inc. ("Hilldrup"), J.K. Moving & Storage, Inc.'s ("J.K."), New World International, Ltd. ("New World"), Paramount Transportation Systems

---

[1] On September 19, 2021, Relator and DeWitt filed a Joint Notice of Proposed Settlement [D.E. 200]. Thereafter, the Court ordered the parties to "file an approved settlement agreement for the Court's consideration and/or the appropriate dismissal documentation". See Order [D.E. 201]. However, on January 13, 2022, Relator informed the Court that it was "not willing to enter into the settlement [with DeWitt] on the terms previously proposed." See Relator's Status Report [D.E. 213 at 1-2].

("Paramount"), Paxton Van Lines, Inc. ("Paxton") and Western Express Forwarding, LLC's ("Western Express")'s (collectively, "Defendants") Joint Motion to Dismiss Relator Sedona Partners LLC's ("Sedona Partners" or "Relator") Corrected Second Amended Complaint and to Strike Allegations Derived from Discovery (hereafter, "Joint Motion to Dismiss and to Strike") [D.E. 226]; and Defendants' Memorandum in Support of their Joint Motion to Dismiss and to Strike (hereafter, "Memorandum") [D.E. 226-1]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Beth Bloom, United States District Judge [D.E. 242]. The undersigned held a hearing on this matter on June 6, 2022 (hereafter, "Hearing") [D.E. 248]. For the reasons stated below, the undersigned respectfully recommends that Defendants' Joint Motion to Dismiss and to Strike be GRANTED with prejudice and that this action be DISMISSED WITH PREJUDICE, subject to the prior "written consent of the United States of America". See Order on United States of America's Notice of Election to Decline Intervention [D.E. 10 at 2].

## PROCEDURAL BACKGROUND

Relator brings this *qui tam* action against eleven Defendants, who are private shipping companies referred to as Transportation Service Providers ("TSPs"), on behalf of the United States of America pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.* See Corrected Sec. Am. Compl. [D.E. 222] (hereafter, "SAC"). The FCA permits relators to file suit on behalf of the United States and to receive a share of any recovery. See 31 U.S.C. § 3730(b)-(d). The government has declined to intervene but has requested that it be kept apprised of all proceedings in the action. See Government's Notice of Election to Decline Intervention [D.E. 9]. Thus, counsel for the government attended the Hearing [D.E. 248].

By Order dated January 19, 2022, the Court dismissed Relator's prior pleading without

prejudice and with leave to amend. See Order Adopting Magistrate Judge's Report and Recommendation [D.E. 218 at 19]. Relator has now filed the SAC, which Defendants seek to dismiss with prejudice. See Memorandum [D.E. 226-1 at 25].

## FACTUAL BACKGROUND

### 1. *The predicate for Relator's FCA action:*

Relator's claims are predicated on the General Services Administration's ("GSA") Centralized Household Goods Traffic Management Program ("CHAMP"), which assists federal civilian employees and their families with relocation and moving of their belongings when transferred to new postings, including overseas stations. See SAC [D.E. 222 at ¶ 2]. CHAMP allows TSPs to compete for shipping contract awards subject to their compliance with the "America-First" policy, which requires them to use and work with "U.S. flag vessels", except when obtaining a waiver for the use of a "foreign flag vessel". Id.

TSPs may respond to GSA's annual Requests for Offers ("RFOs") by submitting transportation rate proposals for both international and domestic shipping lanes, subject to additional requirements from various federal civilian agencies, such as the Department of State ("DOS"), which are published as Standing Route Orders ("SROs"). Id. at 12. At the conclusion of the bidding process, GSA awards contracts for the various shipping lanes, based on GSA's Value Index ("VI"). Id. Once they are awarded specific lanes, TSPs may request permission to use a foreign flag vessel for a particular shipment by submitting a "Request for Approval of Use of a Foreign Flag Vessel" (hereafter, "Waiver Request"), in which the TSP "must certify in writing that US flag shipping is not available or that the use of the foreign flag shipping is necessary to meet delivery requirements." Id. at 13. A TSP's Waiver Request must also be accompanied by "documentation of [any] differences in rates between the foreign vessel rate and the rate originally

awarded" for the applicable lane.  Id.

### 2. *Relator's FCA allegations:*

Relator claims that "[f]rom 2008 through 2018, Defendant TSPs carried-out a fraudulent scheme wherein hundreds of millions of dollars were illegally taken from taxpayers, American workers, and American companies because foreign flag vessels were routinely and illegally used by the TSPs, instead of U.S. flag vessels."  Id. at 5.  According to Relator, the alleged "scheme was carried out through two false submissions to the government" described as follows:

> First, Defendants TSPs submitted fraudulent low-ball bids in order to capture awards for the very competitive shipping routes, referred to as "lanes," across international waters.
>
> Second, in order to profit on their low-ball bids, Defendant TSPs submitted thousands of false foreign flag waivers, requesting permission to use lower costing foreign flag vessels, by fraudulently certifying that no U.S. flag vessels were available to carry-out shipments and/or that a foreign flag vessel was necessary to meet delivery requirements.
>
> Defendants knowingly submitted these fraudulent waiver requests, because they knew that at that time DOS did not have the resources to audit every waiver request.
>
> Defendants further knew that U.S. flag vessels were available when they submitted the waiver requests.
>
> These waivers were routinely granted to Defendants, resulting in hundreds of millions of dollars going to foreign companies instead of American companies.

Id. at 5-6.  Relator further alleges that:

> Law abiding American businesses, which federal law prioritizes, have been locked out of shipping lane contracts because of this fraudulent scheme. Not only did the conduct hurt the America-First policy, it also resulted in violation of numerous federal laws and guidelines as well as GSA contractual terms, policies, and waiver requirements. Only recently, upon DOS reemphasizing the U.S. flag vessel requirements, have some Defendants stopped the fraudulent practice, as evidenced by their dramatically increased rates.

Id. at 6.  Relator conclusorily alleges that it "is an insider in the TSP business and has direct and independent knowledge of the information on which these allegations are based."  Id.

4

In support of its claim that Defendants submitted fraudulent Waiver Requests, Relator lists ninety-six shipments attributed to the various Defendants as follows:

| Defendant | Number of Shipments | Paragraphs in SAC |
|---|---|---|
| Able | 8 | 86-93 |
| Arpin | 9 | 96-104 |
| Cartwright | 9 | 106-114 |
| Coleman | 2 | 117-118 |
| DeWitt | 10 | 120-129 |
| Hilldrup | 10 | 132-141 |
| J.K. | 10 | 143-152 |
| New World | 10 | 155-164 |
| Paramount | 9 | 166-174 |
| Paxton | 9 | 176-184 |
| Western Express | 10 | 186-195 |

See SAC [D.E. 222 at 25-112]. For each of these shipments, Relator has provided the actual shipment information derived from Waiver Requests plus what Relator claims were U.S. flag vessel shipping alternatives (together, "Waiver Request Allegations"). Id. In terms of actual Waiver Requests, however, Relator has only included in the SAC one for Able and one for Cartwright. See SAC [D.E. 222 at 26, 42].[2]

Additionally, Relator relies on the output from an algorithm computation that utilized U.S. Customs and Census Bureau trade data to support the proposition that, "Defendants routinely used third-party logistics companies which regularly used foreign flag vessels despite the availability of U.S. flag vessels." See SAC [D.E. 222 at 112-14]. However, Relator concedes that this trade data was derived from public disclosure sources. See Relator's Response to Motion to Dismiss and to Strike (hereafter, "Response") [D.E. 238 at 12]. However, the FCA's public disclosure bar

---

[2] Relator has also submitted spreadsheets listing these ninety-six shipments, plus additional ones that are not documented in the body of the SAC. See Exhibits 2-12 to SAC [D.E. 222-2 through 222-12]. Exhibit 1 to the SAC [D.E. 222-1] provides a key to the spreadsheet columns in Exhibits 2-12.

precludes Relator from relying on such information. Therefore, the undersigned will not consider it further.

### 3. Relator's FCA claims:

In the SAC, Relator asserts two FCA claims:

<u>First Cause of Action</u>:   Presenting False Claims (31 U.S.C. § 3729(a)(1)(A))

<u>Second Cause of Action</u>: Making or Using of False Records or Statements Material to Payment or Approval of False Claims (31 U.S.C. § 3729(a)(1)(B)).

<u>See</u> SAC [D.E. 222 at 117-18]. Pursuant to the FCA, a person who "knowingly presents or causes to be presented a false or fraudulent claim for payment or approval", or who "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim" is "liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1)(A), (B) & (G). The FCA defines a "claim" as "any request or demand . . . for money or property . . . that . . . is presented to an officer, employee, or agent of the United States[.]" <u>Id.</u> at § 3729(b)(2).

In its First Cause of Action, or "presentment" claim, Relator alleges that "Defendants knowingly caused to be presented false claims for payment or approval" to the United States, and "knowingly presented false records and statements, including but not limited to contractual bids for shipping lane awards, waivers, and supporting documents" through the CHAMP program. <u>See</u> SAC [D.E. 222 at 117]. Notably, Relator has not attached to its pleading any actual claims for payment or approval that were submitted to the government by any of the Defendants and has not alleged any factual details regarding any such claims.

In its Second Cause of Action, or "make-or-use" claim, Relator alleges that "Defendants knowingly . . . made, used, or caused to be made or used false records or statements material to

false or fraudulent claims," and knowingly "made, used, and or caused to be made and used false records and statements, including but not limited to contractual bids for shipping lane awards, waivers, and supporting documents" through the CHAMP program.  Id. at 118.

4. *Defendants' arguments:*

In support of their Joint Motion to Dismiss and to Strike, Defendants argue that Relator: has misused the discovery process to shore up its defective fraud claims; has failed to overcome the FCA's public disclosure bar; and has failed to allege the FCA essential elements of falsity and scienter in the SAC.  The undersigned addresses each of these arguments below and concludes that the SAC is indeed subject to dismissal with prejudice.

**DISCUSSION**

1. *Relator's improper use of discovery materials in the SAC.*

In dismissing Relator's prior pleading, the Court found that Relator had failed "to adequately allege the actual submission of a false waivers, the falsity of Defendants' waivers, and scienter" with respect to its presentment claim; and had also failed "to identify the particular statement alleged to be false, who made or used the statement, when the statement was made, or how the statement was false" with respect to its make-or-use claim.  See Order Adopting Magistrate Judge's Report and Recommendation [D.E. 218 at 19].  This ruling was in keeping with well-established Eleventh Circuit precedent that the requirements of Rule 9(b) of the Federal Rules of Civil Procedure (hereafter, "Rule 9(b)") apply to FCA claims because the FCA is a fraud statute.  United States ex rel. Clausen v. Lab Corp. of Am., Inc., 290 F.3d 1301, 1309-10 (11th Cir. 2002).  Rule 9(b) provides, in pertinent part that: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b). "The particularity requirement serves an important purpose in fraud actions by alerting defendants

to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (internal quotation marks omitted) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

A complaint satisfies Rule 9(b) when it sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Kammona v. Onteco Corp., 587 F. App'x 575, 581 (11th Cir. 2014) (quoting Ziemba, 256 F.3d at 1202). "The complaint must sufficiently recite 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" Etkin & Co. v. SBD, LLC, No. 11-CV-21321, 2013 WL 12092536, at *4 (S.D. Fla. Mar. 18, 2013) (quoting United States ex rel. Matheny v. Medco Health Sols., Inc., 671 F.3d 1217, 1222 (11th Cir. 2012)). Failure to comply with Rule 9(b)'s heightened pleading standard is grounds for dismissal. Thoroughbred Yacht, Inc. v. McConaghy Boats Ltd., No. 18-CV-60355, 2018 WL 5098964, at *7 (S.D. Fla. July 11, 2018) (citing In re Galectin Therapeutics, Inc. Sec. Litig., 843 F.3d 1257, 1269 (11th Cir. 2016)).

Defendants cite Bingham v. HCA Inc., 783 F. App'x 868 (11th Cir. 2019) for the proposition that materials obtain by Relator in discovery may not be used to satisfy the Rule 9(b) requirements in the SAC. See Memorandum [D.E. 226-1 at 8]. In Bingham, the Eleventh Circuit stated that "amendments that include material obtained during discovery, prior to a final decision on the motion to dismiss, may not be appropriate in cases to which the heighted pleading standard of Rule 9(b) applies if the amendment would allow the plaintiff to circumvent the purpose of Rule

8

9(b).” Id. at 876 (citing United States ex rel. Keeler v. Eisai, Inc., 568 F. App'x 783, 804–05 (11th Cir. 2014)). Thus, the Eleventh Circuit affirmed the district court's decision to strike, pursuant to Federal Rule of Civil Procedure 12(f) (hereafter, "Rule 12(f)"), the portions of an amended FCA pleading that were obtained through discovery; and concluded that "the remaining allegations d[id] not satisfy the pleading requirements of Rule 9(b)." Id. at 876-77.

In support of their Bingham argument, Defendants point to two discovery sources for Relator's Waiver Request Allegations in the SAC: (1) documents produced by Cartwright, J.K. and Able in response to Relator's discovery requests; and (2) documents produced by non-party Maersk Line, Limited ("Maersk") in response to Relator's subpoena served in this action (hereafter, "Maersk Subpoena"), which resulted in Maersk's production of documents it obtained from DOS pursuant to a Freedom of Information Act ("FOIA") request. See Memorandum [D.E. 226-1 at 9-11 (citing Maersk Subpoena [D.E. 226-6]; Maersk Line, Ltd. v. U.S. Dept. of State, Case No. 1:21-cv-00125-APM (D.D.C. filed Jan. 14, 2021)). In opposition, Relator argued that: nothing in the SAC establishes that the Waiver Request Allegations were obtained through discovery; that Rule 12(f) is inapplicable; and that Bingham is not binding and is inapposite. See Response [D.E. 238 at 6-11].

Relator's second and third contentions are unpersuasive given the similarities between this case and Bingham and the Court's prior determination that:

> To the extent that Relator argues that the Court should not follow Eleventh Circuit precedent set forth in *Bingham* and instead rely on non-binding cases that contravene the Eleventh Circuit's holding on *Bingham*, *see* ECF No. [215] at 2, n.2, the Court is not persuaded. The Court will address the issue if it becomes ripe and appropriately follow applicable Eleventh Circuit precedent.

See Order Adopting Magistrate Judge's Report and Recommendation [D.E. 218 at 19 n.9].

Moreover, with regard to its first contention, Relator conceded at the Hearing that it used

the Waiver Requests produced in discovery by Cartwright, J.K. and Able as the predicate for its Waiver Request Allegations as to those three Defendants. Relator also conceded at the Hearing, in connection with the public disclosure bar discussed below, that the other source of the Waiver Requests referenced in the Waiver Request Allegations was Maersk's document production in response to the Maersk Subpoena of DOS's responses in the FOIA litigation. Thus, it is undisputed that the source of the Waiver Requests is discovery obtained by Relator in this action. Further, as Relator acknowledged at the Hearing with regard to Cartwright, J.K. and Able, and must, by logical inference, apply to all eleven Defendants, the Waiver Requests are an essential predicate for Relator's FCA claims. Thus, striking the Waiver Requests obtained by Relator in discovery, in accordance with the Eleventh Circuit's holding in Bingham, compels dismissal of the SAC.

Notwithstanding the foregoing conclusion, and in an abundance of caution, the undersigned addresses Defendants' additional dismissal arguments.

### 2. *The FCA's public disclosure bar is not applicable.*

The FCA's public disclosure bar applies when "the allegations made by the plaintiff [have] been publicly disclosed;" and those allegations are "substantially the same" as what is "contained in public disclosure", unless the plaintiff is "an 'original source' of that information." United States ex rel. Osheroff v. Humana, Inc., 776 F.3d 805, 812 (11th Cir. 2015). The sources of public disclosure in this context are: "a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party"; "a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation"; and the "news media". See 31 U.S.C. § 3730(e)(4).

In opposition to Defendants' public disclosure bar arguments, Relator invokes the

10

"X+Y=Z" formula explained in United States ex rel. Bibby v. Mortg. Inv'rs. Corp, 987 F.3d 1340 (11th Cir. 2021) as follows: "Under that formula, 'one generally must present a submitted statement or claim (X) and the true set of facts (Y), which shows that X is untrue. These two things together allow the conclusion (Z) that fraud has occurred.'" Id. at 1353-54 (quoting United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc., 841 F.3d 927, 935 (11th Cir. 2016)). Thus, "[w]here only one element of the fraudulent transaction is in the public domain (*e.g.*, X), the *qui tam* plaintiff may mount a case by coming forward with either the additional elements necessary to state a case of fraud (*e.g.*, Y) *or* allegations of fraud itself (*e.g.*, Z)." Id. at 1354 (quoting United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 655 (D.C. Cir. 1994)).

At the Hearing, Relator conceded that the "X" element, consisting of the Waiver Requests cited in the SAC came from a public source; specifically, DOS's responses in the FOIA litigation, which were produced to Relator pursuant to the Maersk Subpoena.[3] According to Relator, however, the "Y" element, consisting of alternative shipping information that Relator claims renders the Waiver Requests false, came from the maritime schedules published by Maersk and other U.S. flag containerized shippers, which do not qualify as public sources under 31 U.S.C. § 3730(e)(4). Defendants countered at the Hearing that the shipping information comes within the broad sweep of the statute's news media category as information that can be accessed from publicly available websites. See Osheroff, 776 F.3d at 813 (noting that the term "news media" has been deemed by the Supreme Court to have "a broad sweep") (citing Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 290 (2020); Schindler Elevator Corp. v. United States ex rel. Kirk, 563 U.S. 401, 408 (2011)). However, it is not clear from the record that all of the shipping information relied upon by Relator, including historical

---

[3] As noted above, this concession impacts the Bingham analysis.

data, is accessible from internet websites. Therefore, the undersigned concludes that the public disclosure bar is not applicable here.[4]

### 3. *Insufficiency of Relator's "presentment" claim.*

Relator relies on DOS' Foreign Affairs Manual ("FAM") for its contention that TSPs must attach an approved Waiver Request to any invoice for payment on a foreign flag vessel shipment. See SAC [D.E. 222 ¶ 55] (quoting 14 FAM 616.2-2). Relator's theory is that the allegedly false Waiver Requests that had to accompany Defendants' invoices for their shipping services rendered those claims for payment false. See Response [D.E. 238 at 19].

However, as previously noted, Relator has wholly failed to submit any actual claims for payment by Defendants or to allege any details regarding such claims that would disclose their purported falsity. Relator does not dispute this failure and merely contends that Defendants were not shipping "CHAMP cargo for free but to 'profit' by billing the government." Id. at 16. However, this suggested inference does not satisfy Relator's burden under the FCA and Rule 9(b) to "allege the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions." Carrel v. AIDS Healthcare Found., Inc., 898 F.3d 1267, 1275 (11th Cir. 2018) (quoting Corsello v. Lincare, Inc., 428 F.3d 1008, 1013 (11th Cir. 2005)). Indeed, Relator does not allege that anything in the undisclosed claims for payment is false. Relator simply bootstraps the alleged falsity of the Waiver Requests to its "presentment" claim, contending that their attachment to foreign flag vessel shipping invoices, as required by FAM, renders the claims for payment false. However, this does not satisfy the essential element of falsity in a "presentment" claim. See Carrel, 898 F.3d at 1275 ("To satisfy [the Rule 9(b)] particularity standard in a *qui tam* action, a relator must allege the

---

[4] At the Hearing, Relator argued that it need not address the issue of whether it is an original source because the public disclosure bar does not apply. Having reached that conclusion, the undersigned does not address the original source exception either.

actual 'submission of a [false] claim'" and "must offer 'some indicia of reliability ... to support the allegation of *an actual false claim* for payment being made to the [g]overnment.'") (emphasis and alteration in original). Therefore, Relator's "presentment" claim is subject to dismissal pursuant to Rule 9(b). Id.

### 4. Insufficiency of Relator's "make-or-use" claim.

Relator's theory for its "make-or-use" claim is that the Waiver Requests themselves constituted false records or statements material to fraudulent claims. See Response [D.E. 238 at 19].

Defendants initially argue that there are only three instances among the SAC's ninety-six Waiver Request Allegations in which Relator's alternative U.S. flag vessel shipping option involved the same ports and the same sea route as the corresponding Waiver Request. See Memorandum [D.E. 226-1 at 20 & 20 n.8] (citing SAC [D.E. 222 ¶¶ 93, 146 & 187]); Exhibit 9 to Memorandum [D.E. 226-10 at lines 93, 146 & 187] (indicating "no" under the headings: "Different departure?", "Different arrival?", "Additional Route at Sea?" and "Transshipment"). [5] Defendants thus argue that only three out of ninety-six Waiver Requests can be said to appear false on their face but exclude one of the three based on the SAC's time period allegations. [6] Defendants further argue that even the timely Waiver Requests cannot be deemed false because Relator has failed to allege with specificity that each of alternative U.S. flag vessel had the capacity to transport the shipment in question at the time required at a reasonable rate. Defendants further

---

[5] These three Waiver Requests pertain to Defendants Able, J.K. and Western only. Id.
[6] Defendants argue that the Able Waiver Request is excludable because it is dated 2019, see SAC [D.E. 222 ¶ 93], which falls outside the 2008 through 2018 time period of the alleged fraudulent scheme purportedly carried out by Defendants. Id. ¶ 6; see also SAC's Prayer for Relief, id. at 119 (seeking civil penalties "for each and every false and fraudulent claim from 2008-2018"). Relator counters that there are a number of similar Waiver Request examples listed in the spreadsheets attached as exhibits to the SAC that fall within the 2008-2018 time period.

argue that Relator's allegations are insufficient to meet the FCA's "rigorous scienter requirement". See Memorandum [D.E. 226-1 at 24]; see also Universal Health Services, Inc. v. United States ex rel. Escobar 579 U.S. 176, 192 (2016) (noting that the FCA's materiality and scienter requirements are rigorous).

Relator counters that all of the Waiver Requests are false based on Defendants' certification "that no U.S. flag vessel was available at a particular port when one was available at a different port a short distance away, oftentimes mere miles." See Response [D.E. 238 at 18]. Relator posits that, "The applicable DOS guidance mandates the use of a U.S. flag vessel at a port *serving* the place where the transportation of effects originates and a port *serving* the actual destination." Id. (citing FAM 616.1(A)(1) (2018)). Thus, according to Relator, Defendants had the duty to locate ports serving the origination and/or destination end points of a shipment with U.S. flag vessels before submitting their Waiver Requests and their alleged failure to do so renders the Waiver Requests false.

Relator appears to be traveling under the theory of legal falsehood when it contends that the Waiver Requests did not comport with DOS guidance. See United States ex rel. Polukoff v. St. Mark's Hospital, 895 F.3d 730, 741 (10th Cir. 2018) (noting that FCA "[c]laims arising from legally false requests . . . generally require knowingly false certification of compliance with a regulation or contractual provision as a condition of payment"). In such a scenario, the scienter test for violation of a statute is that the actor "does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the [actor] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 41, 69 (2007). Defendants argue that Relator has failed to allege any facts in support of its legal falsehood theory of FCA

liability. Specifically, Defendants argue that Relator has failed to adequately allege that their reading of the applicable regulations was not reasonable, particularly given that "indirect routing or transhipping is not allowed unless waived". See Memorandum [D.E. 226-1 at 22] (citing GSA's Household Goods Tender of Service Manual).

Relator also contends that its conclusory allegations of Defendants' reckless disregard of the potential availability of U.S. flag vessels satisfy the scienter requirement of the FCA. "Congress added the 'reckless disregard' provision to the FCA in 1986 in order to ensure that 'knowingly' captured the 'ostrich' type situation whether an individual has buried his head in the sand and failed to make simple inquiries which would alert him that false claims are being submitted." United States ex rel. Phalp v. Lincare Holdings, Inc., 857 F.3d 1148, 1155 (11th Cir. 2017) (quoting Urquilla-Diaz v. Kaplan University, 780 F.3d 1039, 1058 (11th Cir. 2015) (internal quotations partially omitted)). "Although proof of a specific intent to defraud is not required, the statute's language makes plain that liability does not attach to innocent mistakes or simple negligence." Id. "Liability attaches to only those who act in gross negligence—those who fail to make such inquiry as would be reasonable and prudent to conduct under the circumstances. In other words, Congress did not intend to turn the False Claims Act, a law designed to punish and deter fraud, into a vehicle either punishing honest mistakes or incorrect claims submitted through mere negligence or imposing a burdensome obligation on government contractors rather than a limited duty to inquire." Id. Given these standards, Relator's bald allegation that Defendants recklessly disregarded the potential availability of U.S. flag vessels does not satisfy the FCA's rigorous scienter requirement. Escobar 579 U.S. at 192 (2016).

Based on the foregoing analysis, the undersigned concludes that Relator's "make-or-use" claim fails to sufficiently allege the FCA essential elements of falsity and scienter. Therefore,

Relator's "make-or-use" is subject to dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for lack of specificity pursuant to Rule 9(b).

5. ***Conclusion.***

Defendants request that dismissal of the SAC be with prejudice. As previously noted, the Court adopted the undersigned's recommendation that Relator's prior pleading be dismissed without prejudice and with leave to amend. See Order Adopting Magistrate Judge's Report and Recommendation [D.E. 218 at 19]. In her Report and Recommendation, the undersigned had concluded that "Relator [wa]s entitled to dismissal without prejudice and one opportunity to correct the deficiencies found in [its prior pleading], if it c[ould] do so." See Report and Recommendation [D.E. 207 at 17] (emphasis in the original) (citing Eiber Radiology, Inc. v. Toshiba America Med. Sys., Inc., 673 F. App'x 925, 929 (11th Cir. 2016)). "The Court agree[d] that Relator should be given an opportunity to replead." See Order Adopting Magistrate Judge's Report and Recommendation [D.E. 218 at 19]. Thus, the undersigned respectfully recommends that the SAC be dismissed with prejudice, subject to the government's prior written consent.

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Defendants' Joint Motion to Dismiss and to Strike be GRANTED WITH PREJUDICE and that this action be DISMISSED WITH PREJUDICE, subject to the government's prior written consent.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark

Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 7th day of July, 2022.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:   United States District Judge Beth Bloom
      Counsel of Record