**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel*. SEDONA PARTNERS LLC, <br><br> Plaintiff, <br><br> vs. <br><br> ABLE MOVING & STORAGE, INC., *et al.*, <br><br> Defendants. | Case No: 20-cv-23242-BLOOM/Louis |

**DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF THEIR JOINT RENEWED MOTION TO DISMISS THE CORRECTED SECOND AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

   I.    THE SAC SHOULD BE DISMISSED BECAUSE RELATOR'S "PRESENTMENT"
   CLAIM FAILS TO ALLEGE WITH SUFFICIENT PARTICULARITY THE SUBMISSION
   OF ANY FALSE CLAIMS TO THE GOVERNMENT. ......................................................... 2

   II.    THE SAC SHOULD BE DISMISSED BECAUSE RELATOR FAILS TO ALLEGE
   SCIENTER OR FALSITY ADEQUATELY. ........................................................................ 5

      A.   Relator's scienter assertions are conclusory allegations that fall far short of 12(b)(6)
      muster. ...................................................................................................................... 6

      B.   Relator failed to allege that any Defendant knew – objectively or subjectively – that its
      statement were false. ................................................................................................ 7

         1.    Defendants were not required to exhaust all possible options before certifying a
         U.S.-flagged vessel was not available. .............................................................. 9

         2.    Relator did not meet the scienter requirement, failing to show that Defendants
         objectively or subjectively knew they made false statements
         when seeking flag waivers. ................................................................................ 11

   III.    THE SAC SHOULD BE DISMISSED BECAUSE THE PUBLIC DISCLOSURE
   BAR APPLIES AS THE SAC IS PREMISED ON PUBLIC INFORMATION, RELATOR
   CANNOT BE AN ORIGINAL SOURCE, AND RELATOR HAS FAILED TO
   ADEQUATELY IDENTIFY ITSELF. ............................................................................... 13

      A.   The SAC Relies Only on Public Information. ............................................................ 14

      B.   Relator Cannot Qualify as an Original Source. ......................................................... 16

   IV.    THE SAC SHOULD BE DISMISSED BECAUSE RELATOR HAS FAILED TO
   ADEQUATELY IDENTIFY ITSELF. ............................................................................... 17

   V.    THE SAC SHOULD BE DISMISSED BECAUSE THE FCA'S  *QUI TAM*
   PROVISIONS VIOLATE ARTICLE II OF THE CONSTITUTION. .................................... 20

      A.   The FCA's *Qui Tam* Provisions Violate the Appointments Clause. ........................... 20

      B.   The FCA's *Qui Tam* Provisions Violate the Vesting and Take Care Clauses. ............. 22

      C.   This Court Should Follow Two Recent Decisions from the Middle District of Florida
      Finding the FCA's *Qui Tam* Provisions to Be Unconstitutional. ............................... 24

CONCLUSION .................................................................................................................... 25

REQUEST FOR HEARING ................................................................................................. 26

i

# **TABLE OF AUTHORITIES**

## CASES

*A1 Procurement, LLC v. Hendry Corp.*, No. 11-CV-23582, 2012 WL 12844745
  (S.D. Fla. Oct. 12, 2012) ............................................................................................ 18
*Buckley v. Valeo*, 424 U.S. 1 (1976) ................................................................................ 21
*Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267 (11th Cir. 2005) ...................... 4
*Confiscation Cases*, 74 U.S. 454 (1869) .......................................................................... 23
*Corsello v. Lincare, Inc.*, 428 F.3d 1008 (11th Cir. 2005) ......................................... 3, 4
*Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43 (2015) .................................. 23
*Edmond v. U.S.*, 520 U.S. 651 (1997) .............................................................................. 21
*Estate of Helmly v. Bethany Hospice & Palliative Care of Coastal Ga., LLC*,
  853 Fed. App'x 496 (11th Cir. 2021) ........................................................................... 3
*Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) .................... 24
*Heckler v. Chaney*, 470 U.S. 821 (1985) ......................................................................... 22
*Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186 (11th Cir. 2018) ........... 10, 11
*In re Grand Jury Investigation*, 916 F.3d 1047 (D.C. Cir. 2019) ................................... 22
*Lucia v. SEC,* 585 U.S. 237 (2018) .................................................................................. 22
*Mayor and City Council of Baltimore v. Trump*, 416 F.Supp.3d 452 (D. Md. 2019) ................. 10
*McMahon v. New York*, 145 S. Ct. 2643 (2025) .............................................................. 23
*Olhausen v. Arriva Med., LLC*, 124 F.4th 851 (11th Cir. 2024) ...................................... 4
*Patagonia, Inc. v Worn Out LLC*, No. 22-cv-23858 (Bloom, J.), 2023 WL 3172530
  S.D. Fla. May 1, 2023) ................................................................................................ 15
*Pearson v. Deutsche Bank AG*, No. 21-CV-22437 (Bloom, J.), 2023 WL 2610271
  (S.D. Fla. Mar. 23, 2023) ............................................................................................ 15
*Robertson v. U.S. ex rel. Watson*, 560 U.S. 272 (2010) ................................................. 23
*Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089 (11th Cir. 2020) ......................................... 4
*SafeCo Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ....................................................... 8
*Schindler Elevator Corp. v. U.S. ex. rel. Kirk*, 563 U.S. 401 (2011) ............................ 16
*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) ..................................... 20, 22, 23, 24
*Trump v. U.S.*, 603 U.S. 593 (2024) ............................................................................... 22
*Trump v. Wilcox*, 145 S. Ct. 1415 (2025) ....................................................................... 23
*U.S. ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353 (11th Cir. 2023) ................. 4
*U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350 (11th Cir. 2006) ................................ 3, 6
*U.S. ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340 (11th Cir. 2021) ............. 14, 16
*U.S. ex rel. Butler v. Shikara*, 748 F. Supp. 3d 1277 (S.D. Fla. 2024) ........................ 25
*U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301 (11th Cir. 2002) ................... 2
*U.S. ex rel. Crocano v. Trividia Health Inc.*, 615 F. Supp. 3d 1296 (S.D. Fla. 2022) ................. 16
*U.S. ex rel. Jacobs v. JP Morgan Chase Bank, N.A.*, 113 F.4th 1294 (11th Cir. 2024) .............. 14
*U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 Fed. App'x 693 (11th Cir. 2014) .............. 3
*U.S. ex rel. McFarland v. Fla. Pharmacy Sols.*, 358 F. Supp. 3d 1316 (M.D. Fla. 2017) ............. 8
*U.S. ex rel. McSherry v. SLSCO, L.P.*, 18-CV-5981, 2024 WL 1934443 (E.D.N.Y. May 2, 2024)
  ...................................................................................................................................... 7
*U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362 (C.D. Cal. 2014), *aff'd,* 678 F.
  App'x 594 (9th Cir. 2017) ............................................................................................. 7

ii

*U.S. ex rel. O'Connor v USCC Wireless Inv., Inc.,* 128 F.4th 276 (D.C. Cir. 2025)................... 17

*U.S. ex rel. Osheroff v. Humana, Inc.,* 776 F.3d 805 (11th Cir. 2015)................................... 13, 14

*U.S. ex rel. Plaintiffs v. Atlanta Primary Care Peachtree, PC,* No. 23-13845, 2025 WL 1823269
(11th Cir. July 2, 2025) ........................................................................................... 4

*U.S. ex rel. Polansky v. Exec. Health Res., Inc.,* 599 U.S. 419 (2023) ................................. 20, 24

*U.S. ex rel. Precision Co. v. Koch Indus., Inc.,* 971 F.2d 548 (10th Cir. 1992) ...................... 17

*U.S. ex rel. Publix Litig. P'ship, LLP v. Publix Super Markets, Inc.,* No. 8:22-cv-2361,
2025 WL 1381993 (M.D. Fla. May 13, 2025) ................................................................ 24

*U.S. ex rel. Schutte v. SuperValu Inc.,* 598 U.S. 739 (2023) ......................................... 5, 6, 8, 12

*U.S. ex rel. Shahbabian v. TriHealth, Inc.,* No. 1:20-cv-67, 2025 WL 2108197
(S.D. Ohio. July 28, 2025) ......................................................................................... 24

*U.S. ex rel. Sheldon v. Forest Labs., LLC,* 754 F. Supp. 3d 615 (D. Md. 2024),
*appeal argued,* No. 24-1793 (4th Cir. Sept. 10, 2025).................................................. 7, 8

*U.S. ex rel. Smart v. Christus Health,* 626 F.Supp.2d 647 (S.D. Tex. 2009) ......................... 16

*U.S. ex rel. Springfield Terminal Ry. v. Quinn,* 14 F.3d 645, 655 (D.C. Cir. 1994)................... 14

*U.S. ex rel. Zafirov v. Florida Med. Assocs., LLC,* 751 F. Supp. 3d 1293
(M.D. Fla. 2024) ................................................................................................ 2, 24, 25

*U.S. v. Donziger,* 38 F.4th 290 (2d Cir. 2022) ......................................................................... 22

*U.S. v. Gose,* No. 8:16-cv-03411-KKM-AEP, 2025 WL 1531137
(M.D. Fla. May 29, 2025), *appeal docketed,* No. 25-12009-A (11th Cir.)........................ 24

*U.S. v. HPC Healthcare, Inc.,* 723 F. App'x 783 (11th Cir. 2018) ............................................. 3

*U.S. v. King-Vassel,* 728 F.3d 707 (7th Cir. 2013) ................................................................... 6

*U.S. v. Nixon,* 418 U.S. 683 (1974)........................................................................................ 23

*U.S. v. Texas,* 599 U.S. 670 (2023)........................................................................................ 23

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar,* 579 U.S. 176 (2016) ........................... 4, 5

*Urquilla-Diaz v. Kaplan Univ.,* 780 F.3d 1039 (11th Cir. 2015) ............................................. 6

*Wisconsin Bell, Inc.* v. *U.S. ex rel. Heath,* 145 S. Ct. 498 (2025) .......................................... 20

*Yates v. Pinellas Hematology & Oncology, P.A.,* 21 F.4th 1288 (11th Cir. 2021)..................... 21

**STATUTES & CODES**

31 U.S.C. § 3729(a)(1)(A) ...................................................................................................... 2

31 U.S.C. § 3729(b)(1)(A) ...................................................................................................... 5

31 U.S.C. § 3729(b)(2)(A) ...................................................................................................... 2

31 U.S.C. § 3730(c) ............................................................................................................. 21

31 U.S.C. § 3730(c)(2)(A) .................................................................................................... 24

31 U.S.C. § 3730(e)(4)(A) .................................................................................................... 13

31 U.S.C. § 3730(e)(4)(B) .................................................................................................... 13

46 C.F.R. § 382.3 ................................................................................................................. 13

46 U.S.C. § 55305(a) ........................................................................................................... 12

Fed. R. Civ. P. 12(b)(6)........................................................................................................... 2

Utah Code § 48-3a-703 ........................................................................................................ 17

Wis. Stat. § 180.0702 .......................................................................................................... 17

**RULES**

Fed. R. Civ. P. 10(a) .............................................................................................................. 1

Fed. R. Civ. P. 12(c) ............................................................................................................ 25

Fed. R. Civ. P. 15(a)(2) ........................................................................................................ 25

Fed. R. Civ. P. 21 .................................................................................................................. 2

Fed. R. Civ. P. 8 .................................................................................................................... 5
Fed. R. Civ. P. 9(b) ............................................................................................................... 2

**OTHER AUTHORITIES**

*In re General Steamship Corp.*, Ltd., B-190281, B-190058 (Comp. Gen.), 1978 WL 10097 (Mar. 24, 1978) ................................................................................................................... 10
*To the Sec'y of State*:, B-106864 (Comp. Gen.), 1962 WL 3147 (Mar. 15, 1962) ...................... 11

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. II, § 1 ........................................................................................................ 22
U.S. Const. art. II, § 1, cl. 1 ............................................................................................... 20
U.S. Const. art. II, § 2, cl. 2 ............................................................................................... 20
U.S. Const. art. II, § 3 ........................................................................................................ 22

**INTRODUCTION**

This is a case brought by Sedona Partners LLC ("Relator") under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"). Defendants[1] submit this renewed joint[2] motion, pursuant to the Court's Order dated October 2, 2025 [ECF 280], to dismiss Relator's Corrected Second Amended Complaint [ECF 222] ("SAC"). This Motion presents arguments on issues previously briefed but not decided by either this Court or the Eleventh Circuit as well as an issue that subsequently has arisen and could not have been briefed previously. In particular:

- Relator's "presentment" claim (First Cause of Action) is insufficient for failure to allege a false claim for payment, consistent with the prior Report & Recommendation [ECF 251, at 12] ("R&R") of Magistrate Judge Alicia Otazo-Reyes, the underlying briefing, and this renewed motion.

- Relator's "make-or-use" claim (Second Cause of Action) is insufficient for failure to allege the FCA required elements of falsity and scienter, consistent with the prior R&R [*id.*, at 13-16], the underlying briefing, and this renewed motion which specifically addresses a subsequent change in the applicable law.

- FCA's public disclosure bar applies and the Relator is not an original source. Defendants previously objected to the contrary holding of the R&R. In the underlying briefing and this renewed motion, Defendants explain why Relator's allegations are insufficient to overcome the public disclosure bar.

- Relator has not identified itself adequately – not only failing to qualify as an original source but also failing to comply with Fed. R. Civ. P. 10(a), a further issue previously briefed by Defendants.

---

[1] "Defendants" refers to Defendants Able Moving & Storage, Inc., Arpin International Group, Inc., Cartwright International Van Lines, Inc., DeWitt Companies Limited, Hilldrup Companies, Inc., J.K. Moving & Storage, Inc., New World International, Ltd., Paramount Transportation Systems, Paxton Van Lines, Inc., and Western Express Forwarding LLC, collectively.

[2] The claims brought against each Defendant are separate and distinct. Relator does not in any way allege that any of the Defendants acted in concert with any other Defendant with respect to the acts forming the basis of the claims. It is the Defendants' position that there is no basis to maintain this single action against all Defendants collectively as each of the alleged claims are distinct as to each Defendant. However, the legal defenses as asserted herein are common to all Defendants against the claims asserted in the corrected second amended complaint. As such, the Defendants decided to submit a joint motion so as to avoid unnecessary time and expense for all Parties and the Court.

1

- The FCA is unconstitutional, as held in *U.S. ex rel Zafirov v. Florida Med. Assocs., LLC*, 751 F. Supp. 3d 1293 (M.D. Fla. 2024) currently on appeal to the Eleventh Circuit.

Accordingly, Defendants respectfully request that the Court dismiss both of the Relator's claims with prejudice for failure to plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b), failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and/or failure to comply with Fed. R. Civ. P. 10(a); or alternatively, stay this case pending resolution of the constitutional issue by the Eleventh Circuit.

## ARGUMENT

### I.   THE SAC SHOULD BE DISMISSED BECAUSE RELATOR'S "PRESENTMENT" CLAIM FAILS TO ALLEGE WITH SUFFICIENT PARTICULARITY THE SUBMISSION OF ANY FALSE CLAIMS TO THE GOVERNMENT.

The Magistrate Judge, in her R&R, concluded that Relator had failed to adequately allege that *any* false claims were presented to the government, and that as a result the SAC should be dismissed pursuant to Fed. R. Civ. P. 9(b). In particular, Relator "wholly failed to submit any actual claims for payment by Defendants or to allege any details regarding such claims that would disclose their purported falsity." ECF 251, at 12-13. This Court did not previously reach this matter [*see* ECF 265] but should now adopt the R&R's presentment analysis and dismiss the SAC, with prejudice.

As previously emphasized,[3] to state a presentment claim under the FCA, a relator must allege with particularity the submission of a false claim for payment to the government. *See, e.g.*, 31 U.S.C. § 3729(a)(1)(A); *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002) ("The submission of a claim is... the *sine qua non* of a False Claims Act violation.").[4] Rule 9(b) demands that such allegations be pled with specificity: "Because it is the submission of a fraudulent claim that gives rise to liability under the False Claims Act, that submission must be

---

[3] To the extent necessary, Defendants incorporate by reference their prior briefing of this issue. *See, e.g.,* ECF 226-1, at 10-12; ECF 257, at 7-10.

[4] The FCA narrowly defines a claim as "any request or demand, whether under a contract or otherwise, for ***money or property*** . . . that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient." 31 U.S.C. § 3729(b)(2)(A) (emphasis added).

2

pleaded with particularity and not inferred from the circumstances." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005).

Relator has not, and cannot, satisfy that standard. Instead of identifying any false claims submitted to the government, it asks this Court to infer falsity from (1) a strained reading of a single section of the State Department's Foreign Affairs Manual ("FAM") regarding foreign-flag waivers language which further post-dates the time period asserted to be relevant in the SAC, and (2) the inference that requests for payments including those allegedly false waivers were filed by each Defendant. *See* ECF 222, ¶ 55.[5] The R&R comprehensively rejected that theory, because Relator "simply bootstraps the alleged falsity of the Waiver Requests to its 'presentment' claim, contending that their attachment to foreign flag vessel shipping invoices, as required by FAM, renders the claims for payment false." ECF 251, at 12; *see also* ECF 218, at fn.6 (dismissing First Amended Complaint ("FAC") for reasons including, for presentment, Relator's failure to allege for each Defendant both "the submission of a false claim" in addition to "the falsity of the bids and waiver requests"). As a matter of law, Relator has built a house of cards that cannot satisfy the essential element of falsity in a presentment claim, and thus collapses.

Relator asserts that it uniquely should be exempt from the established FCA pleading requirements, asserting that they require "needless detail." *See* ECF 255, at 10-11. But it cites no relevant authority. *Contrast U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (citation omitted) ("[t]he particularity requirement of Rule 9 is a nullity if a Plaintiff gets a ticket to the discovery process without identifying a single claim"). To satisfy Rule 9(b), a relator typically must provide "the 'who,' 'what,' 'where,' 'when,' and 'how'" of the fraudulent request, *Corsello*, 428 F.3d at 1014, including "specific billing information – such as dates, times, and amounts of actual false claims or copies of bills." *U.S. v. HPC Healthcare, Inc.*, 723 F. App'x 783, 789 (11th Cir. 2018) (citation omitted). Even if "a defendant bills the government for some or most of its services, the burden remains on a relator." *Estate of Helmly v. Bethany Hospice & Palliative Care of Coastal Ga., LLC*, 853 Fed. App'x 496, 502 (11th Cir. 2021). Indeed, a case previously cited by the Relator – *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 Fed. App'x 693 (11th Cir. 2014) – actually explained that a "corporate outsider who only speculated" that defendants

[5] The quoted version of 14 FAM 616.2-2 was effective only on October 26, 2020. *See also* ECF 226-1, at 16.

3

"must have submitted" false claims does not fulfill the pleading requirements of the FCA. *See id.* at 708. That is exactly this case.

Nor, as previously briefed, has or can Relator assert that it has direct, first-hand knowledge that would enable it to alternatively invoke the narrow exemption recognized in *Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1275 (11th Cir. 2005).[6]  Without that foundation, Relator's claim that it is "implausible" that false claims were not submitted [*see* ECF 255 at 10] is certainly not an acceptable indicia of reliability and precisely the type of inference the Eleventh Circuit long has deemed to be insufficient. *See Corsello,* 428 F.3d at 1013 (inferences of fraudulent submissions are speculative and insufficient to satisfy Rule 9(b)); *see also Carrel,* 898 F.3d at 1275-76  (requiring "some indicia of reliability" that false claims were actually submitted) (quotation and citation omitted).

Notably, since the R&R was issued, the Eleventh Circuit has confirmed that a relator with no direct, personal knowledge cannot request that the standards of Fed. Civ. P. 9(b) be "relaxed." It instead "must include details about specific false claims submitted to the government."  *U.S. ex rel. Plaintiffs v. Atlanta Primary Care Peachtree, PC,* No. 23-13845, 2025 WL 1823269, at *4 (11th Cir. July 2, 2025); *see also Olhausen v. Arriva Med., LLC,* 124 F.4th 851, 869 (11th Cir. 2024) ("[R]elators must plead their claims with particularity. It's not enough under Rule 9(b) to speculate that a claim must have been submitted."); *U.S. ex rel. 84Partners, LLC v. Nuflo, Inc.,* 79 F.4th 1353, 1361-62 (11th Cir. 2023). Relator's attempt to pursue an FCA action without details about the submission of false claims would improperly expand the FCA into an "all-purpose antifraud statute," contrary to *Universal Health Servs., Inc. v. U.S. ex rel. Escobar,* 579 U.S. 176, 194 (2016) ("The False Claims Act is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations.") (citations omitted).[7]

---

[6] As discussed in Section III.C. herein, Relator impermissibly has concealed its identity; the record before this Court includes no information whatsoever about its credentials.

[7] Relator's failure to allege facts relating to payment is also fatal to its make-or-use claim, since the necessary allegations include a payment by the government. *See, e.g., Ruckh v. Salus Rehab., LLC,* 963 F.3d 1089, 1106 (11th Cir. 2020); *see also* ECF 218, at fn.6 (dismissing make-or-use claim in FAC).

For these reasons, Relator's facially-deficient allegations should be dismissed with prejudice.[8]

## II.   THE SAC SHOULD BE DISMISSED BECAUSE RELATOR FAILS TO ALLEGE SCIENTER OR FALSITY ADEQUATELY.

Relator has failed to plead facts sufficient to permit an inference that Defendants had the requisite scienter to submit false claims or statements regarding the availability of U.S.-flagged vessels. Relator contends that the Defendants knew or should have known of alternative routing options, many of which required transshipment of cargo material distances and even across the U.S. Relator's conclusory contentions, often consisting solely of blanket assertions, fail to meet the scienter element. Relator is a corporate outsider and has not alleged facts that would suggest Relator has relevant insight into the knowledge of any (let alone all) Defendant(s) sufficient to meet the minimal pleading obligations mandated by Rule 8.

Since this Court's previous ruling, the Supreme Court has clarified that the scienter requirement is subjective—the focus is now on what a defendant subjectively thought or believed at the time the claim was made. *U.S. ex rel. Schutte v. SuperValu Inc*., 598 U.S. 739, 752 (2023). The Supreme Court has tasked courts with "'strict enforcement' of the FCA's 'rigorous' scienter requirement." *Escobar*, 579 U.S. at 192. To plead scienter, Relator must allege facts sufficient to support a plausible inference that each Defendant knew its claims or statements were false or fraudulent and made them anyway. *Schutte*, 598 U.S. at 751 ("On their face and at common law, the FCA's standards focus primarily on what respondents thought and believed.").

A defendant acts knowingly only if the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U. S. C. § 3729(b)(1)(A). "First, the term 'actual knowledge' refers to whether a person is 'aware of' information." *Schutte*, 598 U.S. at 751 (citations omitted). "Second, the term 'deliberate ignorance' encompasses defendants who are aware of a substantial risk that their statements are false, but intentionally avoid taking steps to confirm the statement's truth or falsity." *Id*. (citations omitted). Third, "[a] person acts with reckless disregard 'when the actor knows or has reason to know of facts that would lead a

---

[8] In the first R&R, ECF 207 at 17, the Magistrate Judge warned that: "Relator is entitled to dismissal without prejudice and <u>one opportunity</u> to correct the deficiencies found in the First Amended Complaint, if it can do so." Relator does not get additional bites at the apple

reasonable person to realize' that harm is the likely result of the relevant act." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1058 (11th Cir. 2015) (quoting *U.S. v. King-Vassel*, 728 F.3d 707, 713 (7th Cir. 2013)). In other words, "the term 'reckless disregard' similarly captures defendants who are conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway." *Schutte*, 598 U.S. at 751 (citations omitted). Finally, FCA "liability does not attach to innocent mistakes or simple negligence." *Urquilla-Diaz,* 780 F.3d at 1058 (citation omitted).[9]

### A. Relator's scienter assertions are conclusory allegations that fall far short of 12(b)(6) muster.

Relator's allegations of scienter here consist of conclusory assertions that Defendants "knowingly" submitted false waiver requests "because they knew that at that time DOS did not have the resources to audit every waiver request," [SAC ¶ 8], and that "Defendants knew and/or acted in deliberate ignorance and/or acted in reckless disregard of the fact that U.S. flag vessels were available when they submitted the waiver requests." [SAC ¶ 83]. Such allegations do not suffice.

As a threshold point, Relator is an admitted corporate outsider who opted to cloak itself in a corporate veil of a limited liability company. No allegation in any iteration of the Complaint would permit the Court to infer that Relator actually has knowledge of the mindset of any of the individual Defendants let alone all of them. *See Mastej*, 591 F. App'x at 708 ("Importantly… [relator] was not a corporate outsider who *only speculated* that the Defendants must have submitted or paid claims to the government" and "[h]e *did not base his knowledge on rumors or mere conjecture*.") (citations omitted) (emphasis added); *Atkins*, 470 F.3d at 1359 (upholding dismissal with prejudice where relator "portrays the scheme and then summarily concludes that the defendants submitted false claims to the government" and "does not profess to have firsthand knowledge of the defendants' submission of false claims"). Nor has Relator alleged any facts that could explain how each Defendant, individually, "knew" that (a) regulations mandated the sort of tortured, circuitous routes Relator cites as examples in the SAC, (b) the DOS's purported resource

---

[9] For the handful of direct route examples included in the SAC, Relator fails to allege facts to establish that the certification of non-availability, if anything, was nothing more than an innocent mistake or simple negligence.

constraint, and/or (c) how such knowledge translated into awareness that each Defendant was submitting specific false claims.

**B.** __Relator failed to allege that any Defendant knew – objectively or subjectively – that its statement were false.__

The SAC also lacks specific allegations related to Defendants' knowledge or subjective belief regarding (i) ostensibly applicable transshipment requirements that Relator erroneously applies to the time period in question, and (ii) the TSPs respective and individualized decisions to proceed at the time of submission despite knowledge that they were violating the law (which they were not). The SAC further fails to make any allegations that Defendants were made aware of such issues, or circumstances from which an inference can be made that Defendants learned of such a transshipment requirement and flaunted it.

Relator here is not an employee of any of the Defendants and could not have been a position to know what if any knowledge any of the Defendants had. Furthermore, Relator cannot and has not alleged that Relator personally told Defendants of any statutory requirements. Nor can Relator allege any such report had been disregarded by any Defendant. Relator has no basis to infer that Defendants had knowledge of the (purported) falsity of the statements that they were making to seek foreign flag waivers. *See U.S. ex rel. Sheldon v. Forest Labs., LLC,* 754 F. Supp. 3d 615, 654 (D. Md. 2024), appeal argued, No. 24-1793 (4th Cir. Sept. 10, 2025) (dismissal because an audit alone was insufficient to plead scienter where it did not reveal the mental state of the defendant); *U.S. ex rel. McSherry v. SLSCO, L.P.*, 18-CV-5981, 2024 WL 1934443, at *2 (E.D.N.Y. May 2, 2024) (citations omitted) (dismissal because Relator failed to allege scienter "at the time" of Defendant's submission). Absent such a basis, Relator's claims must fail

Instead, Relator cites to regulatory requirements that did not even take effect until 2020 [SAC ¶¶ 50-56] to establish scienter. Relator makes no other allegations from which this Court could infer that each individual Defendant knew or should have known that it was submitting a false statement in support of a foreign flag waiver request. Conclusory speculation about Defendants' mental state is entirely insufficient to meet Relator's Rule 8(a) pleading obligations. *See U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1405–06 (C.D. Cal. 2014), *aff'd,* 678 F. App'x 594 (9th Cir. 2017) (finding allegation of scienter "too conclusory" where relator failed to allege facts supporting assertion that defendants knew they were submitting false claims)

The Court previously dismissed the FAC, finding that Relator failed to allege a false statement as required to pursue a claim under the FCA. ECF 218 at 19. Relator attempted to cure this defect by adding 96 instances in which Defendants allegedly misrepresented the unavailability of a U.S.-flagged vessel. SAC ¶¶ 86–196. Though voluminous, these allegations of "misrepresentations" cannot suffice to demonstrate the requisite scienter without evidence that the Defendants *actually* submitted any false claims. *See U.S. ex rel. McFarland v. Fla. Pharmacy Sols.*, 358 F. Supp. 3d 1316, 1329 (M.D. Fla. 2017) (holding that allegations of the defendant recklessly "urging" its employees to authorize false claims were insufficient to plead scienter absent evidence that defendant's employees ever authorized or submitted any false claims). Relator does not allege any legal mandate for the transshipments detailed in these paragraphs. Relator has not alleged facts sufficient to show that these alternative vessels actually had capacity for the alleged cargo and would have offered the capacity to Defendants at a fair and reasonable rate. Furthermore, Relator does not once allege that a Defendant *knew* a U.S-flagged vessel was available (with capacity) to service the shipment but certified otherwise in its waiver request.[10]

Magistrate Judge Otazo-Reyes focused on these pleading failures in her last R&R. ECF 251 at 15 ("Relator's bald allegation that Defendants recklessly disregarded the potential availability of U.S. flag vessels does not satisfy the FCA's rigorous scienter requirement."). In so ruling, Magistrate Judge Otazo-Reyes relied on the then-applicable two-part test in *SafeCo Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). The Supreme Court subsequently shifted the analysis from the question of objective reasonableness to an analysis of the Defendant's subjective knowledge. *Schutte*, 598 U.S. at 752. Relator's SAC fails irrespective of which standard applies. Relator fails to allege in the SAC facts that support the inference that any Defendant: (i) actually knew of the availability (and capacity) of a U.S.-flagged vessel at the time of making a certification in a waiver request, (ii) intentionally avoided taking steps to confirm such availability, or (iii) was conscious of a substantial and unjustifiable risk that was the case when submitting waiver requests. Consequently, even following the developments in *Schutte*, Magistrate Judge Otazo-Reyes' finding with regard to scienter still stands. *See Sheldon*, 754 F. Supp. 3d at 642 ("In my view, however, these developments do not change the outcome previously arrived at by this Court.

---

[10] Nor has Relator pled facts sufficient to establish that Defendants were deliberately indifferent to or had a reckless disregard of alternative US-flagged carriers that actually had capacity to carry the shipments on time to the destination.

Relator's allegations of scienter remain insufficient, even when evaluated under the "subjective" standard set forth in *Schutte*.") (citation omitted).

### 1. *Defendants were not required to exhaust all possible options before certifying a U.S.-flagged vessel was not available.*

Throughout the SAC, Relator asserts Defendants should have exhausted all options—no matter how convoluted—before certifying that a U.S.-flagged vessel was not available. To cite just two of many possible examples:

- Relator alleges that a Defendant "falsely represented" that no U.S.-flagged vessel was available to transport goods from Atlanta to Yokohama, Japan on or before November 7, 2017 (SAC ¶ 92), and then leaps to the wholly unwarranted conclusion that Defendants violated the FCA because the goods could have been shipped by land ***across the U.S. to Los Angeles, California***, and then transported by Maersk from Los Angeles to Yokohama. *Id.* (emphasis added).

- Relator alleges that another Defendant falsely represented a U.S.-flagged vessel was not available to ship goods from Long Beach, California to Abu Dhabi, United Arab Emirates on or before March 6, 2018, based on the supposed "availability" of a cross-continental route in which this Defendant should have (1) shipped the goods by land ***from California to Norfolk, Virginia***, (2) used a Maersk ocean transport to a different port in the United Arab Emirates, and (3) transshipped the goods within the UAW to Abu Dhabi. *Id.* ¶ 120 (emphasis added).

Relator bases these assertions on guidance from the Household Goods Tender of Service ("HTOS") and DOS manual that was implemented in 2020 [SAC ¶¶ 50-56], two years after the conclusion of the "scheme" that the SAC alleges took place between 2008 and 2018. *Id.* ¶ 6. Relator does not and cannot explain how a 2020 regulatory change provides "notice" of what was required of TSPs from 2008-2018. Such *post hoc* regulatory changes do not meet the requirements for adequately alleging the mens rea requirements under the FCA.

Indeed, in the 96 examples provided by Relator, 93 involve different departure ports, different arrival ports, and/or an additional sea route, often with a lengthy leg of land transportation.[11] *See* **Exhibit 1** (summary of the 96 examples in SAC). In none of these instances does Relator allege that a U.S.-flagged vessel had the available cargo space to actually carry the cargo in question, nor that any Defendant subjectively knew of such availability. Adding insult to injury, many of the transactions cited in the SAC are alleged have occurred in 2019, after the

---

[11] The only routes that involve the same ports and the same sea route are alleged in ¶¶ 93, 146, and 187 of the SAC.

"scheme" is alleged by Relator to have concluded, SAC ¶ 6 ("From 2008 through 2018, Defendant TSPs carried out a fraudulent scheme. . ."), and after the time for which Relator's Prayer for Relief seeks penalties. *Id*. ¶¶ 93, 104, 117-18, 140-41, 144, 158-59, 162-64, 166-74, Prayer for Relief (seeking penalties related to 2008-2018).[12]

Relator has not identified any statute or agency guidance that required Defendants to rule out _all_ possible alternative routes (no matter how convoluted) before submitting a foreign flag waiver. Instead, the DOS guidance was to the contrary. The FAM explains that a foreign flag vessel may be used where U.S.-flagged vessels "do not operate *directly* between" the port of departure and the port of arrival and "U.S.-flag vessels are not available for any segment of the journey." 14 FAM 610, 14 FAM 616.1(a)(3) (emphasis added), versions 2005 to 2019 attached as **Exhibit 2**.[13] Under those circumstances, if a direct U.S.-flag vessel was not available but a direct foreign-flag vessel was available, the use of the foreign-flag vessel was *mandatory*. *See* 14 FAM 610, 14 FAM 616.1(a)(3); *In re General Steamship Corp.*, Ltd., B-190281, B-190058 (Comp. Gen.), 1978 WL 10097 (Mar. 24, 1978). Importantly, until 2020, the FAM stated that "it is not necessary to transship the shipment to another port in order to utilize a U.S.-flag vessel" where the destination is a seaport. 14 FAM 616.1(c) (2019). The pre-2020 versions of the FAM did not contain a definition of "transshipment." The 2020 version of FAM—which postdates the alleged "scheme" in this  case—defined "transshipment" to mean "any change in the mode of transportation, *e.g.*, rail to ship, or in the conveyance, ship to ship." 14 FAM 616.1(c) (2020) (attached as **Exhibit 3**). For its part, the HTOS Manual, in a section detailing the responsibilities of TSPs under the CHAMP Program, states that "[i]ndirect routing or transshipping is not allowed

---

[12] As to Defendant Coleman American Moving Services, Inc. ("Coleman"), the only two paragraphs that reference transactions involving Coleman occurred in 2019. *See* SAC ¶¶ 117-18. This defect constitutes an additional independent ground for dismissing the SAC as to Coleman. For other Defendants, some transactions in the exhibits to the SAC did not occur until 2020. *See, e.g.,* ECF 222-6 at 22 (final entry).

[13] Relator cites the FAM in the SAC. SAC ¶ 55. DOS describes the FAM as "a single, comprehensive, and authoritative source for the Department's organizations structures, policies, and procedures." *See* https://fam.state.gov/ (last accessed Oct. 11, 2025); *see also Mayor and City Council of Baltimore v. Trump*, 416 F.Supp.3d 452, 473 (D. Md. 2019) ("the Manual 'convey[s] codified information to Department staff and contractors so they can carry out their responsibilities in accordance with statutory, executive, and Department mandates'"). The FAM, which is indisputably authentic, incorporated by reference in the SAC, and central to Relator's claim by its own admission, may be considered by this Court in deciding this Motion to Dismiss. *See Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018).

unless waived by [the Government]." HTOS Manual (2010), § 3.3, relevant portions attached as **Exhibit 4**.[14] This approach is consistent with decades of guidance from the Comptroller General of the U.S. concerning the shipment of Government-generated cargo under the Cargo Preference Act. *See, e.g., To the Sec'y of State*:, B-106864 (Comp. Gen.), 1962 WL 3147 (Mar. 15, 1962). Nothing in these manuals establishes the duties that Relator attempts to impose on an entire industry.

**2.   *Relator did not meet the scienter requirement, failing to show that Defendants objectively or subjectively knew they made false statements when seeking flag waivers.***

Relator has failed to show that Defendants acted with the requisite scienter, in that Defendants subjectively knew or believed they were incorrectly seeking foreign flag waivers, in connection with nearly every instance alleged in the SAC (89 of the 96), because those involve alternatives that would have required some form of transshipment—whether shipment by vessel, truck, or train to a different port of departure, or to a different port of arrival than the contracted port of arrival, notwithstanding that the destination was a seaport.[15] Sixty-five of Relator's alternatives would have required a Defendant to move the goods from the contracted port of departure to another port in order to utilize a U.S.-flagged vessel. Fifty-two of Relator's alternatives would have required a Defendant to deliver goods to a different port.[16]

The FAM's authoritative guidance establishes that Defendants had no obligation to transship goods to a different port of departure—including across the U.S. (*see, e.g.*, SAC ¶¶ 90, 120, 143, 194-95)—just to use a U.S.-flagged vessel when the destination was a seaport. Likewise, Defendants had no obligation to use a U.S.-flagged vessel if that vessel would not deliver the goods

---

[14] This same restriction appears in next version of the HTOS Manual from 2017, which governed the majority of the shipments alleged in the SAC. *See* **Exhibit 4**, HTOS Manual (2017), § 3.3. The HTOS manual is incorporated by reference in the SAC, central to Relator's claims, and its authenticity cannot be disputed, meaning that it may be considered by the Court deciding a motion to dismiss. *See Hi-Tech Pharm., Inc.*, 910 F.3d at 1189.

[15] The phrases "contracted port of departure" and "contracted port of arrival" are used herein to refer to the ports where DOS contracted with a Defendant to ship the goods from and to deliver the goods, respectively.

[16] For example, Relator asserts that instead of using a foreign ship that would ship goods directly to Port Izmir, Turkey (the contracted port of arrival), the Defendant had to use a U.S.-flag vessel that would have landed the goods in Mersin, Turkey, notwithstanding that Mersin is 11 hours away from Port Izmir, thus necessitating another journey—by ship, truck, or train (i.e., transshipment)— to deliver the goods to Port Izmir. SAC ¶ 149.

11

to the contracted port of arrival and required transshipment to that port of arrival. In fact, the HTOS Manual expressly disallows any such transshipment. Thus, not only does the SAC lack any allegation that the Defendants subjectively knew or believed they were flaunting such a requirement, the SAC further fails to demonstrate that transshipment was required at the time in question. Against this backdrop, where Relator did not personally inform Defendants about the errors of their ways, and does not allege that any warnings were otherwise provided to Defendants to make them aware, Relator has not and cannot logically allege that Defendants subjectively knew that they were violating a requirement that did not exist by seeking foreign flag waivers.

Given the lack of any allegation by Relator regarding the subjective knowledge or belief of any of the Defendants' actions at the time in question, and given the truth of their statements, Relator has failed to allege facts establishing scienter plausibly demonstrating that Defendants knowingly violated the Act or the FCA, and thus has failed to allege that Defendants acted with the alleged scienter in seeking foreign flag waivers. *See Schutte*, 598 U.S. at 752 ("Both the text and the common law [of the FCA] … point to what the defendant thought when submitting the false claim….").

Relator fails to meet the scienter requirement with a blanket assertion in the SAC that all ten Defendants turned a blind eye to Maersk's alleged availability to transport goods on numerous occasions by never calling Maersk or checking its published route list to determine its availability. [SAC ¶¶ 86–196.] In its oft-repeated conclusory allegations, Relator offers no facts regarding what any Defendant knew or believed at the time of submission, or practices and procedures for identifying  vessel availability. Tellingly, Relator does not allege that any of the Defendants contacted Maersk or checked the published route list, learned that a U.S.-flagged ship was available (with capacity at a fair and reasonable rate), and still submitted a waiver request claiming that no US-flagged vessel existed to meet the needs of the shipment. Relator is not in a position to offer facts to support its conclusion because, by its own admission, it lacks direct or inside knowledge as to what any Defendant actually did to verify the availability of a U.S.-flagged vessel before seeking a waiver.

Moreover, Relator does not allege that any of the  U.S.-flagged ships identified in the SAC offered fair and reasonable rates—let alone any facts to fit that conclusion within the definition provided by the regulations. The Act provides that the U.S.-flagged vessel must be "available ***at fair and reasonable rates***." 46 U.S.C. § 55305(a) (emphasis added). The regulations set out six

factors to consider in calculating a "fair and reasonable rate" including calculating an "operating cost component," "capital cost component," "port and cargo handling cost component," "brokerage and overhead component," "voyage days," and amount of cargo carried. *See* 46 C.F.R. § 382.3.

Relator also fails to allege that any of the U.S-flagged vessels it identifies in the SAC had the capacity to accommodate the goods at issue, and further fails to allege any facts related to any Defendant's subjective knowledge or belief regarding the availability and capacity of any such U.S.-flagged vessels. The fact that a U.S.-flagged vessel was moored at the pier does not mean that it had the capacity to ship Defendants' goods.

In sum, Relator has failed to state a plausible claim that any of the Defendants possessed the requisite knowledge or subjective belief that they did not apply the correct application of the DOS guidance in determining (i) the availability of a foreign-flagged vessel, and (ii) fair and reasonable rates, when Defendants submitted foreign flag waivers for shipments

### III.   THE SAC SHOULD BE DISMISSED BECAUSE THE PUBLIC DISCLOSURE BAR APPLIES AS THE SAC IS PREMISED ON PUBLIC INFORMATION, RELATOR CANNOT BE AN ORIGINAL SOURCE, AND RELATOR HAS FAILED TO ADEQUATELY IDENTIFY ITSELF.

Defendants, in their prior motion to dismiss the Second Amended Complaint [ECF 226-1], established that the FCA's public disclosure bar (31 U.S.C. § 3730(e)(4)(A)) applies and the SAC violated it because it was predicated on publicly-disclosed information. Defendants adopt and renew those arguments, as discussed further below.[17]

The public disclosure bar applies when "the allegations made by the plaintiff [have] been publicly disclosed" and those allegations are "substantially the same" as what is "contained in public disclosure," *U.S. ex rel. Osheroff v. Humana, Inc.,* 776 F.3d 805, 812 (11th Cir. 2015), unless "the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(B). This Court previously dismissed the FAC [ECF 149] because it violated the public disclosure bar [ECF 218]; accordingly, the pending question is whether the allegations added in the SAC provide any basis for the Court to reverse itself. They do not. The new claims in the SAC originate in publicly-disclosed information, and thus dismissal is required.

---

[17] To the extent necessary, Defendants incorporate by reference their prior briefing of this issue. *See, e.g.,* ECF 226-1, at 87-89; ECF 241, at 5-6.

### A.  <u>The SAC Relies Only on Public Information.</u>

Defendants have established that all of the information relied upon by the Relator was public. As a result, the public disclosure bar applies. In response to Defendants' motions to dismiss, Relator has primarily invoked the "X + Y = Z" test adopted in this circuit by *U.S. ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340 (11th Cir. 2021). Under that test, a relator must "present a submitted statement or claim (X) and the true set of facts (Y), which shows that X is untrue … these two things together allow the conclusion (Z) that fraud has occurred."  *Id.* at 1353.

But as separately argued by Defendants – and accepted by the Magistrate Judge [ECF 251, at 12], the foreign-flag waiver requests newly invoked by Relator were not claims for payment and thus could not disclose "X."   Moreover, even if those waiver requests were deemed to have supplied the "X," Relator's so-called "Y", *e.g.*, information about the availability of a Maersk ship is derived from public sources, as Relator itself concedes. (*See, e.g.,* ECF 238, at 9 and SAC at ¶ 83 ("Defendants easily could have obtained knowledge of available U.S. flag vessels to transport shipments by contacting Maersk …, the largest provider of U.S. flag vessels, via email or phone or consulting the [Maersk] *published* route list") (emphasis added).).

The Magistrate Judge, in her R&R, observed that Relator acknowledged at oral argument that the "X" element came from a public source, but maintained that the "Y" element – information about shipping availability – came from sources that were not public. (*See* ECF 251, at 11.). Other information newly relied upon by Relator in the SAC comes from sources conceded to be public, such as discovery materials and records of the U.S. Census Bureau and U.S. Customs. *See* ECF 226-1, at 6-8. The R&R accepted that if available online, maritime schedules would fall within the broad sweep of the term "news media" (*see Osherhoff*, 776 F.3d at 813)[18] but postulated that the public disclosure bar had not been shown to apply at this stage of the litigation because "it is not clear from the record that all of the shipping information relied upon by Relator, including

---

[18] The Eleventh Circuit since has confirmed that the term "news media" as used in the FCA is to be interpreted broadly, encompassing all websites that are "publicly available" and "intended to disseminate information." *See U.S. ex rel. Jacobs v. JP Morgan Chase Bank, N.A.,* 113 F.4th 1294, 1301 (11th Cir. 2024). Moreover, the D.C. Circuit decision relied upon by *Bibby – U.S. ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994) – indicated that a public disclosure need not even be "in a form not accessible to most people, *i.e.,* engineering blueprints on file with a public agency" to qualify as a public disclosure.

historical data, is accessible from internet websites," *i.e.*, it had not been demonstrated that all of the information relied upon by Relator was public.  (*See* ECF 251, at 11-12.)[19]

Defendants respectfully disagree with the R&R's analysis, and consistent with their prior objections to the R&R [ECF 253] urge this Court which did not previously reach these issues [*see* ECF 265] to now determine that the public disclosure bar applies; that Relator does not qualify as an original source; and that for those reasons the dismissal of the SAC, with prejudice, is warranted.

The SAC and other pleadings submitted by Relator include countless direct and indirect admissions that Maersk's shipping information, *i.e.*, the "Y" factor relied upon by the Relator, was publicly available. Thus, the material elements of the alleged fraud were already in the public domain. In addition to the citations provided above [ECF 238, at 139 and SAC ¶ 83]; *see also* SAC ¶ 86, *et seq.* (repeatedly asserting that Able should have consulted Maersk published route list); ¶ 96, *et seq.* (same for Arpin); ¶ 106, *et seq.* (same for Cartwright), ¶ 120, *et seq.* (same for DeWitt), ¶ 132, *et seq.* (same for Hilldrup), ¶ 143, *et seq.* (same for JK Moving), ¶ 155, *et seq.* (same for New World), ¶ 166, *et seq.* (same for Paramount), ¶ 176, *et seq.* (same for Paxton), ¶ 186, *et seq.* (same for Western). In other words, on every occasion that Relator alleged there to be an alternative U.S.-flag vessel available – *see generally* SAC ¶¶ 86-196 – Relator represented that to be publicly-available information. It cannot now disavow its own pleadings; the allegations in the SAC "are judicial admissions that bind the parties who make them."  *See Pearson v. Deutsche Bank AG*, No. 21-CV-22437 (Bloom, J.), 2023 WL 2610271, at fn.12 (S.D. Fla. Mar. 23, 2023) (internal edits and citation omitted).

Additionally, although Relator does not itself provide examples of or citations to the published schedules relied upon by the SAC, the Internet Archive establishes that Maersk's website for transportation on behalf of the U.S. government during the timeframe at issue published weekly sailing schedules for its U.S.-flag ships. [20]

---

[19] The R&R did not reach whether Relator qualified as an original source.
[20] *See, e.g.,* https://web.archive.org/web/20160815011323/ http://customercorner.maersklinelimited.com/ and https://web.archive.org/web/ 20160909082533/http://customercorner.maersklinelimited.com/wp-content/uploads/2016/08/MLL-Sailing-Schedule-Week-32-2016.pdf (archived link and schedule for week of August 10, 2016); **Exhibits 13-14** (same). *See also Patagonia, Inc. v Worn Out LLC*, No. 22-cv-23858 (Bloom, J.), 2023 WL 3172530, at *7 (S.D. Fla. May 1, 2023) (listing cases in which courts have taken judicial notice of the Internet Archive).

Finally, Relator suggests that even if "X" and "Y" were both public, the public disclosure bar was not triggered because the alleged fraud associated with them ("Z") was made apparent only to Relator. But Relator primarily relies on out-of-circuit and unpublished decisions that do not support that proposition. [*See* ECF 238, at 14; ECF 258, at 3.][21]  For example, in *U.S. ex rel. Smart v. Christus Health*, 626 F.Supp.2d 647, 655 (S.D. Tex. 2009), the issue was whether an obscure paragraph in a private lawsuit was sufficient to put the government on notice; it does not indicate that if "X" and "Y" are both public, a relator still may clear the public disclosure bar by supplying "Z".  Indeed, that would contradict the explicit language of *Bibby*, 987 F.3d at 1353-54, the controlling law in this circuit, which establishes that "Z" is not a foundation for a FCA case if the material elements of the alleged fraud are all public.

Critically, the public disclosure bar is intended to be construed broadly. *See Schindler Elevator Corp. v. U.S. ex. rel. Kirk*, 563 U.S. 401, 408 (2011); *see also U.S. ex rel. Crocano v. Trividia Health Inc.,* 615 F. Supp. 3d 1296, 1304 (S.D. Fla. 2022) ("the False Claims Act requires a court to dismiss an action or claim if substantially the same allegations were publicly disclosed before the *qui tam* action was initiated"). Where, as here, Relator has utilized public information to generate ***both*** the "X" and the "Y" of its allegations, the public disclosure bar applies, immaterial allegations and any "Z" conclusions are irrelevant, and as a consequence there is no basis on which the SAC can survive this motion to dismiss.

### B.  Relator Cannot Qualify as an Original Source.

Additionally, in dismissing the FAC, this Court already ruled that the Relator did not qualify as an original source that would be exempt from the public disclosure bar, and the Relator since has not even attempted to dispute that conclusion. [*See* ECF 226-1, at 7-8.] Indeed, Relator cannot qualify as an original source because, even based upon the limited information now available to the Court, judicially-noticeable data proves that Relator did not exist during the timeframes it asserts to be relevant, and thus it could not have had independent knowledge of the information at issue.

It is blackletter law that a relator cannot qualify as an original source if it was not in existence at the time that the alleged fraud occurred. *See, e.g.*, *U.S. ex rel. Precision Co. v. Koch*

---

[21] Notably, Relator invokes its "industry knowledge" – but as discussed in Section IV herein, Relator impermissibly has concealed its identity; the record before this Court includes no information whatsoever about its credentials.

*Indus., Inc.*, 971 F.2d 548, 553-54 (10th Cir. 1992). Nor can a corporate shell step into the shoes of an individual member to qualify as an original source. *See, e.g., U.S. ex rel. O'Connor v USCC Wireless Inv., Inc.,* 128 F.4th 276, 287 (D.C. Cir. 2025).

Relator previously has denied that it was the "Sedona Partners LLC" that formerly was organized in Florida. *See* ECF No. 97 at 20 n.7; ECF 141 at 20 n.4. But according to public records, there are only five other entities in the U.S. that have been authorized to use the name "Sedona Partners LLC" – none of which can qualify as an original source:

- A "Sedona Partners, Limited Liability Company" was established in Utah in 1995 and dissolved in 1997. *See* **Exhibit 5**. A dissolved Utah limited liability company may not carry on any business, including litigation, apart from winding up its activities and affairs. *See* Utah Code § 48-3a-703.

- A "Sedona Partners LLC" was established in Wisconsin in 2012 and dissolved in 2014. *See* ECF No. 226-9. A dissolved Wisconsin limited liability company may not carry on any business, including litigation, apart from winding up its activities and affairs. *See* Wis. Stat. § 180.0702.

- A "Sedona Partners LLC" was established in New Mexico on March 17, 2020, after any of the fraud alleged by Relator supposedly occurred. *See* ECF 226-7.

- A "Sedona Partners LLC" was established in Delaware on August 11, 2021, not only after the fraud alleged by Relator supposedly occurred, but after the commencement of this litigation. *See* ECF No. 226-8.

- A "Sedona Partners LLC" was established in New Jersey on June 5, 2025, not only after the fraud alleged by Relator supposedly occurred, but after the commencement of this litigation. *See* **Exhibit 6**.

Given these incontrovertible facts, if the public disclosure bar applies, the Relator simply cannot proceed with this case because it cannot possibly qualify as an original source, and accordingly dismissal with prejudice is required.

### IV. THE SAC SHOULD BE DISMISSED BECAUSE RELATOR HAS FAILED TO ADEQUATELY IDENTIFY ITSELF.

Even if the Court concludes that the public disclosure bar is inapplicable in this case and thus that the Court need not determine whether Relator was an original source, Relator's general failure to reveal its identity is contrary to the FCA and Fed. R. Civ. P. 10(a), and further mandates

the dismissal of the SAC. Apart from whether it may qualify as an original source, Relator's refusal to identify itself beyond claiming to be an "insider in the TSP business" [*see* ECF No. 221-1] is facially insufficient. *See, e.g., A1 Procurement, LLC v. Hendry Corp.*, No. 11-CV-23582, 2012 WL 12844745, at * 4 (S.D. Fla. Oct. 12, 2012) ("Neither the public nor Defendants should be left to guess who exactly Relators are in this qui tam action.") (citation omitted); *see also Zocaras v. Castro*, 465 F.3d 479, 484 (11th Cir. 2006) ("A trial is not a masquerade party nor is it a game of judicial hide-n-seek where the plaintiff may offer the defendant the added challenge of uncovering his real name").

The FCA generally cannot be invoked without the disclosure of the relator's identity. For example, a relator cannot conceal itself from scrutiny by creating a limited liability company for litigation purposes. *See A1 Procurement,* at *4 ("[D]efendants have the right to know who their accusers are," and this "presumption in favor of public access is especially strong where … the filings involve allegations of fraud against the government") (internal quotation marks omitted); *see also Fed. Recovery Servs. Inc. v. U.S.*, 72 F.3d 447, 453 (5th Cir. 1995).

Indeed, Fed. R. Civ. P. 10(a) allows a case to be maintained under a pseudonym only in exceptional cases, *i.e.*, if "the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally embedded presumption of openness in judicial proceedings.'" *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992), *quoting Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981); *see also U.S. ex rel. Doe v. Lincare Holdings, Inc.,* No. 15-CV-19, 2017 WL 752288, *8 (S.D. Miss. Feb. 27, 2017), citing *U.S. ex rel. McLain v. Flour Enterprises*, Nos. 06-11229, 09-4191, 2013 WL 4721367, at *1 (E.D. La. Sept. 3, 2013) ("The same principles that disfavor John Doe plaintiffs in other cases apply equally to qui tam matters").

In prior filings, Defendants have challenged the non-disclosure in this FCA case. *See* ECF 80-1; 100-1; 226-1, 241-1, and 261-1. But the Relator consistently has declined to provide any clarification about its identity. Notably, in response to requests for production and interrogatories, Relator has refused to provide basic information about the corporate history of Sedona Partners LLC or any documents regarding its creation and management, among other refused requests, invoking the "Relator's members privacy rights." *See, e.g.,* **Exhibits 7-12** (Relator discovery

responses),[22] in response to interrogatory no. 5 and request for production no. 2 from multiple Defendants.

Further, none of Relator's four complaints contain any information as to who the Relator is, other than its name. In its response to Cartwright's Motion to Dismiss, Relator responded to the challenge as to its corporate status merely by stating that "the Sedona Partners entity that Cartwright identifies has no affiliation with Relator in this case, which is not, and never has been incorporated in Florida." [ECF 97 at p. 20, n.7].  Relator did not reveal which "Sedona Partners" entity it is, or where it is incorporated.

This deliberate concealment continued in the Eleventh Circuit Court of Appeal. That is, Eleventh Circuit Rule 26.1-3 requires every party to identify all interested persons ("CIP") with every Brief filed. Relator's entire CIP consists of a single statement as follows: "No such subsidiary, conglomerate, affiliate, parent corporation, or publicly held corporation that owns 10% or more of the party's stock exists to disclose." Relator's CIP failed to disclose a list of trial judges, attorneys, persons, associations of persons, firms, partnerships or corporations having an interest in the outcome of this case or appeal, or other identifiable legal entities related to Relator.

Relator is a limited liability company. As such, it undoubtedly has members which have an interest in this litigation. Relator also has failed to disclose the names of any other entity, attorney or firm with an outcome in this litigation.

Further, it must be assumed that the failure was intentional. That is, throughout the course of these proceedings, Relator has deliberately concealed the true identity or nature of the entity which filed suit. Specifically, Relator has carefully chosen to conceal where it is located, what it does, how it obtained the inside information required to maintain an FCA action, or the identity of the members of the limited liability company, which should certainly have an interest in the outcome of this litigation and thus should have been identified in the CIP.

---

[22] Discovery responses may be considered by the Court in determining whether dismissal is appropriate under Rule 10(a) pursuant to the Court's inherent authority which does not limit the Court to the four corners of the Complaint. *See, e.g., Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (noting the "district court's inherent authority to control its docket and ensure the prompt resolution of lawsuits, which in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2) and Rule 10(b)").

But Relator has never moved this Court for any form of protection of its identity, much less met the high threshold for privacy. *See, e.g., U.S. ex rel. Graves v. Internet Corporation for Assigned Names and Numbers, Inc.,* 398 F.Supp.3d 1307, 1313 (N.D. Ga. 2019) ("fears of retaliation including interference with a relator's employment do not justify indefinitely sealing a qui tam case"). Defendants should not be required to continue to engage in litigation with a chimera. Relator has been clear that it has no intention of pulling back its veil, even in discovery; it cannot avoid the consequences. For failure to comply with the FCA and Fed. R. Civ. P. 10(a), the SAC should be dismissed with prejudice.

## V. THE SAC SHOULD BE DISMISSED BECAUSE THE FCA'S *QUI TAM* PROVISIONS VIOLATE ARTICLE II OF THE CONSTITUTION.

The 1986 amendments to the FCA violate the Appointments, Vesting, and Take Care Clause of Article II by allowing private relators to exercise executive power. Under Article II, "the 'executive Power' — all of it — is 'vested in a President.' " *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1). An enforcement action on behalf of the United States is a "quintessentially executive power." *Id.* at 219. As head of the Executive Branch, the President may appoint "lesser executive officers" to "assist the supreme Magistrate in discharging the duties of his trust." *Id.* at 213 (citation omitted); *see* U.S. Const. art. II, § 2, cl. 2. Those "lesser officers must remain accountable to the President, whose authority they wield," and only they may exercise executive power on the President's behalf. *Id.*

In the years since the previous proceedings before this Court, and two years ago, several members of the Supreme Court have stated that there are "substantial arguments" that the FCA's *qui tam* provisions are "inconsistent with Article II" of the Constitution. *U.S. ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 442 (2023) (Kavanaugh, J., joined by Barrett, J., concurring); *id.* at 449 (Thomas, J., dissenting); *see also Wisconsin Bell, Inc.* v. *U.S. ex rel. Heath*, 145 S. Ct. 498, 515 (2025) (Kavanaugh, J., joined by Thomas, J., concurring). Statutory provisions that vest executive authority in private individuals who are not appointed by the President and fall outside of his duty to take care that the laws are faithfully executed cannot stand.

### A. The FCA's *Qui Tam* Provisions Violate the Appointments Clause.

Article II, Section 2, Clause 2 of the Constitution, commonly known as the Appointments Clause, provides that the President "shall nominate," subject to Senate confirmation, ambassadors, ministers, consul, Supreme Court justices "and all other Officers of the United States, whose

Appointments are not herein otherwise provided for, and which shall be established by Law," and further the Congress may authorize the President, courts, and department heads to appoint "such inferior Officers, as they think proper…." The Appointments Clause is "among the significant structural safeguards of the constitutional scheme." *Edmond v. U.S.*, 520 U.S. 651, 659 (1997).

The anonymous limited liability company relator in this case was not appointed by the President, but effectively functions as an officer of the U.S. and should be subject to the Appointments Clause. The LLC, or its members (1) exercise significant authority pursuant to the laws of the United States and (2) occupy a continuing position established by law. To be an officer, an individual must exercise "significant authority pursuant to the laws of the United States." *Buckley v. Valeo*, 424 U.S. 1, 126 (1976)

In *Buckley*, the Court voided the original structure of the Federal Election Commission — which permitted congressional leaders to appoint commissioners, *id.* at 113 — as a violation of the Appointments Clause because the commissioners performed executive enforcement power. *Id.* at 138-40. The Court stated that "[a] lawsuit is the ultimate remedy for a breach of the law, and it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'" *Id.* at 138 (citation omitted). Because "[s]uch functions may be discharged only by persons who are 'Officers of the United States' within the language" of the Appointments Clause, *id.* at 140, Congress has no authority to delegate civil law enforcement authority to persons who do not qualify as officers, including relators.

The constitutional concerns are greatest in declined cases, but do not vanish when the government intervenes, because the relator has the "right to continue" as an "unrestricted" party unless the government makes certain specified showings, such as that the relator is using the litigation "for purposes of harassment." 31 U.S.C. § 3730(c). Consequently, "the fact that the government delegates some portion of [its] power to private litigants does not change the governmental character of the power exercised." *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1310 (11th Cir. 2021) (citation omitted).

Against this background, the FCA's *qui tam* provisions cannot be squared with the constitutional structure. Article II does not authorize private individuals to choose whether, when, where, and under what theory to file suit on the government's behalf—even when such a suit can result in punitive treble damages and, in cases involving thousands of individual claims, potentially astronomical statutory penalties. To go a step further, Article II certainly does not authorize

21

anonymous corporate entities—in this case, a limited liability company whose members have never been disclosed—to serve as an officer of the United States and make such decisions. Discretionary prosecutorial decisions belongs to the Executive Branch, and "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

Here, Relators exercise significant authority by bringing enforcement actions on behalf of the United States. Seeking "daunting monetary penalties against private parties on behalf of the United States in federal court" is a "significant" and "quintessentially executive" power. *Seila Law*, 591 U.S. at 219, 224-225. Relators also occupy a "continuing position established by law." *Lucia v. SEC,* 585 U.S. 237, 245 (2018) (internal quotation marks and citation omitted). That requirement "stress[es] ideas of tenure and duration" and asks whether the position is impersonal, durable, and statutory, rather than personal, transient, and discretionary. *Id*. (internal quotation marks, citation, and alteration omitted). Relator also occupies a "continuing position" under any sensible understanding of that concept: they bring suit in the name of the government; perform functions specified by statute; and commerce cases that can go on for years. If special prosecutors who act in a single matter are officers, *U.S. v. Donziger*, 38 F.4th 290, 296-299 (2d Cir. 2022); *In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019), so too are single-case relators.

## B.   The FCA's *Qui Tam* Provisions Violate the Vesting and Take Care Clauses.

Article II, Section 1 of the Constitution ("the Vesting Clause") provides that "[t]he executive Power shall be vested in a President of the United States of America," while Article II, Section 3 ("the Take Care Clause") provides in pertinent part that the President "shall take Care that the Laws be faithfully executed…."  In cases decided while this case was on appeal, the Supreme Court has forcefully reaffirmed the authority of the President, in whom all executive power vests, over the Executive Branch. In *Trump v. U.S.*, 603 U.S. 593 (2024), the Court held that under Article II, "'the Executive Branch possesses authority to decide how to prioritize and how aggressively to pursue legal actions against defendants who violate the law….'" *Trump,* 603 U.S. at 620 (citations omitted). Consequently, "once it is determined that the President acted within the scope of his exclusive  authority, his discretion in exercising such authority cannot be subject to further judicial examination." *Id.* at 608. Even the dissenting Justices agreed that "Congress cannot act on, and courts cannot examine, the President's actions on subjects within his 'conclusive and preclusive' constitutional authority." *Id.* at 609; *see id.* at 678 (Sotomayor, J., dissenting). In

22

recent months, the Court has extended presidential authority under Article II still further, voiding injunctions that prohibited the President from terminating even appointees who occupy defined-term positions at nominally "independent" agencies. *See Trump v. Wilcox,* 145 S. Ct. 1415, 1416 (2025) ("Because the Constitution vests the executive power in the President, see Art. II, § 1, cl. 1, he may remove without cause executive officers who exercise that power on his behalf, subject to narrow exceptions recognized by our precedents.…") (citing *Seila Law*); *Trump v. Boyle,* 145 S. Ct. 2653 (2025) (following *Wilcox*); *see also McMahon v. New York,* 145 S. Ct. 2643 (2025) (Mem.) (permitting President to take steps to eliminate Cabinet department created by Congress and tasked by Congress to performed specified functions).

*Qui tam* provisions violate the Take Care and Vesting Clauses. The President must faithfully execute his Article II powers, including the authority to bring lawsuits on behalf of the United States. Such suits must be brought by government attorneys "subject to the direction, and within the control of, the Attorney-General," who answers to the President. *Confiscation Cases*, 74 U.S. 454, 458-59 (1869). As discussed, presidential power under Article II includes the "exclusive authority and absolute discretion to decide whether to prosecute a case" on the United States' behalf. *U.S. v. Nixon*, 418 U.S. 683, 693 (1974); *U.S. v. Texas*, 599 U.S. 670, 678-679 (2023). Courts cannot entertain "any suit, civil or criminal, as regularly before them, if prosecuted in the name and for the benefit of the United States," unless the government is represented by the Executive. *Confiscation Cases*, 74 U.S. at 457. The 1986 amendments to the FCA delegated some of the Attorney General's authority to relators in a manner that is inconsistent with this foundational requirement. Such a structure lacks "even a fig leaf of constitutional justification," *Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 62 (2015) (Alito, J., concurring).

The FCA's *qui tam* provisions violate the Vesting and Take Care Clauses because the President lacks any means to supervise or remove relators. The Constitution requires that the President retain the "ability to supervise and remove [those] who wield executive power in his stead." *Seila Law*, 591 U.S. at 238. Statutes that strip the President of this authority are unconstitutional. The Framers understood that "[a] basic step in organizing a civilized society" was to take the "sword" of law-enforcement actions "out of private hands and turn it over to an organized government, acting on behalf of all the people." *Robertson v. U.S. ex rel. Watson*, 560 U.S. 272, 282-83 (2010) (Roberts, C.J., dissenting from dismissal of writ of certiorari as improvidently granted); *see also Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S.

477, 484 (2010) (President cannot "be restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer...."); *Seila Law,* 591 U.S. at 213 (Congress could not limit the President's authority to remove the director of the Consumer Financial Protection Bureau only for "inefficiency, neglect, or malfeasance." ). For the government to dismiss a *qui tam* action, it must intervene and then demonstrate that dismissal is warranted, *see* 31 U.S.C. § 3730(c)(2)(A); *Polansky,* 599 U.S. at 438  — an impermissible burden. The burden applies even when relators have no meaningful connection to the government and pursue a purely self-interested search for financial bounty, sometimes under circumstances — such as those in this case — where the government has no idea who the relator is or who controls the litigation.

This case violates Article II. The government declined to prosecute, so Relator, an unidentified entity created specifically for this litigation, decided to do so. Although Relator exercises an Executive function, it does so hidden behind a corporate veil without any oversight, and the government would have to intervene then demonstrate dismissal is warranted to have any say in the outcome of litigation. This oversteps into the President's duty, violating the Vesting and Take Care clauses.

      C.  **This Court Should Follow Two Recent Decisions from the Middle District of Florida Finding the FCA's *Qui Tam* Provisions to Be Unconstitutional.**

Based on these arguments and authorities, a judge in the Middle District of Florida has twice held the FCA's *qui tam* provisions to be unconstitutional. *U.S. ex rel. Zafirov v. Florida Medical Associates, LLC,* 751 F. Supp. 3d 1293 (M.D. Fla. 2024), *appeal pending,* No. 24-13581 (11th Cir.); *U.S. v. Gose*, No. 8:16-cv-03411-KKM-AEP, 2025 WL 1531137 (M.D. Fla. May 29, 2025), *appeal docketed*, No. 25-12009-A (11th Cir.). Another court, while considering itself bound by Sixth Circuit precedent, certified an interlocutory appeal so that the court of appeals could consider whether *Polansky,* 599 U.S., tacitly overrules that precedent. *U.S. ex rel. Shahbabian v. TriHealth, Inc.,* No. 1:20-cv-67, 2025 WL 2108197, at *8 (S.D. Ohio. July 28, 2025). While other courts have declined to follow *Zafirov*, *see U.S. ex rel. Publix Litig. P'ship, LLP v. Publix Super Markets, Inc.,* No. 8:22-cv-2361, 2025 WL 1381993, at *3 (M.D. Fla. May 13, 2025) (Barber, J.) (collecting cases), this Court should follow Judge Mizelle's persuasive analysis..[23]

---

[23]   Defendants acknowledge that a judge in this District has rejected a challenge to the constitutionality of the FCA's qui tam provisions. *U.S. ex rel. Butler v. Shikara*, 748 F. Supp. 3d

In *Zafirov,* the district court encountered a case much like this one — a protracted piece of litigation in which the U.S. had declined to intervene. The court decided the case on a motion for judgment on the pleadings Fed. R. Civ. P. 12(c).. First, it concluded that the defendants had not waived their constitutional challenge, and in the alternative it would grant leave to amend responsive pleadings under Fed. R. Civ. P. 15(a)(2) to permit the Article II issue to be raised. 751 F. Supp. 3d at 1305. Turning to the merits, and based on the same arguments set forth herein, the *Zafirov* court determined that an FCA relator is an officer of the U.S. who possesses civil enforcement authority on behalf of the U.S., and does so while occupying a continuing position, and as a result is subject to the Appointments Clause. *Id.* at 1307. It further concluded that there is no "*qui tam* exception" to Article II. *Id.* at 1318-22. Having made those findings, the court declined to reach other constitutional arguments, and concluded that the only remedy was dismissal. This Court should reach the same conclusions and dismiss the SAC on Article II grounds.

## CONCLUSION

Defendants respectfully request that this Court (1) dismiss both claims in the SAC with prejudice pursuant to Rule 9(b) for failure to plead fraud with particularity, and/or (2) dismiss both claims pursuant to Rule 10(a) and Rule 12(b)(6) for failure to reveal its identity, failure to state a cognizable claim under the FCA, failure to state a claim pursuant to constitutional law, and pursuant to the FCA's public disclosure bar; or, alternatively, (3) stay this case pending resolution of the constitutional issue in cases currently pending before the Eleventh Circuit. Additionally, to the extent not dismissed on one or more of the foregoing grounds, the joinder of the Defendants in the SAC is unjustified, and dismissal or alternatively severance of the SAC is warranted pursuant to Rule 21.[24]

---

1277 (S.D. Fla. 2024) [see attached]. Notably, in *Butler* the individuals bringing the qui tam suit were identified individuals, allowing the Court to evaluate their role and assess whether they possessed the qualities of an officer of the United States. *See id.* at 1296. By contrast, Relator remains anonymous and hidden behind a corporate veil, heightening the constitutional concerns identified in *Zafirov.*

[24] As an alternative to dismissal, severance pursuant to Rule 21 is also warranted because Relator does not allege that any conspiracy or joint venture ever existed between any of the Defendants – a necessary predicate pursuant to Rule 20 for Relator to join them all in an action which alleges distinct facts and circumstances as to each defendant. *See, e.g., Omega, SA v. Individuals, Business Entities, and Unincorporated Associations*, 650 F. Supp. 3d 1349, 1352 (S.D. Fla. 2023) ("similar issues of liability alone are not sufficient to warrant joinder; the claims must also share operative facts"). *See also Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 669, 672 (S.D.

## <u>REQUEST FOR HEARING</u>

Pursuant to Local Rule 7.1(b)(2), Defendants respectfully request a hearing on their Joint Renewed Motion to Dismiss, which involves overlapping parties, detailed factual allegations, and complex causes of action against ten (10) separate Defendants.  Further, Defendants believe that a hearing on their Joint Renewed Motion to Dismiss will conserve judicial resources and the resources of the Parties.  Defendants' Joint Renewed Motion to Dismiss the SAC will fully dispose of all claims in a complex pleading stemming from serious fraud claims under the FCA against ten Defendants, separately, none of whom are alleged to have acted in concert with another Defendant. Moreover, this is a unique case in that Relator has failed to identify itself or its relationship, if any, to any of the eleven Defendants.  The Request for Hearing is made in good faith and will not prejudice Relator in any way.  Defendants estimate that ***two hours*** is needed for a hearing on their Motion to Dismiss.

October 14, 2025                 Respectfully submitted,

By: /s/ *Irene Oria*
Irene Oria, Esq., Fla. Bar No. 484570
irene.oria@pierferd.com
PIERSON FERDINAND LLP
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
Telephone: 786.873.4603

*Counsel for Able Moving & Storage, Inc.*

---

Fla. 2011) (stating that "permissive joinder of Defendants would likely prejudice Defendants due to the numerous logistical burdens that would arise" including at depositions and in mini-trials). As this Court has recognized, "[i]n the Rule 21 context, the court has broad discretion to sever parties based on misjoinder. … Some courts characterize this discretion as 'virtually unfettered.'" *Alhassid v. Bank of America, N.A.*, 60 F. Supp. 3d 1302, 1326 (S.D. Fla. 2014) (Bloom, J.). *See also Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, fn.10 (11th Cir. 1986) ("a Rule 21 motion to drop a party may be recast as a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted").

By: /s/ *Michael I. Kessler*
Michael Isaac Kessler, Esq., Fla. Bar No. 117784
mkessler@ohaganmeyer.com
O'HAGAN MEYER, PLLC
21550 Oxnard Street, Suite 1050
Woodland Hills, CA 91367
Telephone: 213.306.1610

Alan D. Albert, Esq.
*Appearing pro hac vice*
AAlbert@ohaganmeyer.com
O'HAGAN MEYER, PLLC
411 East Franklin Street, Suite 500
Richmond, VA 23219
Telephone: 804.403.7144

C. Quinn Adams, Esq.
Charles G. Meyer, III, Esq.
Charles M. Sims, Esq.
*Appearing pro hac vice*
CAdams@ohaganmeyer.com
CMeyer@ohaganmeyer.com
CSims@ohaganmeyer.com
O'HAGAN MEYER, PLLC
411 East Franklin Street, Suite 500
Richmond, VA 23219
Telephone: 804.403.7125

*Counsel for J.K. Moving & Storage, Inc.*

By: /s/ *Nicholas E. Pantelopoulos*
Nicholas E. Pantelopoulos, Esq., Fla. Bar. No. 103751
nep@kmazuckert.com
KMA ZUCKERT LLC
355 Alhambra Circle, Suite 1201
Coral Gables, FL 33134
Telephone: 305.506.2050

Jolyon ("Jol") A. Silversmith, Esq.
*Appearing pro hac vice*
jsilversmith@kmazuckert.com
KMA ZUCKERT LLC
888 17th Street, N.W., Suite 700
Washington, DC 20006
Telephone: 202.298.8660

*Counsel for Defendant Arpin International Group, Inc.*

By: */s/ Lorayne Perez*
Lorayne Perez (Fla. Bar No. 85265)
Akerman LLP
Three Brickell City Centre
98 Southeast Seventh Avenue, Ste. 1100
Miami, Florida 33131
Tel.: (305) 982-5685
Fax: (305) 374-5095
lorayne.perez@akerman.com

Noam B. Fischman (*pro hac vice*)
Akerman LLP
750 Ninth Street, NW, Suite 750
Washington, DC 20001
Tel.: (202) 824-1725
Fax: (202) 393-5959
noam.fischman@akerman.com

*Counsel for Defendant Cartwright International Van Lines, Inc.*

*By:  /s/ Matthew J. Langley*
Matthew J. Langley (FL #097331)
Stephen Chahn Lee (*admitted pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL  60606-4637
Telephone:  312.212.4949
mlangley@beneschlaw.com
slee@beneschlaw.com

Michael B. Silverstein (*admitted pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
41 South High Street, Suite 2600
Columbus, OH 43215-6164
Telephone: 614.223.9300
msilverstein@beneschlaw.com

*Counsel for DeWitt Companies Limited, LLC*

By:  */s/ Justin C. Sorel*
Justin C. Sorel, Esq., Fla. Bar No. 0016256

28

Barry Postman, Esq., Fla. Bar No. 991856
Justin.Sorel@csklegal.com
Barry.Postman@csklegal.com
COLE, SCOTT & KISSANE P.A.
222 Lakeview Ave., Suite 120
West Palm Beach, Florida 33401
Telephone: 561.383.9229

Maura K. Monaghan
Kristin D. Kiehn
Melanie M. Burke
*Appearing pro hac vice*
mkmonaghan@debevoise.com
kdkiehn@debevoise.com
mburke@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone: 212.909.6000

*Counsel for Defendant Hilldrup Companies, Inc.*

By:  */s/ Andrew Michael Gordon*
Andrew Michael Gordon, Esq., Fla. Bar No. 68886
agordon@hinshawlaw.com
HINSHAW & CULBERTSON LLP
1 East Broward Blvd., Suite 1010
Fort Lauderdale, FL 33301
Telephone: 954.467.7900

Brian R. Zeeck
Ruddy Abam
*Appearing pro hac vice*
bzeeck@hinshawlaw.com
rabam@hinshawlaw.com
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312.704.3028

*Counsel for New World International, Ltd.*

By:  */s/ Robert M. Borak*
Robert M. Borak, Esq., Fla. Bar. No. 015923
Andrew R. Spector, Esq., Fla. Bar. No. 634093

29

Robert.Borak@spectorrubin.com
Andrew.Spector@spectorrubin.com
SPECTOR RUBIN, P.A.
3250 Mary Street, Suite 405
Miami, Florida 33133
Telephone: 305.537.2000

*Counsel for Defendant Paramount Transportation Systems*

By:  /*s/ Robert Harris*
Robert Harris, Esq., Fla. Bar No. 817783
rharris@stackfernandez.com
STACK FERNANDEZ & HARRIS, P.A.
1001 Brickell Bay Drive, Suite 2650
Miami, Florida 33131
Telephone: 305.371.0001

Stuart A. Berman
*Appearing pro hac vice*
saberman@lerchearly.com
LERCH EARLY & BREWER, CHTD.
7600 Wisconsin Avenue Center, Suite 700
Bethesda, Maryland 20814
Telephone:  301.657.0729

*Counsel for Defendant Paxton Van Lines, Inc.*

By:  /*s/ Craig B. Shapiro*
Craig B. Shapiro, Esq., Fla. Bar ID 105295
BUCHBINDER & ELEGANT, P.A.
46 S.W. 1st Street, 4th Floor
Miami, Florida 33130
Telephone:  305.358.1515
cshapiro@belaw.cc

Thomas F. Murphy, Esq.
*Appearing pro hac vice*
FRIEDLANDER MISLER, PLLC
5335 Wisconsin Avenue, N.W., Suite 600
Washington, DC  20015
Telephone:  202.872.0800
tmurphy@dclawfirm.com

*Counsel for Defendant Western Express Forwarding, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court for the Southern District of Florida using the CM/ECF document filing system, which will send transmissions of Notices of Electronic Filing on all counsel of record.

*/s/ Irene Oria*_____

Irene Oria

FL Bar No. 484570

31