# *EXHIBIT 10*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 1:20-cv-23242-BB

---

UNITED STATES OF AMERICA *ex rel.*
SEDONA PARTNERS LLC,

        Plaintiff,

vs.

ABLE MOVING & STORAGE, INC.; ARPIN
INTERNATIONAL GROUP, INC.;
CARTWRIGHT INTERNATIONAL VAN
LINES, INC.; COLEMAN AMERICAN
MOVING SERVICES, INC.; DEWITT
COMPANIES LIMITED, LLC; HILLDRUP
COMPANIES, INC.; J.K. MOVING &
STORAGE, INC.; NEW WORLD
INTERNATIONAL, LTD.; PARAMOUNT
TRANSPORTATION SYSTEMS; PAXTON
VAN LINES, INC.; AND WESTERN EXPRESS
FORWARDING, LCC,

        Defendants.

---

## RELATOR SEDONA PARTNERS LLC'S RESPONSE TO DEFENDANT PAXTON VAN LINES, INC.'S FIRST SET OF INTERROGATORIES

Relator SEDONA PARTNERS LLC ("SEDONA" OR "Responding Party"), by and through the undersigned counsel, hereby responds to the First Set of Interrogatories issued on behalf of Defendant PAXTON VAN LINES, INC. ("PAXTON" OR "Propounding Party").

/ / /

/ / /

/ / /

## PRELIMINARY STATEMENT

Responding Party has not fully completed investigation of the facts relating to this case, has not fully completed discovery in this action, and has not completed preparation for trial. All of the responses contained herein are based upon such information and documents which are presently available and specifically known to Responding Party. Responding Party anticipates that further discovery, independent investigation, legal research and analysis may supply additional facts, add meaning to existing facts, as well as establish new factual conclusions, legal conclusions, and legal contentions.

The following responses are given without prejudice to the Responding Party's right to produce evidence or documents which it may later discover. The Responding Party reserves the right to change any and all responses herein as additional facts or documents are ascertained and/or recalled and analyses thereof are made. However, the Responding Party does not undertake any obligation to amend, modify, supplement, or otherwise change these responses except as may be required by law.

The responses contained herein are made in a good faith effort to supply as much factual information as is presently known but should in no way prejudice the Responding Party in relation to further discovery, research, investigation, or analysis.

## GENERAL OBJECTIONS

Responding Party objects to Propounding Party's First Set of Interrogatories in its entirety to the extent that any or all of the requests seeks information protected by the attorney-client and attorney work-product privileges. No such products will be produced.

Responding Party further objects to Propounding Party's First Set of Interrogatories in its entirety to the extent that any or all of the interrogatories are overbroad, vague and ambiguous, oppressive, and/or seek information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Interrogatories that seek this information of this nature will not be answered.

Responding Party objects to Propounding Party's First Set of Interrogatories in its entirety to the extent that any or all of the interrogatories seek expert opinions or testimony, such information will not be provided at this time.

Responding Party objects to Propounding Party's First Set of Interrogatories in its entirety to the extent that any or all of the interrogatories seek information equally available to the Propounding Party.

Responding Party further objects to Propounding Party's First Set of Interrogatories in its entirety to the extent any or all of the requests are premature on the grounds that Responding Party's investigation and conduct of discovery is ongoing. Consequently, these responses are based only on information and documentation presently available and within the scope of the requests. Accordingly, Responding Party reserves the right to supplement these responses. Responding Party further objects to Propounding Party's First Set of Interrogatories in its entirety to the extent the requests seek documents from third parties.

Responding Party incorporates the above objections to the specific requests responded to herein.

<b><u>RESPONSES TO INTERROGATORIES</u></b>

<u>**INTERROGATORY NO. 1:**</u>

DESCRIBE the complete corporate history of SEDONA PARTNERS LLC and the organizational or corporate relationship, if any, between and among each member of SEDONA, including identification of all predecessors, successors, affiliates, and corporate name changes. For purposes of this interrogatory, "corporate" includes limited liability company.

<u>**RESPONSE TO INTERROGATORY NO. 1:**</u>

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is not relevant, is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

3

Responding Party objects to this interrogatory to the extent it seeks information protected by the attorney-client and attorney work product privileges. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party further objects to this interrogatory on the grounds it implicates private financial information that is privileged. Responding party further objects and will not produce documents on the ground of Relator's member's privacy rights and a lack of compelling need for the discovery requested.

## INTERROGATORY NO. 2:

IDENTIFY any and all direct or indirect members of SEDONA PARTNERS LLC, past and present, including their job titles, job responsibilities, and dates of involvement with SEDONA, and if any member is an entity, any and all direct or indirect members, shareholders, directors, officers, employees, representatives, and agents of each, past and present, including their job titles, job responsibilities, and dates of involvement with SEDONA.

## RESPONSE TO INTERROGATORY NO. 2:

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is not relevant, is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

Responding Party objects to this interrogatory to the extent it seeks information protected by the attorney-client and attorney work product privileges. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party further objects to this interrogatory on the grounds it implicates private financial information that is privileged. Responding party further objects and will not produce documents on the ground of Relator's member's privacy rights and a lack of compelling need for the discovery requested.

/ / /

4

**INTERROGATORY NO. 3:**

DESCRIBE the creation and management of SEDONA (and all circumstances surrounding the creation and management thereof), specifically including the date and state or commonwealth of organization or incorporation, the date of any certificates of organization or incorporation, the dates of any articles of organization or incorporation, the date of any membership agreement and membership interests, the date(s) of any payment of filing fees and/or annual fees, the date(s) of any other document submitted to or received from any state or commonwealth corporation commission or similarly-situated governmental department or agency related to the creation and ongoing registration and active status of SEDONA, and identify all persons directly or indirectly involved therewith.

**RESPONSE TO INTERROGATORY NO. 3:**

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is not relevant, is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

Responding Party objects to this interrogatory to the extent it seeks information protected by the attorney-client and attorney work product privileges. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party further objects to this interrogatory on the grounds it implicates private financial information that is privileged. Responding party further objects and will not produce documents on the ground of Relator's member's privacy rights and a lack of compelling need for the discovery requested.

**INTERROGATORY NO. 4:**

DESCRIBE the organization of SEDONA sufficient to identify the members of SEDONA, including all of its employees and shareholders, partners, and/or owners of any kind,

and the structure of SEDONA, and if any member is an entity, any and all direct or indirect members, shareholders, directors, officers, employees, representatives, and agents of each.

**RESPONSE TO INTERROGATORY NO. 4:**

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is not relevant, is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

Responding Party objects to this interrogatory to the extent it seeks information protected by the attorney-client and attorney work product privileges. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party further objects to this interrogatory on the grounds it implicates private financial information that is privileged. Responding party further objects and will not produce documents on the ground of Relator's member's privacy rights and a lack of compelling need for the discovery requested.

**INTERROGATORY NO. 5:**

DESCRIBE all acts by PAXTON in support of or relating to any allegation that PAXTON violated 31 U.S.C. § 3729, or any other federal, state, or local statute, law, rule, or requirement.

**RESPONSE TO INTERROGATORY NO. 5:**

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party objects to this interrogatory to the extent it seeks information protected by the attorney-client and attorney work product privileges. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party, to the extent it is able, will provide information it has available to it, or has readily obtained in its search efforts to date.

Subject to and without waiving these objections, Responding Party responds as follows:

In providing shipping services, participants are subject to various strict guidelines and requirements that are overseen and set forth in DOS, GSA, and federal laws and regulations. One of the key requirements TSPs must follow is the "America-First" policy, which is based on federal maritime and cargo laws. This policy requires that the companies use, and work with, "U.S. flag vessels" (American shipping carriers), except in unique circumstances where a waiver is obtained for use of a "foreign flag vessel." Foreign flag vessels are much cheaper than American carriers, and do not follow U.S. laws and customs. TSPs must certify that a U.S. flag vessel is unavailable in order to obtain permission to use a foreign flag vessel.

From 2008 through 2018, Defendant TSPs, including PAXTON, carried-out a fraudulent scheme wherein hundreds of millions of dollars were illegally taken from taxpayers, American workers, and American companies because foreign flag vessels were routinely and illegally used by the TSPs, instead of U.S. flag vessels. The scheme was carried out through two false submissions to the government: First, Defendant TSPs, including PAXTON, submitted fraudulent low-ball bids in order to capture awards for the very competitive shipping routes, referred to as "lanes," across international waters.

Second, in order to profit on their low-ball bids, Defendant TSPs submitted false foreign flag waivers, requesting permission to use lower costing foreign flag vessels, by fraudulently certifying that no U.S. flag vessels were available to carry-out shipments and/or that a foreign flag vessel was necessary to meet delivery requirements.

Defendants knowingly submitted theses fraudulent waiver requests, because they knew that at that time DOS did not have the resources to audit every waiver request. These waivers were routinely granted to Defendants, resulting in hundreds of millions of dollars going to foreign companies instead of American companies.

## INTERROGATORY NO. 6:

DESCRIBE all acts by PAXTON in support of or relating to any allegation of untruthful, fraudulent, or dishonest acts committed by PAXTON.

## RESPONSE TO INTERROGATORY NO. 6:

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party objects to this interrogatory to the extent it seeks information protected by the attorney-client and attorney work product privileges. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party, to the extent it is able, will provide information it has available to it, or has readily obtained in its search efforts to date.

Subject to and without waiving these objections, Responding Party responds as follows:

From 2008 through 2018, Defendant TSPs, including PAXTON, carried-out a fraudulent scheme wherein hundreds of millions of dollars were illegally taken from taxpayers, American workers, and American companies because foreign flag vessels were routinely and illegally used by the TSPs, instead of U.S. flag vessels.

The scheme was carried out through two false submissions to the government: First, Defendant TSPs, including PAXTON, submitted fraudulent low-ball bids in order to capture

awards for the very competitive shipping routes, referred to as "lanes," across international waters.

Second, in order to profit on their low-ball bids, Defendant TSPs submitted thousands of false foreign flag waivers, requesting permission to use lower costing foreign flag vessels, by fraudulently certifying that no U.S. flag vessels were available to carry-out shipments and/or that a foreign flag vessel was necessary to meet delivery requirements.

Defendants knowingly submitted theses fraudulent waiver requests, because they knew that at that time DOS did not have the resources to audit every waiver request. These waivers were routinely granted to Defendants, resulting in hundreds of millions of dollars going to foreign companies instead of American companies. For example, in 2019, Defendant PAXTON submitted a rate of $14,204 for the Washington D.C. to the United Kingdom lane. The cost of shipment in this lane using a U.S. Flag Carrier would be $15,730; however, the cost of shipment in this lane using a foreign flag carrier would only be $9,965. PAXTON would only be able to make a profit on a rate of $14,204 if it knew in advance that it intended to use foreign flag carriers.

## INTERROGATORY NO. 7:

IDENTIFY which bids submitted by PAXTON related to its use of foreign flag services that YOU contend PAXTON submitted with fraudulent intent.

## RESPONSE TO INTERROGATORY NO. 7:

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party objects to this interrogatory to the extent it seeks information protected by the attorney-client and attorney work product privileges. Responding Party objects to this

interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party, to the extent it is able, will provide information it has available to it, or has readily obtained in its search efforts to date.

Subject to and without waiving these objections, Responding Party responds as follows:

From 2008 through 2018, Defendant TSPs, including PAXTON, carried-out a fraudulent scheme through two false submissions to the government: First, Defendant TSPs, including PAXTON, submitted fraudulent low-ball bids in order to capture awards for the very competitive shipping routes, referred to as "lanes," across international waters. Second, in order to profit on their low-ball bids, Defendant TSPs submitted thousands of false foreign flag waivers, requesting permission to use lower costing foreign flag vessels, by fraudulently certifying that no U.S. flag vessels were available to carry-out shipments and/or that a foreign flag vessel was necessary to meet delivery requirements.

For example, in 2019, Defendant PAXTON submitted a rate of $14,204 for the Washington D.C. to the United Kingdom lane. The cost of shipment in this lane using a U.S. Flag Carrier would be $15,730; however, the cost of shipment in this lane using a foreign flag carrier would only be $9,965. Paxton would only be able to make a profit on a rate of $14,204 if it knew in advance that it intended to use foreign flag carriers.

In addition, in 2018, Relator and others began raising concerns about the fraudulent practices. As a result, DOS began reemphasizing the U.S. flag requirements during industry conferences and through DOS publications. In response, some Defendants, such as PAXTON, stopped carrying out the scheme in fear of a crackdown. This shift is evidenced by the dramatic increase in their rates which now incorporate the cost of using American ships. In 2016, PAXTON submitted a rate of $13,974 for the Washington D.C. to China lane, yet in 2019 submitted a rate of $15,279. Also in 2016, PAXTON submitted a rate of $12,284 for the Washington D.C. to Germany lane, but in 2019 submitted a rate of $16,123.

Plaintiff submits that discovery is ongoing.

**INTERROGATORY NO. 8:**

IDENTIFY SEDONA'S source(s) of information related to the U.S. flag vessel requirements imposed by the GSA or Department of State, including but not limited to in connection with the HTOS program or CHAMP program.

**RESPONSE TO INTERROGATORY NO. 8:**

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party objects to this interrogatory to the extent it seeks information protected by the attorney-client and attorney work product privileges. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party, to the extent it is able, will provide information it has available to it, or has readily obtained in its search efforts to date.

Subject to and without waiving these objections, Responding Party responds as follows:

SEDONA understands the requirements under federal statutes, regulations, DOS and GSA/CHAMP (including HTOS) guidelines that TSPs must submit accurate bids, and may not seek a waiver from using U.S. flag vessels absent unavailability of such vessels as defined by the guidelines and laws. SEDONA further has an understanding of the U.S. flag vessel requirements imposed by the GSA or DOS from its position as an insider in the TSP business who has direct and independent knowledge of the information on which these allegations are based, including knowledge on the relevant laws, rules, procedures, and guidelines related to U.S. flag vessel requirements.

SEDONA understands the GSA is in charge of administering the CHAMP program to assist federal agencies in relocating employees and transporting their personal and household goods between duty stations. The program operates through using TSPs, which are qualified and credentialed American private shipping companies vetted by GSA. The TSPs must apply to GSA for approval to participate in the program. Each program, Domestic and International, requires a separate application. GSA evaluates TSPs based on their financial stability, business experience, quality assurance, and knowledge of the HTOS, which is set forth by GSA and provides the rules and requirements for performing services as a provider in CHAMP. The HTOS provides that all participants in the program agree to be bound by the HTOS terms and conditions. Each participating TSP must submit either a domestic or international application worksheet form. Included in this form is the HTOS Questionnaire, which asks about provisions in the HTOS. In order to attain GSA International Approval, a TSP must file and attest to the answers contained in the HTOS Tender of Service Questionnaire. If shipping internationally, a TSP will have to answer the International HTOS Questionnaire.

Further, certain federal civilian agencies, including DOS, have additional reporting and shipping requirements for the transportation of employees' household goods. These agencies regularly work with GSA to promulgate Standing Route Orders ("SROs"), which outline the additional requirements. The SROs are then issued in conjunction with the annual RFO solicitation process. TSPs submitting offers for shipping lanes subject to SROs must abide by the requirements stated in both the RFO and SROs. Once a TSP has been federally approved for either international or domestic shipments by GSA to participate in CHAMP, the participating TSPs selected take full responsibility and agree to all federal rules and requirements outlined in the HTOS guidelines. Among other RFO requirements, TSPs shipping goods internationally must use U.S. flag vessels for the ocean portion of overseas shipments. If a U.S. flag vessel is not available to provide the required service, TSPs can request permission to use foreign flag vessels prior to shipment. To request permission, a TSP must submit to DOS a "Request for Approval of Use of a Foreign Flag Vessel." It also must certify in writing that US flag shipping is not

available or that the use of the foreign flag shipping is necessary to meet delivery requirements. A TSP is responsible for requesting a waiver by submitting to DOS a certification attesting to the unavailability of a U.S. flag vessel. It is the TSP's responsibility to ensure waiver submissions are accurate and truthful.

**INTERROGATORY NO. 9:**

DESCRIBE the process underlying any of SEDONA'S analyses, calculation, or determinations concerning the bid amounts submitted by PAXTON through the RFO process at any time.

**RESPONSE TO INTERROGATORY NO. 9:**

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party objects to this interrogatory to the extent it seeks information protected by the attorney-client and attorney work product privileges. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party, to the extent it is able, will provide information it has available to it, or has readily obtained in its search efforts to date.

Subject to and without waiving these objections, Responding Party responds as follows:

The TMSS system provides information relating to bid submissions. SEDONA has inside information relating to the shipping industry and is aware of schemes in bid submission and in seeking waivers. Many TSPs, including PAXTON, would not even break even if they in fact intended to use a U.S. flag vessel, as they claim prior to seeking exemption. Discovery is

ongoing and Relator submits further discovery will provide information relating to specific damages attributable to PAXTON.

**INTERROGATORY NO. 10:**

IDENTIFY and DESCRIBE SEDONA'S source(s) of information supporting the assertions made in Paragraphs 5-9, 13, 17, 47-53, 70-74, and 81-91 of SEDONA'S First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 10:**

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party objects to this interrogatory to the extent it seeks information protected by the attorney-client and attorney work product privileges. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party, to the extent it is able, will provide information it has available to it, or has readily obtained in its search efforts to date.

Subject to and without waiving these objections, Responding Party responds as follows:

SEDONA has knowledge on the assertion purported in the First Amended Complaint ("FAC") due to its position as an insider in the TSP business who has direct and independent knowledge of the information on which these allegations are based. Furthermore, SEDONA has knowledge of the laws, rules, procedures, and guidelines relating to the allegations in the FAC.

SEDONA has knowledge that Defendants, including PAXTON, submitted low-ball bids. In 2019, Defendant PAXTON submitted a rate of $14,204 for the Washington D.C. to the United Kingdom lane. The cost of shipment in this lane using a U.S. Flag Carrier would be $15,730;

however, the cost of shipment in this lane using a foreign flag carrier would only be $9,965. PAXTON would only be able to make a profit on a rate of $14,204 if it knew in advance that it intended to use foreign flag carriers.  There is very little variability between TSPs as far as the costs that they must incur for shipments. This is because most of the work of the shipments is done by other companies—i.e., sub-contractors. Most notably, none of the TSPs have their own ocean shipping vessels, and therefore all must use the relatively small set of ocean shipping companies. SEDONA has insider information relating to the ins and outs of bid submission, typical costs, and the waiver system.  SEDONA also has reviewed bid submission data through the TMSS system.

**INTERROGATORY NO. 11:**

Identify and provide the name, address, telephone number (including cell number), place of employment and job title of any person who has, claims to have, or whom you believe may have knowledge or information pertaining to any fact, issue, allegation, transaction, or occurrence set forth in the First Amended Complaint for Money Damages and Civil Penalties for Violations of the False Claims Act, or any fact, issue, allegation, transaction, or occurrence underlying the subject matter of this action. In so doing, for each person identified, set forth in detail the specific knowledge possessed by each person.

**RESPONSE TO INTERROGATORY NO. 11:**

Responding Party objects to this interrogatory as it is vague and ambiguous.  Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party objects to this interrogatory to the extent it seeks information protected by the attorney-client and attorney work product privileges.  Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal

Rules of Civil Procedure or any other applicable rule or law and improperly implicates the privacy rights of third parties. Responding Party, to the extent it is able, will provide information it has available to it, or has readily obtained in its search efforts to date.

Subject to and without waiving these objections, Responding Party responds as follows:

SEDONA provided the requested information, to the extent possible, in its initial disclosures send to Defendants, including PAXTON, on August 19, 2021. The information is repeated below:

1.     Mike Cazalet, who was or is the Vice President and Managing Director for New World International, Ltd. ("New World"), and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, Defendant New World's submission of low-ball bids and false foreign flag waivers, the Department of State's reemphasis on the U.S. flag requirements in 2018, and Defendant New World's decrease in revenue due to the Department of State's reemphasis on the U.S. flag requirements.

2.     Edwin Oems, who was the President of New World, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, Defendant New World's submission of low-ball bids and false foreign flag waivers, the Department of State's reemphasis on the U.S. flag requirements in 2018, and Defendant New World's decrease in revenue due to the Department of State's reemphasis on the U.S. flag requirements.

3.     Bill Sagan, who was or is a Maersk Representative and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, and the Department of State's reemphasis on the U.S. flag requirements in 2018.

4.     Dawn Fontano, who was or is the Manager of International Rates and Billing for Crown Worldwide Moving and Storage, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, and the Department of State's reemphasis on the U.S. flag requirements in 2018.

5.     Robert Bowen, who was or is the CEO and Chairman for Crown Worldwide Moving and Storage, and who has information regarding the following topics: CHAMP, shipping

contracts awarded to TSPs, and the Department of State's reemphasis on the U.S. flag requirements in 2018. (510) 614-4105, robert.bowen@crownwms.com.

6. Luis Roque, who was the branch chief of the Traffic Management Branch within the Transportation and Travel Management Division of the State Department, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, U.S. flag requirements for vessels, the Department of State's reemphasis on the U.S. flag requirements in 2018.

7. Charles Olden, who was the Chief of Transportation Operations Branch within the Transportation and Travel Management Division of the State Department, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, U.S. flag requirements for vessels, the Department of State's reemphasis on the U.S. flag requirements in 2018.

8. Peter Vargus, who was or is the Vice President of Business Development for Crown Worldwide Moving and Storage, and who has information regarding the following topics: the CHAMP, shipping contracts awarded to TSPs, and the Department of State's reemphasis on the U.S. flag requirements in 2018.

9. Lisa Beranich, who was or is the Managing Director of the International Division for Stevens International Forwarders, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, and the Department of State's reemphasis on the U.S. flag requirements in 2018.

10. Tyler Wood, who was or is the Attorney Advisor for the National Security Division of the United States Department of Justice, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, U.S. flag requirements for vessels, the Department of State's reemphasis on the U.S. flag requirements in 2018.

11. Mike Curry, who was or is the Director of Marine Operations for Global Marine Transportation, Inc., and who has information regarding the following topics: CHAMP, shipping

contracts awarded to TSPs, and the Department of State's reemphasis on the U.S. flag requirements in 2018.

12.     Daniel Johnson, who was or is the Director of Customer Service of Worldwide Moving & Storage for New World International, Ltd., and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, Defendant New World's submission of low-ball bids and false foreign flag waivers, the Department of State's reemphasis on the U.S. flag requirements in 2018, and Defendant New World's decrease in revenue due to the Department of State's reemphasis on the U.S. flag requirements.

13.     Emanuel "Manny" Hazel, who was or is a Traffic Management Specialist for the United States Department of State, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, U.S. flag requirements for vessels, the Department of State's reemphasis on the U.S. flag requirements in 2018.

14.     Shawn Griffin, who was or is a Team Administrator for the United States Department of State, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, U.S. flag requirements for vessels, the Department of State's reemphasis on the U.S. flag requirements in 2018.

**INTERROGATORY NO. 12:**

Describe in detail any and all damages you suffered, including, without limitation, the amount of such damages; how you calculated the amount, including the calculation method and/or formula used; the factual basis and/or support for such damage calculation, and who calculated the amount of damages.

**RESPONSE TO INTERROGATORY NO. 12:**

Responding Party objects to this interrogatory as it is vague and ambiguous and seeks premature and/or expert discovery.  Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further

objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party objects to this interrogatory to the extent it seeks information protected by the attorney-client and attorney work product privileges. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party, to the extent it is able, will provide information it has available to it, or has readily obtained in its search efforts to date.

Subject to and without waiving these objections, Responding Party responds as follows:

The United States suffered damages in that thousands of bids and corresponding waivers submitted were fraudulent, including submissions by PAXTON. The contracts awarded to PAXTON, and payments made by the U.S. government, were based on fraudulent information and in violation of the America-First policy. The TMSS system provides information relating to bid submissions. SEDONA has inside information relating to the shipping industry and is aware of schemes in bid submission and in seeking waivers. Many TSPs, including PAXTON, would not even break even if they in fact intended to use a U.S. flag vessel, as they claim prior to seeking exemption. Discovery is ongoing and Relator submits further discovery will provide information relating to specific damages attributable to PAXTON.

Dated: December 10, 2021                     Respectfully submitted,

                                             COTCHETT, PITRE & MCCARTHY, LLP
                                             Justin T. Berger (*admitted pro hac vice*)
                                             Sarvenaz J. Fahimi (*admitted pro hac vice*)
                                             jberger@cpmlegal.com
                                             sfahimi@cpmlegal.com
                                             San Francisco Airport Office Center
                                             840 Malcolm Road
                                             Burlingame, CA 94010
                                             Tel: (650) 697-6000

MCCABE RABIN, P.A.
Ryon McCabe (FL 009075)
rmccabe@mccaberabin.com
1601 Forum Pl #201
West Palm Beach, FL 33401
Tel: (561) 659-7878

LAW OFFICES OF PAUL PELLETIER
Paul E. Pelletier (*admitted pro hac vice*)
pepelletier3@gmail.com
3500 Morningside Drive
Fairfax, VA 22031

*Attorneys for Relator Sedona Partners LLC*

## PROOF OF SERVICE

I am employed in the County of San Mateo.  I am over the age of 18 years and not a party to this action.  My business address is the Law Offices of Cotchett, Pitre & McCarthy, LLP, San Francisco Airport Office Center, 840 Malcolm Road, Burlingame, California, 94010. On this day, I served the following document(s) in the manner described below:

1.   **RELATOR SEDONA PARTNERS LLC'S RESPONSE TO DEFENDANT PAXTON VAN LINES, INC.'S FIRST SET OF INTERROGATORIES**

✓   **VIA E-MAIL:** My e mail address is sofarrell@cpmlegal.com.  I am readily familiar with this firm's practice for causing documents to be served by e-mail.  Following that practice, I caused the aforementioned document(s) to be emailed to the addressee(s) specified below.

**[SEE ATTACHED SERVICE LIST]**

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.  Executed at Burlingame, California, on December 10, 2021

_____
SARAH O'FARRELL

<u>**SERVICE LIST**</u>

**UNITED STATES OF AMERICA ex rel. SEDONA PARTNERS LLC,**
**v.**
**ABLE MOVING & STORAGE, INC., et al.**

**Case No. 20-CV-23242-BLOOM/Louis**
**U.S. District Court, Southern District of Florida**

James A. Weinkle
Assistant United States Attorney
Office of the United States Attorney
Southern District of Florida
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
James.Weinkle@usdoj.gov
*Counsel for United States of America*

Irene Oria
irene.oria@fisherbroyles.com
Fisher Broyles, LLP
199 E. Flagler Street #550
Miami, FL 33131
*Counsel for Able Moving & Storage, Inc.*

Jolyon A. Silversmith
jsilversmith@kmazuckert.com
James A. Calderwood
jcalderwood@kmazuckert.com
Andrew S. Yingling
ayingling@kmazuckert.com
KMA Zuckert, LLC
888 17th Street NW, Suite 700
Washington, DC 20006
*Pro Hac Vice Arpin International Group, Inc.*

Maria F. Hubbard
mhubbard@polsinelli.com
Polsinelli PC
One East Washington Street, Suite 1200
Phoenix, AZ 85004
*Pro Hac Vice Cartwright International Van Lines, Inc.*

Aryeh L. Kaplan
aryeh.kaplan@pillsburylaw.com
Ariella J. Ederi
ariella.ederi@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
600 Brickell Avenue, Suite 3100

Robert T. Wright, Jr.
Robert.wright@fisherbroyles.com
Fisher Broyles, LLP
1221 Brickell Avenue, Suite 900
Miami, FL 33131
*Counsel for Able Moving & Storage, Inc.*

Nicholas E. Pantelopoulos
nep@kmazuckert.com
KMA Zuckert, LLC
355 Alhambra Circle, Suite 1201
Coral Gables, FL 33134
*Counsel for Arpin International Group, Inc.*

Ghislaine T. Bruner
gbruner@polsinelli.com
Polsinelli PC
1401 Lawrence Street, #2300
Denver, CO 80202
*Counsel for Cartwright International Van Lines, Inc.*

Noam B. Fischman
nfischman@polsinelli.com
Polsinelli PC
1401 I Street, NW, Suite 800
Washington DC 20005
*Pro Hac Vice Cartwright International Van Lines, Inc.*

Alexis N. Wansac
alexis.wansac@pillsburylaw.com
Thomas C. Hill
thomas.hill@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeeth Street NW
Washington, DC 20036
*Pro Hac Vice Coleman American Moving Services, Inc.*
Maura K. Monaghan

1

Miami, FL 33131
*Counsel for Coleman American Moving Services, Inc.*


Barry A. Postman
barry.postman@csklegal.com
Sara.ghent@csklegal.com
Justin C. Sorel
justin.sorel@csklegal.com
loren.ryan@csklegal.com
Cole, Scott & Kissane, P.A.
222 Lakeview Avenue, Suite 120
West Palm Beach, FL 33417
*Counsel for Hilldrup Companies, Inc.*


Michael I. Kessler
mkessler@ohaganmeyer.com
O'Hagan Meyer
21550 Oxnard Street, Suite 1050
Woodland Hills, CA 91367
*Counsel for J.K. Moving & Storage, Inc.*

Andrew M. Gordon
agordon@hinshawlaw.com
Hinshaw & Culbertson, LLP
One East Broward Blvd., Ste. 1010
Ft. Lauderdale, FL 33301
954.467.7900
*Counsel for New World International, Ltd.*


Brian R. Zeeck
bzeeck@hinshawlaw.com
Hinshaw & Culbertson, LLP
151 North Franklin Street, Ste. 2500
Chicago, IL 60606
312.704.3028
*Pro Hac Vice New World International, Ltd.*

Robert Harris
rharris@stackfernandez.com
gmartich@stackfernandez.com
Sammy Epelbaum
sepelbaum@stackfernandez.com
Stack Fernandez & Harris, PA
1001 Brickell Bay Drive, Ste. 2650
Miami, FL 33131
*Counsel for Paxton Van Lines, Inc.*


Craig B. Shapiro
cshapiro@belaw.cc

mkmonaghan@debevoise.com
Melanie M. Burke
mburke@debevoise.com
Kristin D. Kiehn
kdkiehn@debevoise.com
Debevoise & Plimpton LLP
919 Third Ave.
New York, NY 10022
*Pro Hac Vice Hilldrup Companies, Inc.*


Charles G. Meyer, III
cmeyer@ohaganmeyer.com
C. Quinn Adams
cadams@ohaganmeyer.com
Alan D. Albert
aalbert@ohaganmeyer.com
Charles M. Sims
csims@ohaganmeyer.com
O'Hagan Meyer
411 East Franklin Street, Suite 500
Richmond, VA 23219
*Pro Hac Vice J.K. Moving & Storage, Inc.*


Ruddy S-A. Abam
rabam@hinshawlaw.com
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
*Pro Hac Vice New World International, Ltd.*


Robert M. Borak
robert.borak@spectorrubin.com
Spector Rubin, P.A.
3250 Mary Street, Suite 405
Miami, FL 33133
*Counsel for Paramount Transportation Systems*

Stuart A. Berman
saberman@lerchearly.com
Lerch, Early & Brewer, Chtd.
7600 Wisconsin Avenue, Ste. 700
Bethesda, MD 20814
*Pro Hac Vice Paxton Van Lines, Inc.*


Thomas F. Murphy
tmurphy@dclawfirm.com
Friedlander Misler, PLLC
5335 Wisconsin Avenue, NW, Suite 600

Buchbinder & Elegant, P.A.
46 S.W. 1st Street, 4th Floor
Miami, FL 33130
305.358.1515
*Counsel for Western Express Forwarding, LLC*

Washington, DC 20015
*Pro Hac Vice Western Express Forwarding, LLC*