# *EXHIBIT 12*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 1:20-cv-23242-BB

| |
|---|
| UNITED STATES OF AMERICA *ex rel.* SEDONA PARTNERS LLC, <br><br> Plaintiff, <br><br> vs. <br><br> ABLE MOVING & STORAGE, INC.; ARPIN INTERNATIONAL GROUP, INC.; CARTWRIGHT INTERNATIONAL VAN LINES, INC.; COLEMAN AMERICAN MOVING SERVICES, INC.; DEWITT COMPANIES LIMITED, LLC; HILLDRUP COMPANIES, INC.; J.K. MOVING & STORAGE, INC.; NEW WORLD INTERNATIONAL, LTD.; PARAMOUNT TRANSPORTATION SYSTEMS; PAXTON VAN LINES, INC.; AND WESTERN EXPRESS FORWARDING, LLC, <br><br> Defendants. |

## RELATOR SEDONA PARTNERS LLC'S RESPONSE TO DEFENDANT NEW WORLD INTERNATIONAL, LTD.'S FIRST SET OF INTERROGATORIES

Relator SEDONA PARTNERS LLC ("SEDONA" OR "Responding Party"), by and through the undersigned counsel, hereby responds to the First Set of Interrogatories issued on behalf of Defendant NEW WORLD INTERNATIONAL, LTD. ("NEW WORLD" OR "Propounding Party").

/ / /

/ / /

/ / /

1

## PRELIMINARY STATEMENT

Responding Party has not fully completed investigation of the facts relating to this case, has not fully completed discovery in this action, and has not completed preparation for trial. All of the responses contained herein are based upon such information and documents which are presently available and specifically known to Responding Party. Responding Party anticipates that further discovery, independent investigation, legal research and analysis may supply additional facts, add meaning to existing facts, as well as establish new factual conclusions, legal conclusions, and legal contentions.

The following responses are given without prejudice to the Responding Party's right to produce evidence or documents which it may later discover. The Responding Party reserves the right to change any and all responses herein as additional facts or documents are ascertained and/or recalled and analyses thereof are made. However, the Responding Party does not undertake any obligation to amend, modify, supplement, or otherwise change these responses except as may be required by law.

The responses contained herein are made in a good faith effort to supply as much factual information as is presently known but should in no way prejudice the Responding Party in relation to further discovery, research, investigation, or analysis.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

IDENTIFY the name and position, address, email address, and phone number, of all persons providing information or documents necessary to respond to these interrogatories. For each such person(s) IDENTIFY the information provided and the applicable interrogatory.

### RESPONSE TO INTERROGATORY NO. 1:

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law and to the extent it seeks information protected by privacy rights of third parties. Responding Party further objects and will not produce documents on the ground that the request seeks information protected by Relator's member's privacy rights balanced against a lack of compelling need for discovery.

**INTERROGATORY NO. 2:**

IDENTIFY all persons (including their addresses, email addresses, telephone numbers, employers, and job titles) who YOU believe to possess knowledge or information pertaining to any fact or issue alleged in YOUR Amended Complaint. Include in YOUR response a description of the substance of their knowledge.

**RESPONSE TO INTERROGATORY NO. 2:**

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law and seeks information protected by the privacy rights of third parties. Responding Party further objects on the ground that the interrogatory seeks information protected by Relator's member's privacy rights.

Subject to and without waiving these objections, Responding Party responds as follows:

SEDONA provided the requested information, to the extent possible, in its initial disclosures send to Defendants, including NEW WORLD, on August 19, 2021. The information is repeated below:

1. Mike Cazalet, who was or is the Vice President and Managing Director for New World International, Ltd. ("New World"), and who has information regarding the following topics: Centralized Household Goods Traffic Management Program ("CHAMP"), shipping contracts awarded to TSPs, Defendant New World's submission of low-ball bids and false foreign flag waivers, the Department of State's reemphasis on the U.S. flag requirements in 2018, and Defendant New World's decrease in revenue due to the Department of State's reemphasis on the U.S. flag requirements.

2. Edwin Oems, who was the President of New World, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, Defendant New World's submission of low-ball bids and false foreign flag waivers, the Department of State's reemphasis on the U.S. flag requirements in 2018, and Defendant New World's decrease in revenue due to the Department of State's reemphasis on the U.S. flag requirements.

3. Bill Sagan, who was or is a Maersk Representative and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, and the Department of State's reemphasis on the U.S. flag requirements in 2018.

4. Dawn Fontano, who was or is the Manager of International Rates and Billing for Crown Worldwide Moving and Storage, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, and the Department of State's reemphasis on the U.S. flag requirements in 2018.

5. Robert Bowen, who was or is the CEO and Chairman for Crown Worldwide Moving and Storage, and who has information regarding the following topics: CHAMP, shipping

contracts awarded to TSPs, and the Department of State's reemphasis on the U.S. flag requirements in 2018. (510) 614-4105, robert.bowen@crownwms.com.

6. Luis Roque, who was the branch chief of the Traffic Management Branch within the Transportation and Travel Management Division of the State Department, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, U.S. flag requirements for vessels, the Department of State's reemphasis on the U.S. flag requirements in 2018.

7. Charles Olden, who was the Chief of Transportation Operations Branch within the Transportation and Travel Management Division of the State Department, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, U.S. flag requirements for vessels, the Department of State's reemphasis on the U.S. flag requirements in 2018.

8. Peter Vargus, who was or is the Vice President of Business Development for Crown Worldwide Moving and Storage, and who has information regarding the following topics: the CHAMP, shipping contracts awarded to TSPs, and the Department of State's reemphasis on the U.S. flag requirements in 2018.

9. Lisa Beranich, who was or is the Managing Director of the International Division for Stevens International Forwarders, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, and the Department of State's reemphasis on the U.S. flag requirements in 2018.

10. Tyler Wood, who was or is the Attorney Advisor for the National Security Division of the United States Department of Justice, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, U.S. flag requirements for vessels, the Department of State's reemphasis on the U.S. flag requirements in 2018.

11. Mike Curry, who was or is the Director of Marine Operations for Global Marine Transportation, Inc., and who has information regarding the following topics: CHAMP,

shipping contracts awarded to TSPs, and the Department of State's reemphasis on the U.S. flag requirements in 2018.

12. Daniel Johnson, who was or is the Director of Customer Service of Worldwide Moving & Storage for New World International, Ltd., and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, Defendant New World's submission of low-ball bids and false foreign flag waivers, the Department of State's reemphasis on the U.S. flag requirements in 2018, and Defendant New World's decrease in revenue due to the Department of State's reemphasis on the U.S. flag requirements.

13. Emanuel "Manny" Hazel, who was or is a Traffic Management Specialist for the United States Department of State, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, U.S. flag requirements for vessels, the Department of State's reemphasis on the U.S. flag requirements in 2018.

14. Shawn Griffin, who was or is a Team Administrator for the United States Department of State, and who has information regarding the following topics: CHAMP, shipping contracts awarded to TSPs, U.S. flag requirements for vessels, the Department of State's reemphasis on the U.S. flag requirements in 2018.

**INTERROGATORY NO. 3:**

IDENTIFY all persons (including their addresses, email addresses, telephone numbers, employers, and job titles) who have or claim to have knowledge of any of the matters alleged in YOUR Amended Complaint, and DESCRIBE what knowledge each such person has and how such knowledge was obtained.

**RESPONSE TO INTERROGATORY NO. 3:**

Responding Party objects to this interrogatory as it is vague and ambiguous, in particular with regard to "DESCRIBE what knowledge each person has and how such knowledge was obtained." Responding Party objects on the grounds this interrogatory is overbroad, duplicative, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably

calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law and seeks information protected by the privacy rights of third parties. Responding Party further objects on the ground that the interrogatory seeks information protected by Relator's member's privacy rights.

Subject to and without waiving these objections, Responding Party responds as follows:

SEDONA provided the requested information, to the extent possible, in its initial disclosures send to Defendants, including NEW WORLD, on August 19, 2021. The information is also set forth in response to Interrogatory No. 2. Further, the "knowledge" (as best as Relator understands the interrogatory) relates to subjects and the roles outlined in conjunction with each individual listed in Interrogatory No. 2.

### INTERROGATORY NO. 4:

IDENTIFY each document that YOU contend supports any claim asserted in YOUR Amended Complaint, giving a brief description of each document and what YOU believe it proves.

### RESPONSE TO INTERROGATORY NO. 4:

Responding Party objects to this interrogatory as it is vague and ambiguous, and premature. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this

interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law and improperly implicates the privacy rights of third parties.

Subject to and without waiving these objections, Responding Party responds as follows:

On August 19, 2021, Relator served on all parties its Initial Disclosures which included a description by category of documents, data compilations, and tangible things in its possession. Relator will rely on these documents as well as evidence obtained from Defendants during discovery to support its claims. The list is re-produced below.

- Emails between industry participants relating to bidding and awards of shipping lanes.
- Email and attachments from Emanuel "Manny" Hazel, a Traffic Management Specialist with the Department of State, stating that departure and arrival dates are needed for the Determination of Non U.S. Flag Availability Process.
- PowerPoint by Emanuel Hazel regarding the Determination of Non U.S. Flag Availability Process.
- GSA, Transportation Management Services Solution booklet from November 2005.
- GSA approval requirements for Transportation Service Providers ("TSPs").
- GSA CHAMP carrier approval application general instructions.
- GSA household good tender of service booklet, August 2010 edition.
- GSA household good tender of service booklet, September 2017 edition.
- Example of a justification certificate for use of foreign flag waiver.
- Example of a determination of non-US flag availability.
- Instructions on how to apply to be a transportation service provider.
- GSA international approval application.

- GSA household goods tender of service questionnaire.
- A request for offer ("RFO") to all TSPs approved to participate in CHAMP.

Responding Party believes these documents support Relator's claim that NEW WORLD, among others, carried-out a fraudulent scheme wherein hundreds of millions of dollars were illegally taken from taxpayers, American workers, and American companies because foreign flag vessels were routinely and illegally used by the TSPs, instead of U.S. flag vessels. Responding Party submits that discovery is ongoing.

## INTERROGATORY NO. 5:

DESCRIBE the complete corporate history of SEDONA PARTNERS LLC and the business and corporate relationship, if any, between and among each member of SEDONA, including identification of all predecessors, successors, affiliates, and corporate name changes.

## RESPONSE TO INTERROGATORY NO. 5:

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party further objects to this interrogatory on the ground that it implicates private financial information. Responding Party further objects and will not produce documents on the ground that the request seeks information protected by Relator's member's privacy rights balanced against a lack of compelling need for discovery.

/ / /

/ / /

**INTERROGATORY NO. 6:**

IDENTIFY the members of SEDONA PARTNERS LLC, past and present, including their job titles, job responsibilities, and dates of involvement with SEDONA.

**RESPONSE TO INTERROGATORY NO. 6:**

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party further objects to this interrogatory on the ground that it implicates private financial information. Responding Party further objects and will not produce documents on the ground that the request seeks information protected by Relator's member's privacy rights balanced against a lack of compelling need for discovery.

**INTERROGATORY NO. 7:**

DESCRIBE the creation and management of SEDONA, including but not limited to any membership, entity, organization, or incorporation information.

**RESPONSE TO INTERROGATORY NO. 7:**

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party further objects to this interrogatory on the ground that it implicates private financial information. Responding Party further objects and will not produce documents on the ground that the request seeks information protected by Relator's member's privacy rights balanced against a lack of compelling need for discovery.

## INTERROGATORY NO. 8:

DESCRIBE the organization of SEDONA sufficient to IDENTIFY the members of SEDONA, including all of its employees and shareholders, and the structure of SEDONA.

## RESPONSE TO INTERROGATORY NO. 8:

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party further objects to this interrogatory on the ground that it implicates private financial information. Responding Party further objects and will not produce documents on the ground that the request seeks information protected by Relator's member's privacy rights balanced against a lack of compelling need for discovery.

/ / /

/ / /

**INTERROGATORY NO. 9:**

State the complete factual basis for, and DESCRIBE all acts by NEW WORLD that YOU believe support or relate to any allegation that NEW WORLD violated 31 U.S.C. § 3729, or any other federal, state, or local statute, law, rule, or requirement.

**RESPONSE TO INTERROGATORY NO. 9:**

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law.

Subject to and without waiving these objections, Responding Party responds as follows:

In providing shipping services, participants are subject to various strict guidelines and requirements that are overseen and set forth in DOS, GSA, and federal laws and regulations. One of the key requirements TSPs must follow is the "America-First" policy, which is based on federal maritime and cargo laws. This policy requires that the companies use, and work with, "U.S. flag vessels" (American shipping carriers), except in unique circumstances where a waiver is obtained for use of a "foreign flag vessel." Foreign flag vessels are much cheaper than American carriers, and do not follow U.S. laws and customs. TSPs must certify that a U.S. flag vessel is unavailable in order to obtain permission to use a foreign flag vessel.

From 2008 through 2018, Defendant TSPs, including NEW WORLD, carried-out a fraudulent scheme wherein hundreds of millions of dollars were illegally taken from taxpayers,

American workers, and American companies because foreign flag vessels were routinely and illegally used by the TSPs, instead of U.S. flag vessels. The scheme was carried out through two false submissions to the government: First, Defendant TSPs, including NEW WORLD, submitted fraudulent low-ball bids in order to capture awards for the very competitive shipping routes, referred to as "lanes," across international waters.

Second, in order to profit on their low-ball bids, Defendant TSPs submitted false foreign flag waivers, requesting permission to use lower costing foreign flag vessels, by fraudulently certifying that no U.S. flag vessels were available to carry-out shipments and/or that a foreign flag vessel was necessary to meet delivery requirements.

Defendants knowingly submitted theses fraudulent waiver requests, because they knew that at that time DOS did not have the resources to audit every waiver request. These waivers were routinely granted to Defendants, resulting in hundreds of millions of dollars going to foreign companies instead of American companies.

Responding Party submits that discovery is ongoing and reserves the right to supplement this response.

**INTERROGATORY NO. 10:**

State the complete factual basis for, and DESCRIBE all acts by NEW WORLD that YOU believe support or relate to any allegation of untruthful, fraudulent, or dishonest acts committed by NEW WORLD in the use or submission of bids, foreign flag waiver requests, and flag vessel certifications through the United States Department of State ("DOS") and the United States General Services Administration ("GSA").

**RESPONSE TO INTERROGATORY NO. 10:**

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of

admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law and improperly implicates the privacy rights of third parties.

Subject to and without waiving these objections, Responding Party responds as follows:

From 2008 through 2018, Defendant TSPs, including NEW WORLD, carried-out a fraudulent scheme wherein hundreds of millions of dollars were illegally taken from taxpayers, American workers, and American companies because foreign flag vessels were routinely and illegally used by the TSPs, instead of U.S. flag vessels.

The scheme was carried out through two false submissions to the government: First, Defendant TSPs, including NEW WORLD, submitted fraudulent low-ball bids in order to capture awards for the very competitive shipping routes, referred to as "lanes," across international waters.

Second, in order to profit on their low-ball bids, Defendant TSPs submitted thousands of false foreign flag waivers, requesting permission to use lower costing foreign flag vessels, by fraudulently certifying that no U.S. flag vessels were available to carry-out shipments and/or that a foreign flag vessel was necessary to meet delivery requirements.

Defendants knowingly submitted theses fraudulent waiver requests, because they knew that at that time DOS did not have the resources to audit every waiver request. These waivers were routinely granted to Defendants, resulting in hundreds of millions of dollars going to foreign companies instead of American companies. For example, in 2019, Defendant NEW WORLD submitted a rate of $10,672 for the Washington D.C. to United Kingdom lane. The cost of shipment in this lane using a U.S. Flagg Carrier would be $15,730; however, the cost of shipment in this lane using a foreign flag carrier would only be $9,965. NEW WORLD would

14

only be able to make a profit on a rate of $10,672 if it knew in advance that it intended to use foreign flag carriers.

In addition, in 2018, Relator and others began raising concerns about the fraudulent practices. As a result, DOS began reemphasizing the U.S. flag requirements during industry conferences and through DOS publications. In response, some Defendants, such as NEW WORLD, stopped carrying out the scheme in fear of a crackdown. In fact, communication between top executives evidences this fraud. In a late 2019 meeting between Dawn Fontano of Crown Moving and Daniel Johnson, Director of Customer Service at Defendant NEW WORLD, Johnson admitted that NEW WORLD has "lost a huge amount of money" since paring back its use of foreign flag vessels. Johnson admitted that abandoning the scheme impacted 40% of its international business.

Further, in early 2020, after the crackdown and having lost projected earnings, Edwin Oems, President of NEW WORLD resigned when NEW WORLD was forced to comply with rates using U.S. flag vessels. NEW WORLD lost money on many of its lanes—over $500,000 on revenues of $6 million—because it had submitted low-ball bids in February of 2019 anticipating the ongoing use of false foreign flag waivers, before the March 27 meeting where DOS signaled the fraud would no longer be tolerated.

Responding Party submits that discovery is ongoing and reserves the right to supplement this response.

**INTERROGATORY NO. 11:**

IDENTIFY any and all bids submitted by NEW WORLD that YOU contend were fraudulent or that NEW WORLD submitted with fraudulent intent, and identify the basis for any such contention.

**RESPONSE TO INTERROGATORY NO. 11:**

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it

seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law and improperly implicates the privacy rights of third parties.

Subject to and without waiving these objections, Responding Party responds as follows:

From 2008 through 2018, Defendant TSPs, including NEW WORLD, carried-out a fraudulent scheme through two false submissions to the government: First, Defendant TSPs, including NEW WORLD, submitted fraudulent low-ball bids in order to capture awards for the very competitive shipping routes, referred to as "lanes," across international waters. Second, in order to profit on their low-ball bids, Defendant TSPs submitted thousands of false foreign flag waivers, requesting permission to use lower costing foreign flag vessels, by fraudulently certifying that no U.S. flag vessels were available to carry-out shipments and/or that a foreign flag vessel was necessary to meet delivery requirements.

For example, in 2019, Defendant NEW WORLD submitted a rate of $10,672 for the Washington D.C. to United Kingdom lane. The cost of shipment in this lane using a U.S. Flag Carrier would be $15,730; however, the cost of shipment in this lane using a foreign flag carrier would only be $9,965. NEW WORLD would only be able to make a profit on a rate of $10,672 if it knew in advance that it intended to use foreign flag carriers.

In addition, in 2018, Relator and others began raising concerns about the fraudulent practices. As a result, DOS began reemphasizing the U.S. flag requirements during industry conferences and through DOS publications. In response, some Defendants, such as NEW WORLD, stopped carrying out the scheme in fear of a crackdown. In fact, communication between top executives evidences this fraud. In a late 2019 meeting between Dawn Fontano of

16

Crown Moving and Daniel Johnson, Director of Customer Service at Defendant NEW WORLD, Johnson admitted that NEW WORLD has "lost a huge amount of money" since paring back its use of foreign flag vessels. Johnson admitted that abandoning the scheme impacted 40% of its international business.

Further, in early 2020, after the crackdown and having lost projected earnings, Edwin Oems, President of NEW WORLD resigned when NEW WORLD was forced to comply with rates using U.S. flag vessels. NEW WORLD lost money on many of its lanes—over $500,000 on revenues of $6 million—because it had submitted low-ball bids in February of 2019 anticipating the ongoing use of false foreign flag waivers, before the March 27 meeting where DOS signaled the fraud would no longer be tolerated.

Responding Party submits that discovery is ongoing and reserves the right to supplement this response.

**INTERROGATORY NO. 12:**

IDENTIFY any and all foreign flag waivers submitted by NEW WORLD which you contend or allege were false, and set forth the basis for any such contention.

**RESPONSE TO INTERROGATORY NO. 12:**

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law.

Subject to and without waiving these objections, Responding Party responds as follows:

From 2008 through 2018, Defendant TSPs, including NEW WORLD, carried-out a fraudulent scheme through two false submissions to the government: First, Defendant TSPs, including NEW WORLD, submitted fraudulent low-ball bids in order to capture awards for the very competitive shipping routes, referred to as "lanes," across international waters. Second, in order to profit on their low-ball bids, Defendant TSPs submitted thousands of false foreign flag waivers, requesting permission to use lower costing foreign flag vessels, by fraudulently certifying that no U.S. flag vessels were available to carry-out shipments and/or that a foreign flag vessel was necessary to meet delivery requirements.

For example, in 2019, Defendant NEW WORLD submitted a rate of $10,672 for the Washington D.C. to United Kingdom lane. The cost of shipment in this lane using a U.S. Flagg Carrier would be $15,730; however, the cost of shipment in this lane using a foreign flag carrier would only be $9,965. NEW WORLD would only be able to make a profit on a rate of $10,672 if it knew in advance that it intended to use foreign flag carriers.

In addition, in 2018, Relator and others began raising concerns about the fraudulent practices. As a result, DOS began reemphasizing the U.S. flag requirements during industry conferences and through DOS publications. In response, some Defendants, such as NEW WORLD, stopped carrying out the scheme in fear of a crackdown. In fact, communication between top executives evidences this fraud. In a late 2019 meeting between Dawn Fontano of Crown Moving and Daniel Johnson, Director of Customer Service at Defendant NEW WORLD, Johnson admitted that NEW WORLD has "lost a huge amount of money" since paring back its use of foreign flag vessels. Johnson admitted that abandoning the scheme impacted 40% of its international business.

Further, in early 2020, after the crackdown and having lost projected earnings, Edwin Oems, President of NEW WORLD resigned when NEW WORLD was forced to comply with rates using U.S. flag vessels. NEW WORLD lost money on many of its lanes—over $500,000 on revenues of $6 million—because it had submitted low-ball bids in February of 2019 anticipating

the ongoing use of false foreign flag waivers, before the March 27 meeting where DOS signaled the fraud would no longer be tolerated.

Responding Party submits that discovery is ongoing and reserves the right to supplement this response.

## INTERROGATORY NO. 13:

IDENTIFY any and all sources of information used or relied upon by RELATOR in drafting its Complaint or which provided SEDONA with any information supporting SEDONA'S allegations.

## RESPONSE TO INTERROGATORY NO. 13:

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law and improperly implicates the privacy rights of third parties. Responding Party further objects on the ground that the interrogatory seeks information protected by Relator's member's privacy rights.

Subject to and without waiving these objections, Responding Party responds as follows:

SEDONA has knowledge on the allegations set forth in the First Amended Complaint ("FAC") due to its position as an insider in the TSP business who has direct and independent knowledge of the information on which these allegations are based. Furthermore, SEDONA has knowledge of the laws, rules, procedures, and guidelines relating to the allegations in the FAC.

SEDONA also has insider information relating to the ins and outs of bid submission, typical costs, and the waiver system. SEDONA also has reviewed bid submission data through the TMSS system.

## INTERROGATORY NO. 14:

IDENTIFY SEDONA's source(s) of information related to the U.S. flag vessel requirements imposed by the GSA or Department of State, including but not limited to, in connection with the HTOS program or CHAMP program.

## RESPONSE TO INTERROGATORY NO. 14:

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law.

Subject to and without waiving these objections, Responding Party responds as follows:

SEDONA understands that pursuant to the requirements under federal statutes, regulations, DOS and GSA/CHAMP (including HTOS) guidelines, TSPs must submit accurate bids, and may not seek a waiver from using U.S. flag vessels absent unavailability of such vessels as defined by the guidelines and laws. SEDONA further has an understanding of the U.S. flag vessel requirements imposed by the GSA or DOS from its position as an insider in the TSP business who has direct and independent knowledge of the information on which these

20

allegations are based, including knowledge on the relevant laws, rules, procedures, and guidelines related to U.S. flag vessel requirements.

SEDONA understands the GSA is in charge of administering the CHAMP program to assist federal agencies in relocating employees and transporting their personal and household goods between duty stations. The program operates through using TSPs, which are qualified and credentialed American private shipping companies vetted by GSA. The TSPs must apply to GSA for approval to participate in the program. Each program, Domestic and International, requires a separate application. GSA evaluates TSPs based on their financial stability, business experience, quality assurance, and knowledge of the HTOS, which is set forth by GSA and provides the rules and requirements for performing services as a provider in CHAMP. The HTOS provides that all participants in the program agree to be bound by the HTOS terms and conditions. Each participating TSP must submit either a domestic or international application worksheet form. Included in this form is the HTOS Questionnaire, which asks about provisions in the HTOS. In order to attain GSA International Approval, a TSP must file and attest to the answers contained in the HTOS Tender of Service Questionnaire. If shipping internationally, a TSP will have to answer the International HTOS Questionnaire.

Further, certain federal civilian agencies, including DOS, have additional reporting and shipping requirements for the transportation of employees' household goods. These agencies regularly work with GSA to promulgate Standing Route Orders ("SROs"), which outline the additional requirements. The SROs are then issued in conjunction with the annual RFO solicitation process. TSPs submitting offers for shipping lanes subject to SROs must abide by the requirements stated in both the RFO and SROs. Once a TSP has been federally approved for either international or domestic shipments by GSA to participate in CHAMP, the participating TSPs selected take full responsibility and agree to all federal rules and requirements outlined in the HTOS guidelines. Among other RFO requirements, TSPs shipping goods internationally must use U.S. flag vessels for the ocean portion of overseas shipments. If a U.S. flag vessel is not available to provide the required service, TSPs can request permission to use foreign flag vessels

prior to shipment. To request permission, a TSP must submit to DOS a "Request for Approval of Use of a Foreign Flag Vessel." It also must certify in writing that US flag shipping is not available or that the use of the foreign flag shipping is necessary to meet delivery requirements. A TSP is responsible for requesting a waiver by submitting to DOS a certification attesting to the unavailability of a U.S. flag vessel. It is the TSP's responsibility to ensure waiver submissions are accurate and truthful.

## INTERROGATORY NO. 15:

DESCRIBE the process underlying any of SEDONA's analyses, calculations, or determinations concerning the significance of the bid amounts submitted by NEW WORLD through the RFO process at any time.

## RESPONSE TO INTERROGATORY NO. 15:

Responding Party objects to this interrogatory as it is vague and ambiguous and premature. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law.

Subject to and without waiving these objections, Responding Party responds as follows:

The TMSS system provides information relating to bid submissions. SEDONA has inside information relating to the shipping industry and is aware of schemes in bid submission and in seeking waivers. Many TSPs, including NEW WORLD, would not break even if they in fact

intended to use a U.S. flag vessel, as they claim prior to seeking exemption. Discovery is ongoing and Responding Party submits further discovery will provide information relating to specific damages attributable to NEW WORLD.

## INTERROGATORY NO. 16:

IDENTIFY and DESCRIBE SEDONA's complete basis and source(s) of information supporting the assertions or allegations made in Paragraphs 5-9, 13, 47-53, 58, 70-74, 79-80, and 81-91 of SEDONA's First Amended Complaint, addressing each and every assertion or allegation with particularity.

## RESPONSE TO INTERROGATORY NO. 16:

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law.

Subject to and without waiving these objections, Responding Party responds as follows:

SEDONA has knowledge regarding the assertions identified in the FAC due to its position as an insider in the TSP business who has direct and independent knowledge of the information on which these allegations are based. Furthermore, SEDONA has knowledge of the laws, rules, procedures, and guidelines relating to the allegations in the FAC.

SEDONA has knowledge that Defendants, including NEW WORLD, submitted low-ball bids. In 2019, Defendant NEW WORLD submitted a rate of $10,672 for the Washington D.C. to

United Kingdom lane. The cost of shipment in this lane using a U.S. Flagg Carrier would be $15,730; however, the cost of shipment in this lane using a foreign flag carrier would only be $9,965. NEW WORLD would only be able to make a profit on a rate of $10,672 if it knew in advance that it intended to use foreign flag carriers. There is very little variability between TSPs as far as the costs that they must incur for shipments. This is because most of the work of the shipments is done by other companies—i.e., sub-contractors. Most notably, none of the TSPs have their own ocean shipping vessels, and therefore all must use the relatively small set of ocean shipping companies. SEDONA has insider information relating to the ins and outs of bid submission, typical costs, and the waiver system. SEDONA also has reviewed bid submission data through the TMSS system.

In addition, in 2018, Relator and others began raising concerns about the fraudulent practices. As a result, DOS began reemphasizing the U.S. flag requirements during industry conferences and through DOS publications. In response, some Defendants, such as NEW WORLD, stopped carrying out the scheme in fear of a crackdown. In fact, communication between top executives evidences this fraud. In a late 2019 meeting between Dawn Fontano of Crown Moving and Daniel Johnson, Director of Customer Service at Defendant NEW WORLD, Johnson admitted that NEW WORLD has "lost a huge amount of money" since paring back its use of foreign flag vessels. Johnson admitted that abandoning the scheme impacted 40% of its international business.

Further, in early 2020, after the crackdown and having lost projected earnings, Edwin Oems, President of NEW WORLD resigned when NEW WORLD was forced to comply with rates using U.S. flag vessels. NEW WORLD lost money on many of its lanes—over $500,000 on revenues of $6 million—because it had submitted low-ball bids in February of 2019 anticipating the ongoing use of false foreign flag waivers, before the March 27 meeting where DOS signaled the fraud would no longer be tolerated.

/ / /

/ / /

**INTERROGATORY NO. 17:**

IDENTIFY each and every lay witnesses YOU expect or intend to call to testify at trial, and DESCRIBE in detail the subject matter of each such witness's anticipated testimony, the facts to which each witness is expected to testify, and the grounds for such information, as well as the name, address, telephone number and contact information of these witnesses.

**RESPONSE TO INTERROGATORY NO. 17:**

Responding Party objects to this interrogatory as it is vague and ambiguous and premature. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law. Responding Party further objects that the interrogatory seeks information protected by the right to privacy.

Subject to and without waiving these objections, Responding Party responds as follows:

On August 19, 2021, SEDONA provided in its initial disclosures, a list of individuals who may have discoverable information that Relator may use to support its claims. SEDONA again supplied this list of individuals in Response to Interrogatory No. 2. These individuals, along with others that may be identified during the discovery period, may be called to testify at trial. Accompanying each name provided are the topics which SEDONA believes the individuals has knowledge about as well as the contact information currently in SEDONA's possession. Discovery is ongoing and Responding Party submits that further discovery will provide

additional information relating to the individuals that Relator will call at trial and the topics of their testimony.

## INTERROGATORY NO. 18:

IDENTIFY each and every expert or other witnesses YOU intend to call to testify at trial from whom YOU will attempt to introduce opinion testimony, and DESCRIBE in detail the subject matter of each such expert's anticipated testimony, the facts, opinions, conclusions to which each expert or witness is expected to testify, the grounds for each opinion, the qualifications of each such witness, and any reports prepared by each such witness in this case, as well as the name, address, telephone number and contact information of these witnesses.

## RESPONSE TO INTERROGATORY NO. 18:

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects that the request is premature. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law.

Subject to and without waiving these objections, Responding Party responds as follows:

Pursuant to the Order Setting Trial and Pre-Trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge (*see* Dkt. No. 135) the date by which the parties must disclose experts and exchange expert witness summaries or reports is currently set for July 12, 2022.

**INTERROGATORY NO. 19:**

IDENTIFY each component of damages sought by Plaintiff, Relator, the manner in which each such component was calculated, all documents evidencing these damages, and all persons with knowledge of such damages and what knowledge each such person possesses.

**RESPONSE TO INTERROGATORY NO. 19:**

Responding Party objects to this interrogatory as it is vague and ambiguous. Responding Party objects on the grounds this interrogatory is overbroad, unduly burdensome, and it exceeds the scope of appropriate discovery. Responding Party objects to this interrogatory to the extent it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this interrogatory on the grounds it seeks information equally available and/or already in the possession of the asking party. Responding Party objects to the extent this interrogatory prematurely seeks expert discovery and is premature.

Responding Party further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, common interest doctrine, and/or joint prosecution privilege. Responding Party objects to this interrogatory to the extent it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or any other applicable rule or law.

Subject to and without waiving these objections, Responding Party responds as follows:

The United States suffered damages in that thousands of bids and corresponding waivers submitted were fraudulent, including submissions by NEW WORLD. The contracts awarded to NEW WORLD, and payments made by the U.S. government, were based on fraudulent information and in violation of the America-First policy. In 2019, Defendant NEW WORLD submitted a rate of $10,672 for the Washington D.C. to United Kingdom lane. The cost of shipment in this lane using a U.S. Flagg Carrier would be $15,730; however, the cost of shipment in this lane using a foreign flag carrier would only be $9,965. In a late 2019 meeting between Dawn Fontano of Crown Moving and Daniel Johnson, Director of Customer Service at

Defendant NEW WORLD, Johnson admitted that NEW WORLD has "lost a huge amount of money" since paring back its use of foreign flag vessels. Johnson admitted that abandoning the scheme impacted 40% of its international business. The TMSS system provides information relating to bid submissions. SEDONA has inside information relating to the shipping industry and is aware of schemes in bid submission and in seeking waivers. Discovery is ongoing and Responding Party submits further discovery will provide information relating to specific damages attributable to NEW WORLD.

Dated: January 14, 2022       Respectfully submitted,

COTCHETT, PITRE & MCCARTHY, LLP
Justin T. Berger (*admitted pro hac vice*)
Sarvenaz J. Fahimi (*admitted pro hac vice*)
jberger@cpmlegal.com
sfahimi@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000

RABIN KAMMERER JOHNSON
Adam T. Rabin (FL 985635)
arabin@rkjlawgroup.com
Havan M. Clark (FL 1026390)
hclark@rkjlawgroup.com
1601 Forum Pl #201
West Palm Beach, FL 33401
Tel: (561) 659-7878

LAW OFFICES OF PAUL PELLETIER
Paul E. Pelletier (*admitted pro hac vice*)
pepelletier3@gmail.com
3500 Morningside Drive
Fairfax, VA 22031

*Attorneys for Relator Sedona Partners LLC*

## PROOF OF SERVICE

I am employed in the County of San Mateo.  I am over the age of 18 years and not a party to this action.  My business address is the Law Offices of Cotchett, Pitre & McCarthy, LLP, San Francisco Airport Office Center, 840 Malcolm Road, Burlingame, California, 94010. On this day, I served the following document(s) in the manner described below:

1. **RELATOR SEDONA PARTNERS LLC'S RESPONSE TO DEFENDANT NEW WORLD INTERNATIONAL, LTD.'S FIRST SET OF INTERROGATORIES**

✓    **VIA E-MAIL:** My e mail address is sofarrell@cpmlegal.com.  I am readily familiar with this firm's practice for causing documents to be served by e-mail.  Following that practice, I caused the aforementioned document(s) to be emailed to the addressee(s) specified below.

### [SEE ATTACHED SERVICE LIST]

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.  Executed at Burlingame, California, on January 14, 2022

_____
SARAH O'FARRELL

## SERVICE LIST

**UNITED STATES OF AMERICA ex rel. SEDONA PARTNERS LLC,**
**v.**
**ABLE MOVING & STORAGE, INC., et al.**

**Case No. 20-CV-23242-BLOOM/Otazo-Reyes**
**U.S. District Court, Southern District of Florida**

Irene Oria
irene.oria@fisherbroyles.com
Fisher Broyles, LLP
199 E. Flagler Street #550
Miami, FL 33131
*Counsel for Able Moving & Storage, Inc.*

Jolyon A. Silversmith
jsilversmith@kmazuckert.com
James A. Calderwood
jcalderwood@kmazuckert.com
Andrew S. Yingling
ayingling@kmazuckert.com
KMA Zuckert, LLC
888 17th Street NW, Suite 700
Washington, DC 20006
*Pro Hac Vice Arpin International Group, Inc.*

Aryeh L. Kaplan
aryeh.kaplan@pillsburylaw.com
Ariella J. Ederi
ariella.ederi@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131
*Counsel for Coleman American Moving Services, Inc.*

Barry A. Postman
barry.postman@csklegal.com
Sara.ghent@csklegal.com
Justin C. Sorel
justin.sorel@csklegal.com
loren.ryan@csklegal.com
Cole, Scott & Kissane, P.A.
222 Lakeview Avenue, Suite 120
West Palm Beach, FL 33417
*Counsel for Hilldrup Companies, Inc.*

Robert T. Wright, Jr.
Robert.wright@fisherbroyles.com
Fisher Broyles, LLP
1221 Brickell Avenue, Suite 900
Miami, FL 33131
*Counsel for Able Moving & Storage, Inc.*

Nicholas E. Pantelopoulos
nep@kmazuckert.com
KMA Zuckert, LLC
355 Alhambra Circle, Suite 1201
Coral Gables, FL 33134
*Counsel for Arpin International Group, Inc.*

Ghislaine T. Bruner
gbruner@polsinelli.com
Polsinelli PC
1401 Lawrence Street, #2300
Denver, CO 80202
*Counsel for Cartwright International Van Lines, Inc.*

Noam B. Fischman
nfischman@polsinelli.com
Polsinelli PC
1401 I Street, NW, Suite 800
Washington DC 20005
*Pro Hac Vice Cartwright International Van Lines, Inc.*

Alexis N. Wansac
alexis.wansac@pillsburylaw.com
Thomas C. Hill
thomas.hill@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeeth Street NW
Washington, DC 20036
*Pro Hac Vice Coleman American Moving Services, Inc.*

Michael I. Kessler
mkessler@ohaganmeyer.com
O'Hagan Meyer
21550 Oxnard Street, Suite 1050
Woodland Hills, CA 91367
*Counsel for J.K. Moving & Storage, Inc.*

Andrew M. Gordon
agordon@hinshawlaw.com
Hinshaw & Culbertson, LLP
One East Broward Blvd., Ste. 1010
Ft. Lauderdale, FL 33301
954.467.7900
*Counsel for New World International, Ltd.*

Brian R. Zeeck
bzeeck@hinshawlaw.com
Hinshaw & Culbertson, LLP
151 North Franklin Street, Ste. 2500
Chicago, IL 60606
312.704.3028
*Pro Hac Vice New World International, Ltd.*

Robert Harris
rharris@stackfernandez.com
gmartich@stackfernandez.com
Sammy Epelbaum
sepelbaum@stackfernandez.com
Stack Fernandez & Harris, PA
1001 Brickell Bay Drive, Ste. 2650
Miami, FL 33131
*Counsel for Paxton Van Lines, Inc.*

Craig B. Shapiro
cshapiro@belaw.cc
Buchbinder & Elegant, P.A.
46 S.W. 1st Street, 4th Floor
Miami, FL 33130
305.358.1515
*Counsel for Western Express Forwarding, LLC*

Thomas F. Murphy
tmurphy@dclawfirm.com
Friedlander Misler, PLLC
5335 Wisconsin Avenue, NW, Suite 600
Washington, DC 20015
*Pro Hac Vice Western Express Forwarding, LLC*

Maura K. Monaghan
mkmonaghan@debevoise.com
Melanie M. Burke
mburke@debevoise.com
Kristin D. Kiehn
kdkiehn@debevoise.com
Debevoise & Plimpton LLP
919 Third Ave.
New York, NY 10022
*Pro Hac Vice Hilldrup Companies, Inc.*

Charles G. Meyer, III
cmeyer@ohaganmeyer.com
C. Quinn Adams
cadams@ohaganmeyer.com
Alan D. Albert
aalbert@ohaganmeyer.com
Charles M. Sims
csims@ohaganmeyer.com
O'Hagan Meyer
411 East Franklin Street, Suite 500
Richmond, VA 23219
*Pro Hac Vice J.K. Moving & Storage, Inc.*

Ruddy S-A. Abam
rabam@hinshawlaw.com
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
*Pro Hac Vice New World International, Ltd.*

Robert M. Borak
robert.borak@spectorrubin.com
Spector Rubin, P.A.
3250 Mary Street, Suite 405
Miami, FL 33133
*Counsel for Paramount Transportation Systems*

Stuart A. Berman
saberman@lerchearly.com
Lerch, Early & Brewer, Chtd.
7600 Wisconsin Avenue, Ste. 700
Bethesda, MD 20814
*Pro Hac Vice Paxton Van Lines, Inc.*